UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JUSTIN VALK,

                            Plaintiff,

v.                                                                              3:24-CV-0003
                                                                               (BKS/ML)

JOHN L. HUBBARD, District Attorney;
SHAWN SMITH, District Attorney;
LESLIE BURTON, II, New York State
Police Investigator; MATHEW P.
BURKERT, New York State Police
Investigator; and JENNIFER HAHL,
New York State Police Senior Investigator,

                            Defendants.

_____

APPEARANCES:                                               OF COUNSEL:

JUSTIN VALK
   Plaintiff, *Pro Se*, 24-B-2215
Cape Vincent Correctional Facility
Route 12E
Post Office Box 739
Cape Vincent, New York 13618


MIROSLAV LOVRIC, United States Magistrate Judge


## REPORT and RECOMMENDATION

       The Clerk has sent a *pro se* amended complaint in the above captioned action filed by

Justin Valk ("Plaintiff") to the Court for review.  (Dkt. No. 8.)  For the reasons discussed below,

I recommend that Plaintiff's Amended Complaint be (1) accepted in part for filing, and (2)

dismissed (a) in part with leave to amend, and (b) in part without leave to amend.  (Dkt. No. 8.)

## I.    BACKGROUND

Construed as liberally[1] as possible, Plaintiff's Amended Complaint alleges that defendants John L. Hubbard, Shawn Smith, Leslie Burton, Mathew P. Burkert, and Jennifer Hahl[2] (collectively "Defendants") violated his civil rights.  (*See generally* Dkt. No. 8.)

More specifically, the Amended Complaint alleges that on or about May 4, or May 5, 2022, Plaintiff and his acquaintances—Josh King and Roger Gilbertson—left Plaintiff's home to drive to Walmart in a vehicle driven and owned by Mr. King.  (Dkt. No. 8 at 6.)  The Amended Complaint alleges that shortly after leaving Plaintiff's house, a white, unmarked sedan swerved into the lane of traffic that Mr. King was driving in, and stopped, blocking the lane and direction of travel.  (*Id.*)  The Amended Complaint alleges that two men exited the unmarked white sedan, wearing plain civilian clothes and made no announcement that they were law enforcement.  (Dkt. No. 8 at 7.)  The Amended Complaint alleges that it was not until Defendant Burton approached Mr. King's vehicle, that Plaintiff recognized him from prior encounters.  (*Id.*)  The Amended Complaint alleges that the traffic stop occurred on private property in the Mountainview mobile home park.  (Dkt. No. 8 at 34.)

The Amended Complaint alleges that Mr. King was "promptly handcuffed and taken into custody" but not read his *Miranda* warnings or told the charges against him.  (Dkt. No. 8 at 7.) Plaintiff alleges that he and Mr. Gilberston were ordered out of the vehicle and questioned about a stolen Honda four wheeler, burglaries, and involvement in the stealing of catalytic converters.

---

[1]      The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

[2]      The Clerk of the Court is directed to add defendants Leslie Burton, II, Mathew P. Burkert, and Jennifer Hahl to the docket of this action.

(Dkt. No. 8 at 7-8.)  The Amended Complaint alleges that Plaintiff and Mr. Gilbertson were not read their *Miranda* warnings.  (Dkt. No. 8 at 8.)  Plaintiff alleges that "[a]fter probably 10 minutes" of being questioned, Plaintiff told Defendant Burton that he did not have answers to questions, the traffic stop had "nothing to do with" him, and that he was going to walk home, which "was only 100-150 feet away."  (*Id.*)  The Amended Complaint alleges that Defendant Burton told Plaintiff that he was not permitted to leave until answering the questions and if he did not cooperate, he would be arrested with Mr. Gilbertson and Mr. King and they "would all spend the weekend in jail."  (*Id.*)

The Amended Complaint alleges that Plaintiff and Mr. Gilbertson sat down in Mr. King's back seat out of sight of the law enforcement officers and Mr. Gilbertson dumped heroin from his wallet into the grass.  (Dkt. No. 8 at 8.)  Plaintiff alleges that Defendant Burton then approached he and Mr. Gilbertson and continued asking questions about the stolen Honda four wheeler.  (*Id.*)

The Amended Complaint alleges that Plaintiff again expressed his desire to leave and return home and was again told that he was not permitted to leave.  (Dkt. No. 8 at 9.)  The Amended Complaint alleges that Defendant Burton told Plaintiff and Mr. Gilbertson that this was their "absolute last chance to tell him where the 4wheeler came from or [they] were spending the weekend in jail."  (*Id.*)  Plaintiff alleges that this warning from Defendant Burton prompted Mr. Gilbertson to tell Defendant Burton that the Honda four wheeler was stolen from under a carport in Harpersfield, New York.  (*Id.*)  The Amended Complaint alleges that Plaintiff informed Defendant Burton that he knew the general area of the stolen four wheeler but did not know the address.  (*Id.*)  The Amended Complaint alleges that Defendant Burton told Plaintiff that if he showed Defendant Burton the location where the four wheeler was stolen from, then

Plaintiff, Mr. Gilbertson, and Mr. King would not be charged or arrested. (*Id*.) The Amended Complaint alleges that Plaintiff and Mr. Gilbertson then "agreed to [Defendant] Burton's terms." (*Id*.)

The Amended Complaint alleges that Plaintiff and Mr. Gilbertson got into Defendant Burton's unmarked white sedan and Defendant Burton drove in the direction of Harpersfield with Mr. Gilbertson providing directions. (Dkt. No. 8 at 9.) Plaintiff alleges that eventually they arrived at 226 County Route 30, Harpersfield, New York. (*Id*.) The Amended Complaint alleges that Plaintiff informed Defendant Burton that he was at this address previously with Mr. King and Jerry Johnson on two prior occasions "strictly to observe around the swamp, which was across the street" because Plaintiff was interested in paranormal activity. (Dkt. No. 8 at 10, 36-37.)

Plaintiff alleges that Defendant Burton then drove Plaintiff and Mr. Gilbertson back to Oneonta and dropped them off a short distance from Plaintiff's house. (Dkt. No. 8 at 10.) Plaintiff alleges that the total amount of time from the beginning of the traffic stop to his return home exceeded two hours. (*Id*.)

Plaintiff alleges that the traffic stop of Mr. King's vehicle was unconstitutional because it lacked probable cause. (Dkt. No. 8 at 11.) Plaintiff alleges that Mr. King's windshield was cracked but—contrary to Defendant Burton's testimony at Plaintiff's preliminary hearing—it had a front license plate and although the license plate was invalid, Defendant Burton "could not have known that prior to the stop." (*Id*.) The Amended Complaint alleges that even if there was probable cause to stop Mr. King's vehicle, the stop was illegal because Defendant Burton made "no attempt to activate his emergency lights or siren" and the officers did not announce that they were law enforcement. (*Id*.)

The Amended Complaint alleges that on May 8, 2022, Plaintiff was called by Defendant Burton and told that he had to come to the trooper barracks the next day at 10 a.m. (Dkt. No. 8 at 13.) Plaintiff alleges that he arrived at the trooper barracks on May 9, 2022 at 9:45 a.m., and participated in a conversation with Defendant Burton that was not witnessed by anyone else and not audio or video recorded. (*Id*. at 13, 15.) Plaintiff alleges that he was not advised of his *Miranda* warnings during this interaction and although there is "an alleged Miranda waiver, the signature appears to be a forged representation of [Plaintiff's]."[3] (*Id*.) Plaintiff alleges that after about 30-45 minutes of discussing burglaries, stolen catalytic converters, and stolen vehicles, Defendant Burton stated that he wanted to "type something up"—in a question-and-answer format—documenting the conversation. (Dkt. No. 8 at 14.) Plaintiff alleges that he indicated a desire to call his father but Defendant Burton informed him that (1) Mr. Gilbertson and Jerry Odell had been arrested, charged with burglary, and implicated Plaintiff, and (2) if Plaintiff called his father and his father suggested that Plaintiff call an attorney, Plaintiff would lose his opportunity to tell his side of the story and clear his name with Defendant Burton. (*Id*.)

Plaintiff alleges that at the conclusion of the question-and-answer session, Defendant Burton left his office, so Plaintiff powered on his cell phone. (Dkt. No. 8 at 14.) Plaintiff alleges that his phone began ringing with a call from his wife, Stephanie, who was incarcerated at the time. (*Id*.) The Amended Complaint alleges that Plaintiff explained to Stephanie where he was and what was going on. (Dkt. No. 8 at 15.) Plaintiff alleges that when Defendant Burton returned to his office, Plaintiff stayed on the phone with Stephanie. (*Id*.) Plaintiff alleges that Defendant Burton placed four sheets of paper in front of him, instructed him to initial each of the

---

[3] Elsewhere in the Amended Complaint, Plaintiff explicitly alleges that "the signed Miranda waiver is not my signature." (Dkt. No. 8 at 15.)

four pages and sign the last page. (*Id.*) The Amended Complaint alleges that after Plaintiff initialed the four-page statement and signed the final page, he was escorted to the building lobby and did not have any police contact for approximately three months. (*Id.*)

The Amended Complaint alleges that Defendant Burton's typed statement that Plaintiff initialed and signed differed greatly and omitted relevant information from the actual conversation between Plaintiff and Defendant Burton. (Dkt. No. 8 at 16-17.)

The Amended Complaint alleges that on August 5, 2022, around 8 a.m., Defendants Burkert and Hahl went to Plaintiff's house to question him about the sudden and unexpected death of his wife who passed away approximately 36 hours earlier. (Dkt. No. 8 at 18.) Plaintiff alleges that he was not read his *Miranda* warnings before being questioned and the questioning lasted approximately 30-45 minutes. (*Id*.) The Amended Complaint alleges that the criminal matter related to his late wife is still ongoing so Plaintiff is not asserting claims in this action related to that matter but "mention[ed] this questioning because . . . it shows the continued misconduct by state officials." (*Id*.)

Plaintiff alleges that at the conclusion of the questioning, he was informed that he had to ride with Defendants Burkert and Hahl back to the trooper barracks and was directed to bring both of his cell phones. (*Id*.)

Plaintiff alleges that back at the trooper barracks he was brought to an interrogation room, read his *Miranda* warnings, and questioned by Defendants Burkert and Hahl about Stephanie's sudden passing. (Dkt. No. 8 at 18.) Plaintiff alleges that towards the end of the questioning Defendant Hahl accused him of intentionally hurting Stephanie, which angered and upset him, so he terminated the interrogation. (Dkt. No. 8 at 18-19.) Plaintiff alleges that he attempted to walk out of the interrogation room but was stopped by Defendant Hahl who placed

him under arrest for second degree burglary. (Dkt. No. 8 at 19.) Plaintiff alleges that other officers came into the interrogation room, shoved him against the wall, and yanked his hands out of his pockets which caused his phones to fly through the air and fall onto the floor. (*Id.*) Plaintiff alleges that Defendant Hahl directed officers to get Plaintiff's phones. (*Id.*) Plaintiff alleges that he was shackled to a wooden bench for the next 10-12 hours. (*Id.*) Plaintiff alleges that hours after being charged with second degree burglary, he was also charged with criminally negligent homicide and second degree manslaughter after investigators went through his phones. (*Id.*)

The Amended Complaint alleges that on August 5, 2022, Plaintiff was arraigned on the criminally negligent homicide and second degree manslaughter charges in the Hamden Village Court. (Dkt. No. 8 at 19.) The Amended Complaint alleges that Plaintiff was remanded to the Delaware County Jail on $30,000 cash or $70,000 bond but was not arraigned on the second degree burglary charge until the afternoon of August 9, 2022. (*Id.*)

Plaintiff alleges that the questioning at his home first without being provided his *Miranda* warnings tainted the subsequent interview at the trooper barracks where he was provided his *Miranda* warnings because it was a question first interrogation. (Dkt. No. 8 at 21.) The Amended Complaint further alleges that Plaintiff's arrest for second degree burglary was in violation of the Fourth Amendment because it lacked probable cause and any evidence relevant to establishing probable cause was obtained through the violation of Plaintiff's constitutional rights. (*Id.*) Plaintiff alleges that his rights were further violated by the fact that he was not arraigned on the second degree burglary charge until August 9, 2022. (*Id.*)

The Amended Complaint alleges that on August 15, 2022, Defendant Hubbard presented testimony at Plaintiff's preliminary felony hearing based on the second degree burglary charge.

(Dkt. No. 8 at 22.)  Plaintiff alleges that the testimony presented either (1) did not pertain to Plaintiff, (2) was presented by Defendant Burton who obtained the information by violating Plaintiff's constitutional rights, or (3) was presented by Mr. Gilbertson who was bribed by Defendant Hubbard to provide false testimony and has a history of not providing truthful testimony.  (Dkt. No. 8 at 22-23.)  Plaintiff alleges that the bribe offered to Mr. Gilbertson by Defendant Hubbard was that Mr. Gilbertson provide testimony implicating Plaintiff and in exchange, Mr. Gilbertson would receive a sentence of five years supervision with adult treatment court conditions.  (*Id*. at 23.)  Plaintiff alleges that Defendant Smith was also involved in "procuring [the] statement from [Mr.] Gilbertson."  (Dkt. No. 8 at 24.)  Plaintiff alleges that Mr. Gilbertson was released "a few days after [his] preliminary hearing" testimony and died from a drug overdose five days later.  (*Id*.)

Plaintiff alleges that after Mr. Gilbertson's death, while incarcerated in the Delaware County Jail, he observed the discovery material of Adam Bright—one of his criminal co-defendants—which included the supporting deposition of Mr. Gilbertson implicating Plaintiff. (Dkt. No. 8 at 25.)  Plaintiff alleges that during the months of October 2022 to December 2022, Defendant Hubbard was transitioning out of his role as District Attorney and Defendant Smith was transitioning into the role as District Attorney for Delaware County.  (Dkt. No. 8 at 25-26.) The Amended Complaint alleges that during this same time period—October 2022 to December 2022—Mr. Bright received his discovery materials, which included statements written by Mr. Gilbertson and the prosecution's case against Plaintiff.  (Dkt. No. 8 at 26.)

The Amended Complaint alleges that on January 26, 2023, Mr. Bright testified on behalf of the prosecution at Plaintiff's grand jury hearing.  (Dkt. No. 8 at 26.)  Plaintiff alleges that Defendant Smith influenced Mr. Bright to give false testimony with the promise of a reduced

sentence and provided Mr. Bright with Mr. Gilbertson's statements so that Mr. Bright could memorize and recite them to the grand jury. (*Id.*)

The Amended Complaint alleges that Defendant Smith also provided the grand jury with the false testimony of Defendant Burton and any information Defendant Burton did have was the product of police coercion and obtained by violation of Plaintiff's constitutional rights. (Dkt. No. 8 at 27.)

Plaintiff alleges that his due process rights were violated by the unreasonable delay in his indictment and prosecution. (Dkt. No. 8 at 28.) More specifically, Plaintiff alleges that he was indicted for second degree burglary on January 26, 2023, and arraigned on that indictment on January 30, 2023, but did not plead guilty until May 13, 2024. (*Id.*) Plaintiff alleges that the prosecution's objective was to "wear [him] down" by making him "sit in Delaware County Jail which is known to be one of the worst county jails around." (*Id.*)

The Amended Complaint alleges that Plaintiff was being punished more severely in the second degree burglary matter—despite it being a weak criminal case—because of the ongoing criminal matter related to Plaintiff's wife's death. (Dkt. No. 8 at 29.) Plaintiff also alleges that he was convicted upon the testimony of an accomplice without the support of corroborative evidence tending to connect him with the commission of second degree burglary, which is in violation of N.Y. Crim. P. Law § 60.22(1). (Dkt. No. 8 at 32.)

Based on these factual allegations, the Amended Complaint asserts the following nine claims: (1) a claim of unlawful seizure against Defendant Burton pursuant to the Fourth Amendment and 42 U.S.C. § 1983 based on the traffic stop that occurred on May 4 or 5, 2022; (2) a claim that Plaintiff's *Miranda* rights were violated pursuant to the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983, against Defendant Burton and the New York State Police;

(3) a claim that Plaintiff's due process rights pursuant to the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983 were violated by Defendant Burton in fabricating and/or falsifying evidence on May 8, 2024; (4) a claim that Defendants Hubbard and Smith violated Plaintiff's due process rights to a fair trial pursuant to the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983 by using the false/fabricated evidence produced by Defendant Burton and bribing Mr. Gilbertson and Mr. Bright to testify against Plaintiff; (5) a claim of excessive and unreasonable bail pursuant to the Eighth Amendment and 42 U.S.C. § 1983 against Defendants Hubbard and Smith; (6) a claim of false arrest and unlawful imprisonment against Defendants Hahl and Burkert in violation of the Fourth Amendment and 42 U.S.C. § 1983; (7) a claim of unlawful imprisonment against Defendants Hubbard and Smith in violation of the Fourth Amendment and 42 U.S.C. § 1983 based on the delay in Plaintiff's arraignment; (8) a claim of excessive and unreasonable sentence against Defendant Smith; and (9) a claim that Plaintiff's right against self-incrimination pursuant to the Fifth Amendment was violated by Defendant Smith by requiring that Plaintiff to implicate himself in the burglary upon Plaintiff's acceptance of a guilty plea. (Dkt. No. 8 at 49-54.)

As relief, Plaintiff seeks that his conviction of second degree burglary be vacated, the suppression of all evidence obtained against him with respect to the second degree burglary charge, a new and fair trial, and punitive and compensatory damages in the amount of $7,500,000.00.  (Dkt. No. 8 at 49.)

## II.    LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

Because Plaintiff is proceeding *in forma pauperis*, his Amended Complaint must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B).  The legal standard governing review of a pleading pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) was discussed at length in the

Order and Report-Recommendation issued by the undersigned on April 3, 2024.  (Dkt. No. 5 at 3-4.)

## III.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally.  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Amended Complaint with this principle in mind, I recommend that it be accepted in part for filing and dismissed in part.

### A.    Challenge to Conviction

The *Rooker-Feldman* doctrine "established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments."  *Sung Cho v. City of New York*, 910 F.3d 639, 644 (2d Cir. 2018) (citation omitted).  Because "federal district courts are granted original—and not appellate—jurisdiction, cases that function as de facto appeals of state-court judgments are therefore jurisdictionally barred."  *Sung Cho*, 910 F.3d at 644.  Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where the plaintiff seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment.  *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) (citing 28 U.S.C. § 1257) ("[The *Rooker-Feldman* doctrine] bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court [of the United States] is the only federal court with jurisdiction over such cases."); *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) (citation omitted) ("The [Rooker-Feldman] doctrine reflects the principle set forth in 28 U.S.C. § 1257 that the Supreme Court [of the United States] is the only federal court that has jurisdiction to review state court

judgments, unless otherwise provided by Congress, *see, e.g.*, 28 U.S.C. § 2254 (habeas corpus review).").

District court review of claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a final state court order or judgment; (3) the plaintiff invites district court review and rejection of the final state court order or judgment; and (4) the final state court order or judgment was rendered before the district court proceedings commenced. *Dorce*, 2 F.4th at 101 (internal quotation marks and citation omitted).

The *Rooker-Feldman* doctrine applies where a plaintiff seeks relief that invites a federal district court to reject or overturn a final decision of a state court as to a conviction. *See Teichmann v. New York*, 769 F.3d 821, 826 (2d Cir. 2014) (dismissal of Section 1983 claims warranted under *Rooker-Feldman* where a plaintiff "seeks nothing more than a review of a state court judgment"); *Moalawi v. James*, 22-CV-6770, 2023 WL 4817618, at *2 (S.D.N.Y. July 27, 2023) (finding that *Rooker-Feldman* bars the plaintiff's challenge to state-court conviction under Section 1983); *Mitchell v. New York State*, 22-CV-1747, 2023 WL 2734823, at *4 (E.D.N.Y. Mar. 31, 2023) (dismissing under the *Rooker-Feldman* doctrine, Section 1983 action that "necessarily invites the Court to review the judgment of [the plaintiff's state court criminal] conviction"); *Molina v. James*, 21-CV-3144, 2022 WL 813815, at *5 (E.D.N.Y. Mar. 17, 2022) (dismissing under the *Rooker-Feldman* doctrine, plaintiff's request for an injunction to dismiss his criminal conviction); *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 705-06 (S.D.N.Y. 2011) (finding no subject-matter jurisdiction under *Rooker-Feldman*, where plaintiff requested to "void . . . conviction entered by . . . state courts").

Here, Plaintiff's claims are barred under the *Rooker-Feldman* doctrine. Plaintiff, who was convicted in state court before bringing this action, complains that his constitutional rights were violated in his criminal proceedings. In other words, he challenges the validity of his state court conviction and invites the Court to review the judgment of conviction. (Dkt. No. 8 at 35 [Amended Complaint indicating that it is seeking to "move to vacate my second degree burglary conviction. All information and evidence gathered against me was obtained illegally by violating my rights . . . . At least I pray this court grants me a new and fair trial by suppressing any and all evidence that was obtained by violating my constitutional rights."]; Dkt. No. 8 at 46 ["I pray this court grant me relief by vacating or overturning my conviction, or by granting me a fair trial by suppressing any and all evidence gathered illegally as a result of violating my federally protected rights."]; Dkt. No. 8 at 49 [requesting that "my burglary conviction [be] vacated or overturned to get a fair trial after suppressing evidence obtained by violating my federally protected rights."].) The *Rooker-Feldman* doctrine bars this Court from reviewing such challenges. The undersigned therefore recommends that the Court dismiss Plaintiff's challenge to his state court conviction, under the *Rooker-Feldman* doctrine, for lack of subject matter jurisdiction.[4] See Fed. R. Civ. P. 12(h)(3); *Exxon Mobil Corp.*, 544 U.S. at 291.

---

[4]    The Second Circuit has held that a "state-court judgment [is] not 'rendered' for *Rooker-Feldman* purposes 'before the district court proceedings commenced' [where] an appeal [is] pending in the state case" at the time the federal suit is filed. *Hunter v. McMahon*, 75 F.4th 62, 69 (2d Cir. 2023). The Amended Complaint clearly alleges that Plaintiff pleaded guilty and has been convicted (Dkt. No. 8 at 49, 54) and does not allege any facts plausibly suggesting that an appeal is pending (*see generally* Dkt. No. 8).

B.    **Claims Seeking Monetary Damages**

1.    **Immunity**

To the extent that Plaintiff attempts to sue New York, the New York State Police, the

Delaware County District Attorney's Office, or Defendants in their official capacities seeking

monetary damages, those claims are barred by the Eleventh Amendment.

New York State is immune from suits pursuant to 42 U.S.C. § 1983 seeking either legal

or equitable relief, under the Eleventh Amendment. *Papasan v. Allain,* 478 U.S. 265, 276

(1986); *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 98-100 (1984); *see*

*Ognibene v. Niagara Cnty. Sheriff's Dep't*, 03-CV-0678, 2003 WL 24243989, at *3 (W.D.N.Y.

Dec. 1, 2003) ("To the extent the plaintiff names various state courts as defendants and seeks

either legal or equitable relief against them under § 1983, they are immune from such suit under

the Eleventh Amendment.").  The Eleventh Amendment's immunity extends to the New York

State Police as an agency of the State of New York.  *See, e.g., Riley v. Cuomo*, 17-CV-1631,

2018 WL 1832929, *4 (E.D.N.Y. Apr. 16, 2018) (holding that the New York State Police, as a

division in the executive department of the State, is immune from claims under § 1983);

*Finkelman v. New York State Police*, 06-CV-8705, 2007 WL 4145456, *3 (S.D.N.Y. Nov. 15,

2007) (holding that the Eleventh Amendment barred the plaintiff's suit seeking monetary

damages under § 1983 against New York State Police).  Moreover, the Delaware County District

Attorney's Office is immune from suit.  *See Campbell v. New York State Police*, 23-CV-1337,

2024 WL 1702010 at *5 (N.D.N.Y. Apr. 19, 2024) (Lovric, M.J.) (citing *Roark v. New York*, 23-

CV-1237, 2023 WL 8827185, at *3 (N.D.N.Y. Dec. 21, 2023) (Lovric, M.J.) (citations omitted)

(recommending that the plaintiff's claims against the Watertown District Attorney's Office be

dismissed as barred by the Eleventh Amendment), *report and recommendation adopted by*, 2024

WL 125512, at *1 (N.D.N.Y. Jan. 11, 2024) (Hurd, J.)) (recommending dismissal of the plaintiff's claims against defendant Broome County District Attorney's Office), *report and recommendation adopted*, 2024 WL 3063674 (N.D.N.Y. June 20, 2024) (Nardacci, J.).

Claims against Defendants Burton, Burkert, and Hahl in their official capacities—as employees of New York State—are to be construed as claims against New York State and thus barred pursuant to the Eleventh Amendment. *See Sundwall v. Leuba*, 28 F. App'x 11, 12 (2d Cir. 2001) (citing *K & A Radiologic Tech. Servs., Inc. v. Comm'r of the Dep't of Health*, 189 F.3d 273, 278 (2d Cir. 1999)) (holding that "state officers, if sued in their official capacities, are immunized from suit by private citizens under the Eleventh Amendment."); *King v. New York State*, 23-CV-3421, 2023 WL 5625440, at *4 (E.D.N.Y. Aug. 31, 2023) (citing *Thomas v. Martin-Gibbons*, 857 F. App'x 36, 37 (2d Cir. 2021) (affirming dismissal of *pro se* Section 1983 claims against the State of New York and a state court judge in his official capacity based on Eleventh Amendment immunity)) ("Eleventh Amendment immunity extends to state officials acting in their official capacities, including state court judges.").  Further, to the extent that Plaintiff attempts to sue Defendants Hubbard and Smith in their official capacities—as employees of the Delaware County District Attorney's Office—those claims are subject to dismissal pursuant to the Eleventh Amendment.  *See D'Alessandro v. City of New York,* 713 F. App'x 1, 8 (2d Cir. 2017) ("[I]f a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity."); *Rich v. New York*, 21-CV-3835, 2022 WL 992885, at *5 n.4 (S.D.N.Y. Mar. 31, 2022) ("[A]ny claims Plaintiff may raise against the DA Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment.").

### 2.    Claims Against Defendant Burton

### a.    Unlawful Seizure During Traffic Stop

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's unlawful seizure claim pursuant to the Fourth Amendment against Defendant Burton in his individual capacity related to the seizure that occurred on May 4 or 5, 2022.

### b.    *Miranda* Violation

"The Fifth Amendment protects against compulsory self-incrimination by forbidding the introduction of coerced statements into evidence at trial." *Harris v. Doe*, 24-CV-0151, 2024 WL 1344697, at *3 (D. Conn. Mar. 29, 2024). *Miranda*[5] warnings are not constitutionally required and instead, were developed as a means to protect the Fifth Amendment right against compulsory self-incrimination. *Harris*, 2024 WL 1344687, at *3. "Although failure to give *Miranda* warnings may be reason to preclude evidence against a defendant at a criminal trial, 'the failure to give *Miranda* warnings does not create liability under § 1983.'" *Spicer v. Burden*, 564 F. Supp. 3d 22, 30 (D. Conn. 2021) (quoting *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995) (*per curiam*)); *see Chavez v. Martinez*, 538 U.S. 760, 772 (2003) (explaining that the Fifth Amendment only forbids introduction of coerced statements at trial, so failure to provide *Miranda* warnings does not violate suspect's constitutional rights and "cannot be grounds for a § 1983 action").

---

[5]    *Miranda v. Arizona*, 384 U.S. 436 (1966).

As a result, I recommend Plaintiff's *Miranda* violation claim against Defendant Burton in his individual capacity be dismissed.

### c.    Falsification of Evidence

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's falsification of evidence claim pursuant to the Fourth Amendment against Defendant Burton in his individual capacity related to the document created on May 9, 2022.[6]

### 3.    Claims Against Defendant Hubbard

### a.    Due Process Claim

"It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursing a criminal prosecution is immune from a civil suit for damages under § 1983." *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (citation and internal quotation marks omitted) (collecting cases). "Because the immunity attaches to the official prosecutorial function and because the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions, the prosecutor has absolute immunity for the initiation and

---

[6]    Although Plaintiff appears to present this claim as a due process violation pursuant to the Fifth and Fourteenth Amendments, it appears to be more appropriately fashioned as a fabrication of evidence claim pursuant to the Fourth Amendment. "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under [Section 1983]." *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (citations omitted). The "right to a fair trial can be violated even if the fabricated evidence that was supplied to the prosecutor was not ultimately used at trial." *Moroughan v. Cnty. of Suffolk*, 514 F. Supp. 3d 479, 535 (E.D.N.Y. 2021) (citing *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 250 (2d Cir. 2020)).

conduct of a prosecution unless he proceeds in the clear absence of all jurisdiction." *Shmueli*, 424 F.3d at 237 (citations and internal quotation marks omitted).

These principles also protect a prosecutor against malicious prosecution claims brought under state law. *Shmueli*, 424 F.3d at 238; *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n.5 (1993) (indicating that the Court's conclusion that absolute immunity protects a prosecutor against § 1983 claims in the nature of malicious prosecution was based in part on the "common-law tradition of immunity for a prosecutor's decision to bring an indictment, whether he has probable cause or not"); *Imbler v. Pachtman*, 424 U.S. 409, 424 (1976) (same principles require conferral of absolute immunity for damages claims under § 1983 and state law).

"A prosecutor is not absolutely immune solely because she engaged in the conduct in question during her line of work." *D'Alessandro v. City of New York*, 713 F. App'x 1, 5 (2d Cir. 2017) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). "A prosecutor wears many hats" including "administrat[or]," "investigator," and "advocate[ ]." *D'Alessandro*, 713 F. App'x at 5 (quoting *Hill v. City of New York*, 45 F.3d 653, 656 (2d Cir. 1995)). However, the prosecutor is entitled to absolute immunity "when she acts as an 'advocate.'" *Id.* (citing *Warney v. Monroe Cnty.*, 587 F.3d 113, 121 (2d Cir. 2009)). "Under our case law, a prosecutor unquestionably acts as an advocate—and therefore receives absolute immunity—when she initiates and pursues a criminal prosecution." *Id.* (citing *Shmueli*, 424 F.3d at 236). Indeed, "a prosecutor still acts within the scope of her duties even if she . . . knowingly uses false testimony, . . . engages in malicious prosecution, or attempts to intimidate an individual into accepting a guilty plea." *D'Alessandro*, 713 F. App'x at 5 (citing *Shmueli*, 424 F.3d at 237-38; *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006)).

Here, the acts that Plaintiff alleges Defendant Hubbard took—presenting the evidence that was false or fabricated by Defendant Burton and offering plea bargains to Mr. Gilbertson and Mr. Bright—occurred while he engaged in acts "intimately associated with the judicial phase of the criminal process." *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Indeed, the Second Circuit has held that "[a] prosecutor is also entitled to absolute immunity despite allegations of his 'knowing use of perjured testimony' and the 'deliberate withholding of exculpatory information.'" *Shmueli*, 424 F.3d at 237 (quoting *Imbler*, 424 U.S. at 431 n.34). Further, "it has been well-settled law within this Circuit for [decades] that a prosecutor's ability to offer a plea bargain is firmly embedded within the absolute immunity doctrine." *Aretakis v. Durivage*, 07-CV-1273, 2009 WL 2567781, at *5 (N.D.N.Y. Aug. 17, 2009) (Treece, M.J.) (citing *Powers v. Coe*, 728 F.2d 97, 103 (2d Cir. 1984); *Taylor v. Kavanagh*, 640 F.2d 450, 453 (2d Cir. 1981); *see also Lawson v. Abrams*, 863 F.2d 260, 263 (2d Cir. 1998)).

As a result, I recommend that any due process claim against Defendant Hubbard in his individual capacity be dismissed because absolute immunity protects him from suit.

### b.     Excessive Bail

The Eighth Amendment states that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted ." U.S. Const. amend. VIII.

As discussed above, absolute immunity is available to prosecutors when they act within their prosecutorial role in the judicial process. *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993); *Bernard v. Cnty. of Suffolk,* 356 F.3d 495, 503 (2d Cir. 2004); *Hill v. City of New York,* 45 F.3d 653, 660 (2d Cir. 1995). "Prosecutors act within their prosecutorial roles during bail hearings." *Phillips v. DeAngelis*, 571 F. Supp. 2d 347, 358 (N.D.N.Y. 2008) (Hurd, J.) (citing

*Smith v. Garretto,* 147 F.3d 91, 94 (2d Cir.1998); *see Pinaud v. Cnty. of Suffolk,* 52 F.3d 1139,

1149 (2d Cir. 1995)).  Therefore, Plaintiff's claim of excessive bail against Defendant Hubbard

in his individual capacity should be dismissed based on the doctrine of absolute immunity.

### c.    Unlawful Imprisonment – Arraignment Delay

"[T]he Fourth Amendment provides the proper analytical framework" for claims that a

prosecutor's conduct "unconstitutionally prolonged [an arrestee's] postarrest detention." *Bryant*

*v. City of New York*, 404 F.3d 128, 135-36 (2d Cir. 2005).  "In the context of pretrial detention,

the Supreme Court has held that, when there has been a warrantless arrest, the Fourth

Amendment requires a prompt judicial determination of probable cause as a prerequisite to an

extended pretrial detention." *Bryant*, 404 F.3d at 135-36.  "[A] jurisdiction that provides judicial

determinations of probable cause within 48 hours of arrest will, as a general matter, comply with

the promptness requirement." *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991).  In

sum, "[w]hat is constitutionally required is that, except in extraordinary circumstances, the

arrestee be given a hearing into probable cause for the arrest within 48 hours." *Bryant*, 404 F.3d

at 138.  In New York, because probable cause determinations are made at arraignments, the

Fourth Amendment thus requires that an arrestee be arraigned within 48 hours. *Id.*

The Complaint alleges that Plaintiff was detained for about 96 hours before arraignment

(Dkt. No. 8 at 21), so his detention was presumptively unreasonable.

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se*

plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, and

without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to

dismiss or for summary judgment, I recommend that a response be required to Plaintiff's

unlawful imprisonment claim pursuant to the Fourth Amendment against Defendant Hubbard in his individual capacity related to Plaintiff's arraignment delay.

### 4.    Claims Against Defendant Smith

#### a.    Due Process

As set forth above in Part III.B.3.a. of this Report and Recommendation, I recommend that Plaintiff's claim against Defendant Smith in his individual capacity alleging a due process violation be dismissed based on the doctrine of prosecutorial immunity.

#### b.    Excessive Bail

As set forth above in Part III.B.3.b. of this Report and Recommendation, I recommend that Plaintiff's claim against Defendant Smith in his individual capacity alleging an excessive bail violation be dismissed based on the doctrine of prosecutorial immunity.

#### c.    Unlawful Imprisonment – Arraignment Delay

As set forth above in Part III.B.3.c. of this Report and Recommendation, I recommend that out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, a response be required to Plaintiff's unlawful imprisonment claim pursuant to the Fourth Amendment against Defendant Smith in his individual capacity related to Plaintiff's arraignment delay.

#### d.    Excessive and Unreasonable Sentence Claim

"State prisoners . . . must bring challenges both to the execution of a sentence and to underlying convictions under section 2254." *Blanchard v. New York*, 18-CV-0448, 2018 WL 2324054, at *2 (N.D.N.Y. May 22, 2018) (Suddaby, C.J.) (citing 28 U.S.C. § 2254(a); *Cook v.*

*New York State Div. of Parole*, 321 F.3d 274, 278 (2d Cir. 2003)).  Here, Plaintiff is incarcerated

in a state correctional facility, pursuant to a state criminal conviction, asserting that the execution

of his sentence is unlawful because it is both excessive and unreasonable.  Hence, to the extent

that Plaintiff wishes to pursue that claim, he must do so in the form of a petition pursuant to 28

U.S.C. § 2254.

Moreover, "[n]o federal constitutional issue is presented where . . . the sentence is within

the range prescribed by state law."  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992).  Here,

Plaintiff alleges that he received a determinate sentence of six years incarceration for the second

degree burglary conviction, which "is within the recommended guideline for that charge."  (Dkt.

No. 8 at 32.)

As a result, I recommend that Plaintiff's excessive and unreasonable sentence claim be

dismissed.

### e.    Violation of Self Incrimination Claim

"A guilty plea operates as a waiver of important rights."  *Hanson v. Phillips*, 442 F.3d

789, 798 (2d Cir. 2006).  "A defendant who enters [a guilty] plea simultaneously waives several

constitutional rights, including his privilege against compulsory self-incrimination, his right to

trial by jury, and his right to confront his accusers."  *McCarthy v. United States*, 394 U.S. 459,

466 (1969).

As a result, I recommend that Plaintiff's claim that his Fifth Amendment right against

compulsory self-incrimination was violated in the context of his plea allocution, be dismissed.

### 5.    Claims Against Defendants Hahl and Burkert

Federal claims of false arrest implicate the Fourth Amendment right to be free from

unreasonable seizures.  *See Posr v. Doherty*, 944 F.2d 91, 97 (2d Cir. 1991).  A § 1983 claim

alleging false arrest is "substantially the same" as the tort under New York state law.  *Posr*, 944 F.2d at 96.  "To state a claim for false arrest under New York law, a plaintiff must show that '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'"  *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)).

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's false arrest claim pursuant to the Fourth Amendment against Defendants Hahl and Burkert in their individual capacities.

## IV.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is

not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[7]

In this instance, Plaintiff has already amended the complaint once as of right pursuant to Fed. R. Civ. P. 15(a)(1).  However, the Second Circuit has made clear that where a *pro se* litigant asserts new claims in an amended complaint, the district court "should . . . afford[ Plaintiff] at least one opportunity to amend th[o]se newly asserted claims before entering a *sua sponte* dismissal with prejudice." *Mitchell v. Annucci*, 21-2978-pr, 2023 WL 8073106, at *4 (2d Cir. Nov. 21, 2023) (summary order).

As a result, although I have serious doubts about whether Plaintiff can replead to assert actionable claims, given that this is the Court's first review of Plaintiff's newly asserted claims and that Plaintiff is a *pro se* litigant, out of an abundance of caution, I recommend that he be permitted to replead the Amended Complaint to the extent that it asserts claims seeking monetary damages against (1) claims against Defendant Burton in his individual capacity alleging a *Miranda* violation; (2) Defendant Hubbard in his individual capacity alleging (a) a due process violation, and (b) excessive bail; and (3) claims against Defendant Smith in his individual capacity alleging (a) a due process violation, (b) excessive bail, (c) excessive and unreasonable sentence, and (d) violation of the right against self-incrimination.

---

[7]      *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

However, any amendments to the Amended Complaint (1) seeking to overturn Plaintiff's state court conviction, and (2) seeking monetary damages against New York State, or Defendants in their official capacities, would be futile. As a result, I recommend that those claims be dismissed without leave to amend.

If Plaintiff chooses to file a second amended complaint, he should note that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any second amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such second amended complaint will replace the existing Amended Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**ACCORDINGLY**, it is respectfully

**RECOMMENDED** that the Court **ACCEPT for filing** Plaintiff's Amended Complaint (Dkt. No. 8) to the extent that it asserts: (1) a claims against Defendant Burton in his individual capacity alleging (a) an unlawful seizure on May 4 or 5, 2022, and (b) falsification of evidence on May 9, 2022; (2) claims against Defendants Hubbard and Smith in their individual capacities alleging unlawful imprisonment for the arraignment delay; and (3) claims against Defendants Hahl and Burkert in their individual capacities alleging false arrest; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS** the Amended Complaint (Dkt. No. 8) **WITHOUT LEAVE TO REPLEAD** to the extent that it asserts: (1) claims seeking to challenge Plaintiff's state court criminal conviction; and (2) monetary damages against the State of New York and Defendants in their official capacities, pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS** the Amended Complaint (Dkt. No. 8) **WITH LEAVE TO REPLEAD** to the extent that it asserts: (1) a *Miranda* violation claim against Defendant Burton in his individual capacity; (2) claims against Defendant Hubbard in his individual capacity alleging (a) a due process violation, and (b) excessive bail; and (3) claims against Defendant Smith in his individual capacity alleging (a) a due process violation, (b) excessive bail, (c) excessive and unreasonable sentence, and (d) violation of the right against self-incrimination, pursuant to 28 U.S.C. § 1915(e)(2)(B), 1915A(b); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[8]

---

[8]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[9]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: September  18 , 2024
         Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[9]      If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Moalawi v. James, Not Reported in Fed. Supp. (2023)

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 28 of 126

2023 WL 4817618
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Ali MOALAWI, Plaintiff,

v.

Letitia JAMES, in her capacity as Attorney
General of the State of New York, Defendant.

22-CV-6770 (RA)
|
Signed July 27, 2023

**Attorneys and Law Firms**

Ali Moalawi, Huntington Station, NY, Pro Se.

Jacob Richard Samuels-Kalow, New York, NY, for
Defendant.

MEMORANDUM OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

 **\*1** Plaintiff, proceeding *pro se*, brings this action pursuant to
42 U.S.C. § 1983, challenging his February 5, 2018 New York
state court conviction. Plaintiff "seek[s] relief from this court
akin to the relief once available to [him] via federal habeas
corpus." For the reasons that follow, Plaintiff's Complaint is
dismissed.

**BACKGROUND**

On November 17, 2017, Plaintiff was convicted of burglary
in New York state court. Compl. ¶ 8. He was sentenced to
three and a half years of incarceration and two and a half
years of post-release supervision. *Id.* ¶ 9. The New York
Appellate Division, First Department, affirmed his conviction
and sentence on June 17, 2021; and the New York Court
of Appeals denied Plaintiff leave to appeal that decision
on August 4, 2021. *Id.* ¶¶ 11-12. Plaintiff does not allege
that he then filed a petition for a writ of habeas corpus or
made any other collateral attack on his conviction. In March
2022, Plaintiff was released from parole and thus "no longer
remain[s] within the custody or control of New York State."
*Id.* ¶ 17.

Acknowledging that he is no longer eligible for federal
habeas corpus relief, *see id.* ¶ 18, Plaintiff seeks to raise his
constitutional challenges via 42 U.S.C. § 1983. He alleges
primarily (1) that he was deprived of his federal due process
rights because there was insufficient evidence to support the
charges against him; and (2) that he was deprived of his Sixth
Amendment rights because his trial counsel was ineffective
and because he was precluded from testifying on his own
behalf. According to Plaintiff, his counsel's "performance fell
below what could be expected of a reasonably competent
trial counsel" because he "denied [Plaintiff his] chance to
present [his] stellar personal history" as well as "exculpatory
facts [he] planned to present during [his] testimony." *Id.*
¶ 48. Plaintiff also alleges that he was unfairly prejudiced
by the introduction of evidence that "the Terrorist Watch
was involved with the case," which, according to Plaintiff,
suggests that the government "hoped that some jurors would
determine ... this person of Middle Eastern descent was ...
guilty of something." *Id.* ¶¶ 62–64.

Plaintiff does not request damages; instead, he asks for an
order "vacating [his] conviction and directing the State of
New York to expunge the conviction forthwith or retry the
plaintiff within sixty days." *Id.* at 13.

**STANDARD OF REVIEW**

Under Federal Rule of Criminal Procedure 12(b)(6), a
pleading "must contain sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its face.'
" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). [1] Courts
"read the pleadings of a *pro se* plaintiff liberally and interpret
them to raise the strongest arguments that they suggest."
*McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999).
This is especially true when the plaintiff alleges civil rights
violations. *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d
Cir. 2004). "Nonetheless, a *pro se* complaint must state a
plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509,
515 (2d Cir. 2013).

**DISCUSSION**

 **\*2** As an initial matter, to the extent Plaintiff alleges
constitutional violations by "the state, the state trial court, and
the state prosecutor," those allegations fail because each of
these individuals are "absolutely immune from [his] claims."

*Teichmann v. New York*, 769 F.3d 821, 825 (2d Cir. 2014). Moreover, while Attorney General James appears to be an improper defendant in this action, the Court further notes that "a government attorney is entitled to absolute immunity when functioning as an advocate of the state in a way that is intimately associated with the judicial process." *Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir. 2006) (holding that the Connecticut Attorney General was absolutely immune from claims raised in a § 1983 suit). *Accord Owens v. State of N.Y. Att'y Gen.*, 10 F. App'x 34, 36 (2d Cir. 2001) (explaining that "amendment of the § 1983 and ADA claims contained in Owens's complaint would have been futile because the judges, attorney general, and assistant attorney general are immune from suit for their conduct").

More fundamentally, however, the Court must dismiss Plaintiff's action because the relief he seeks is not cognizable under § 1983. *Teichmann v. New York* is instructive in this respect. There, a plaintiff who had been convicted in state court and had completed his sentence filed a complaint in federal court under § 1983, "alleging that he had been convicted in violation of his constitutional rights ... and asking for his conviction to be vacated." 769 F.3d at 822. The Second Circuit affirmed the district court's dismissal, explaining that "§ 1983—while broad in its equitable and legal remedies— does not recognize a declaration of innocence, standing alone, as a cognizable form of relief." *Id.* at 826. The court further explained that "where a plaintiff seeks simply a declaration that there was a past injury, but claims no damages or injunction against future behavior, there is no § 1983 claim because there is no true case or controversy." *Id.* The Second Circuit's reasoning in *Teichmann* thus forecloses Plaintiff's action here.

The Complaint, moreover, must be dismissed for the additional reason that the *Rooker-Feldman* doctrine precludes federal district courts from reviewing final judgments of the state courts. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (holding that federal district courts are barred from deciding cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."). While *Rooker-Feldman* would not generally preclude Plaintiff from bringing a § 1983 action for a violation of his constitutional rights, dismissal is warranted insofar as "he seeks nothing more than a review of a state court judgment." *Teichmann*, 769 F.3d at 826; *see Mitchell v. New York State*, No. 22-cv-1747 (LDH) (LB), 2023 WL 2734823, at *4 (E.D.N.Y. Mar. 31, 2023) (dismissing, under *Rooker-Feldman* doctrine, § 1983 action because plaintiff "necessarily invites the Court to review the judgment of [his state court criminal] conviction.").

Finally, the Court will not grant leave to amend, as any amendment would be futile given the relief that Plaintiff seeks. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 4817618

---

**Footnotes**

1    Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, omissions, and alterations.

---

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Molina v. James, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 30 of 126

2022 WL 813815
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Juan Carlos MOLINA, Plaintiff,

v.

Letitia JAMES, State of New York; Anne
Donnelly; Estate of Rosalind & Joseph Gurwin;
and John Doe-Federal Insurance Company/
Chubb Group, President/CEO, Defendants.

21-CV-3144 (RPK) (JMW)
|
Signed 03/17/2022

**Attorneys and Law Firms**

Juan Carlos Molina, Wantagh, NY, Pro Se.

Toni E. Logue, NYS Attorney General's Office, Mineola, NY, for Defendant Letitia James.

Laurel R. Kretzing, Office of the Nassau County Attorney, Mineola, NY, for Defendant Madeline Singas.

Vincent Passarelli, Cozen O'Connor, New York, NY, for Defendant John Doe-Federal Insurance Company/Chubb Group.

**MEMORANDUM AND ORDER**

RACHEL P. KOVNER, United States District Judge:

**\*1** *Pro se* plaintiff Juan Carlos Molina brings this action under 42 U.S.C. § 1983, 18 U.S.C. § 641, and state law against the State of New York ("New York"), Nassau County, Letitia James, Anne Donnelly, the Estate of Rosalind & Joseph Gurwin ("Gurwin Estate"), and the President of the Federal Insurance Company/Chubb Group ("Federal").[1] *See* Am. Compl. 1-3 (Dkt. #7); Resp. to James Mot. to Dismiss 1-2 (Dkt. #15); Resp. to Donnelly Mot. to Dismiss 1-2 (Dkt. #19). Plaintiff alleges that defendants deprived him of his constitutional rights during a state criminal prosecution and a civil action that concluded almost forty years ago. *See, e.g.*, Pl.'s Aff. in Supp. ¶¶ 5-9 (Dkt. #7-4); Mem. in Supp. of Compl. 10-12 (Dkt. #7-4). Plaintiff also invokes this Court's habeas corpus jurisdiction under 28 U.S.C. § 2254. *See* Resp. to Donnelly Mot. to Dismiss 7; Pl.'s Mot. for Summ. J. (Dkt.

#23). Defendants James, Donnelly, and Federal have moved to dismiss the complaint. *See* James Mot. to Dismiss (Dkt. #12); Donnelly Mot. to Dismiss (Dkt. #17); Federal Mot. to Dismiss (Dkt. #22). For the reasons stated below, the motions to dismiss are granted. The Court also *sua sponte* dismisses all claims against the Gurwin Estate and plaintiff's claim under 18 U.S.C. § 641 as to all defendants.

**BACKGROUND**

The following facts are drawn from the complaint and plaintiff's opposition papers to defendants' motions to dismiss,[2] *see Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013), and are assumed true for the purposes of this order.

Plaintiff is a native Spanish-speaker from Argentina who came to the United States in 1970. Am. Aff. ¶ 2 (Dkt. #9). That year, plaintiff started working as a bookkeeper for a company called Prestex, Inc. ("Prestex") in Manhattan. *Id.* ¶ 6. In 1972, Prestex was sold to Joseph Gurwin. *See id.* ¶¶ 9-10.

**\*2** In 1981, an arsonist allegedly started a fire at Prestex's inventory offices that damaged the company's financial records. *See id.* ¶ 11. Plaintiff was assigned to reconstruct some of those records. *See ibid.* Because of plaintiff's work on the records, "unknown criminal persons" allegedly threatened plaintiff, "left a severed raccoon head and a Molotov cocktail on [his] lawn," and "shot at [him] in broad daylight." *Id.* ¶ 12. Those events caused plaintiff to resign from Prestex in March 1981. *Ibid.*

Plaintiff was arrested on May 15, 1981, and "was forced to sign a confession in English that [he] ... did not understand." *Id.* ¶¶ 13, 15. It seems that plaintiff was accused of stealing money from Prestex by diverting company funds into his private accounts. *See id.* ¶ 26; Mem. in Supp. of Compl. 24. Plaintiff was eventually tried and convicted of grand larceny, forgery, and possession of a forged instrument. *See* Am. Aff. ¶¶ 46-47. Plaintiff served seven years in prison and "was released (or paroled) on May 16, 1988." *Id.* ¶ 47.

Plaintiff challenged his conviction on direct appeal, through a petition for a writ of habeas corpus filed in federal district court in 1982, and through collateral attacks in state court. *See* Am. Aff. ¶¶ 53, 55-58. Plaintiff's most recent attempt to obtain post-conviction relief under New York Criminal Procedure Law § 440.10 was denied by the Supreme Court of the State of New York in September 2019, and the New York Appellate

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 31 of 126

Molina v. James, Not Reported in Fed. Supp. (2022)

Division denied plaintiff leave to appeal in January 2021. *See* Am. Aff. ¶¶ 71, 73.

Plaintiff alleges that he was deprived of his constitutional rights after his arrest, during the subsequent prosecution and trial, and on direct appeal. *See, e.g., id.* ¶¶ 13-27, 50; Mem. in Supp. of Compl. 33. Plaintiff also argues that New York lacked jurisdiction over his conduct. *See* Mem. in Supp. of Compl. 52 (citing 18 U.S.C. § 641). In addition, plaintiff appears to allege that his conviction was the result of a fraudulent financial statement prepared by Gurwin. *See* Pl.'s Letter dated Aug. 31, 2021 at 5 (Dkt. #21).

After plaintiff was arrested, Prestex and Gurwin filed a civil suit against plaintiff. *See* Am. Aff ¶ 28; Pl.'s Letter dated Aug. 31, 2021 at 3 (stating that Gurwin commenced a civil action). Prestex alleged that plaintiff stole millions of dollars from Prestex and used that money to buy two residential properties. *See* Mem. in Supp. of Compl. 10. Federal reimbursed Prestex for $1,000,000 and assumed Prestex's right to sue plaintiff. *See id.* at 11, 23. Federal then moved for summary judgment, and Gurwin submitted an affidavit in support of Federal's motion. *See id.* at 28. The state court granted summary judgment for Federal. *See id.* at 29. Plaintiff suggests that Federal submitted a "[f]raudulent [f]inancial [s]tatement ... in the civil case." *Id.* at 32.

On April 7, 2021, plaintiff filed this suit in the Southern District of New York. *See* Compl. (Dkt. #1). The case was transferred to this district on April 12, 2021. *See* Transfer Order (Dkt. #3). Plaintiff filed an amended complaint on June 8, 2021. *See* Am. Compl.

Plaintiff asks the Court to order New York and Nassau County "to vacate" plaintiff's conviction. Mem. in Supp. of Compl. 2; *see id.* at 53 (seeking order directed at James and Donnelly "to dismiss the [c]onviction and declare [p]laintiff [not guilty]"). Plaintiff also seeks damages for what he describes as "illegal incarceration" from New York and Nassau County, as well as from the Gurwin Estate and Federal. *See* at 53, 54; *see id.* at 2 Plaintiff also appears to ask the Court to direct the sale of certain property controlled by the Gurwin Estate. Pl.'s Letter dated Aug. 31, 2021 at 5.

**\*3** In addition, plaintiff invokes this Court's jurisdiction to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgement of a State court." 28 U.S.C. § 2254(a); *see* Resp. to Donnelly Mot. to Dismiss 7; Pl.'s Mot. for Summ. J.

Defendants James, Donnelly, and Federal filed motions to dismiss on the grounds that this Court lacks subject-matter jurisdiction and the complaint fails to state a claim. *See* James Mot. to Dismiss; Donnelly Mot. to Dismiss; Federal Mot. to Dismiss. Plaintiff then filed a motion for summary judgment against New York, Nassau County, and Federal and a motion for default judgment against the Gurwin Estate. *See* Pl.'s Mot. for Summ. J. 1.

On January 25, 2022, the Court issued an order advising plaintiff that the Court was prepared to *sua sponte* dismiss all claims against the Gurwin Estate and plaintiff's claim under 18 U.S.C. § 641 as to all defendants. *See* Order dated Jan. 25, 2022. The Court gave plaintiff an opportunity to file a memorandum responding to the potential grounds for dismissal. *See ibid.* Plaintiff filed a timely response. *See* Pl.'s Mem. dated Feb. 22, 2022 (Dkt. #27).

### STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must show that the Court has "the statutory or constitutional power to adjudicate" the action. *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015) (citation omitted). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). In deciding a Rule 12(b)(1) motion, the court "must take all facts alleged in the complaint as true." *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000)). "But where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (internal quotation marks and alteration omitted) (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

Molina v. James, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 32 of 126

*Iqbal*, 556 U.S. 662, 678 (2009). This means, for example, that a complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. A complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

When a plaintiff is proceeding pro se, the complaint must be "liberally construed, and ... however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citations omitted). Moreover, if a "liberal reading of the complaint gives any indication that a valid claim might be stated," the plaintiff should be given an opportunity to amend the complaint. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d. Cir. 1999) (per curiam)); *see Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009).

## DISCUSSION

### I. Habeas Corpus Claim

**\*4** Plaintiff appears to ask for the Court to construe the complaint as a petition for a writ of habeas corpus under 28 U.S.C. § 2254. *See* Resp. to Donnelly Mot. 7. But this Court does not have jurisdiction over such a petition because plaintiff has not adequately alleged that he is in custody. *See* Donnelly Mem. in Supp. of Mot. to Dismiss 5 (Dkt. #17-1) ("Donnelly Mem.").

"In order for a federal court to have jurisdiction over a habeas petition, the petitioner must be 'in custody pursuant to the judgment of a State court' at the time the petition is filed." *Vega v. Schneiderman*, 861 F.3d 72, 74 (2d Cir. 2017) (quoting 28 U.S.C. § 2254(a)). A petitioner need not be in "actual, physical custody" to satisfy the custody requirement. *Ibid.* (quoting *Jones v. Cunningham*, 371 U.S. 236, 239-40 (1963)). "[A] significant restraint upon [petitioner's] physical liberty 'not shared by the public generally' " can count as custody for purposes for Section 2254. *Ibid.* (quoting *Cunningham*, 371 U.S at 240). Accordingly, a petitioner on parole under an unexpired sentence is "in custody," while a petitioner whose sentence has fully expired is generally not. *See Maleng v. Cook*, 490 U.S. 488, 491-92 (1989). And once a sentence has expired, "the collateral consequences of that conviction are

not themselves sufficient to render an individual in custody." *Id.* at 492 (internal quotation marks omitted).

Plaintiff does not appear to have filed his petition while he was "in custody." 28 U.S.C. § 2254(a). Plaintiff alleges that he was released on parole in 1988, about thirty-four years ago. And plaintiff does not suggest that he was still on parole when he filed this case in 2021. Mem. in Supp. of Compl. 37-38; *see Minus v. New York*, No. 15-CV-1547 (PGG), 2019 WL 2022069, at \*2 (S.D.N.Y. May 7, 2019) (finding it "reasonable to assume" given petitioner's release seven years prior to date petition was filed that parole would have expired). Although plaintiff claims that he lost "everything he had worked for and built" after being incarcerated, Mem. in Supp. of Compl. 2-A, that statement alleges, at most, collateral consequences of his conviction that do not render him "in custody" under Section 2254. Because the petition does not meet the jurisdictional requirements of Section 2254, the petition is denied without prejudice.

### II. Claim for Injunctive Relief

Donnelly's motion to dismiss plaintiff's claim for injunctive relief for lack of subject-matter jurisdiction is granted. *See* Donnelly Mot. to Dismiss 5-6.

Plaintiff's request for an injunction directing certain defendants to dismiss plaintiff's conviction and declare him not guilty is barred by the *Rooker-Feldman* doctrine. *See, e.g.*, Mem. in Supp. of Compl. 53. That doctrine establishes that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Sung Cho v. City of New York*, 910 F.3d 639, 644 (2d Cir. 2018) (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005)). But it is "confined to ... cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In contrast, it does not bar a plaintiff from "present[ing an] independent claim ... that denies a legal conclusion that a state court has reached in a case to which he was a party." *Id.* at 293 (citation omitted). Accordingly, for a claim to be barred, "four requirements must be met: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Sung Cho*, 910 F.3d at 645 (citing

Molina v. James, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 33 of 126

*Hoblock*, 422 F.3d at 85). These limitations are stringent enough that one court of appeals recently advised district courts to "keep one thing in mind when *Rooker-Feldman* is raised: it will almost never apply." *Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021).

**\*5** This is one of those rare cases in which *Rooker-Feldman* does bar claims brought in federal court. The first and fourth *Rooker-Feldman* requirements are met because plaintiff lost his state criminal case in 1982. *See* Am. Aff. ¶ 47. As to the second requirement, plaintiff's alleged injuries appear to be financial harm caused by his state criminal conviction. *See* Am. Compl. 4 ("Relief"); Mem. in Supp. of Compl. 2-A. Finally, regarding the third requirement, an injunction ordering the dismissal of the criminal conviction and a declaration that plaintiff is not guilty would require district court review and rejection of the state court judgment of plaintiff's guilt. Courts in this circuit have found the *Rooker-Feldman* requirements satisfied under similar circumstances. *See Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 705-06 (S.D.N.Y. 2011) (finding no subject-matter jurisdiction under *Rooker-Feldman*, where plaintiff requested to "void ... conviction entered by ... state courts"); *Schafer v. Coyne*, No. 12-CV-40 (RJA) (JJM), 2017 WL 975895, at \*3 (W.D.N.Y. Mar. 14, 2017) (finding *Rooker-Feldman* applied even where complaint did "not expressly seek ... reversal of ... state court conviction" but rather alleged that plaintiff "was wrongly convicted because of defendants' conduct"); *see also Teichmann v. New York*, 769 F.3d 821, 826 (2d Cir. 2014) (explaining that while *Rooker-Feldman* "does not preclude a [Section] 1983 action ... against a state official who violates a plaintiff's constitutional rights[,].... [t]o the extent that [plaintiff] only seeks a declaration that his state conviction is invalid, he seeks nothing more than review of a state court judgment").

For those reasons, plaintiff's claim for injunctive relief amounts to an appeal from a state court judgment. That claim is therefore dismissed under *Rooker-Feldman* for lack of subject-matter jurisdiction.

### III. Claims Against New York

Plaintiff's claims against New York and against James in her official capacity as Attorney General for money damages are barred by sovereign immunity. Even if *Rooker-Feldman* did not bar plaintiff's claim for injunctive relief, that claim would also be barred by sovereign immunity as to New York and James in her official capacity.

State governments may not be sued in federal courts by private parties "unless they have waived their Eleventh Amendment immunity or unless Congress" has abrogated it. *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotations and citations omitted); *see Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253-54 (2011). And when a private party sues a state government employee "for damages in his [or her] official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). No waiver or abrogation of sovereign immunity has occurred here. *See Li v. Lorenzo*, 712 F. App'x 21, 22 (2d Cir. 2017) (summary order). Accordingly, plaintiff's claims against New York and for money damages against James in her official capacity are dismissed.

The Eleventh Amendment also bars plaintiff's claim for injunctive relief against James. Under *Ex parte Young*, 209 U.S. 123 (1908), "a plaintiff may sue a state official acting in [her] official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law." *State Emps. Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (quoting *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007)). But plaintiff does not allege an "ongoing violation of federal law" that could be remedied through prospective injunctive relief. *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Instead, plaintiff seeks to vacate a state criminal judgment entered against him decades ago. *See United Mexican States v. Woods*, 126 F.3d 1220, 1223 (9th Cir. 1997) (rejecting argument that challenges to validity of a criminal conviction "can give rise to prospective relief under *Ex parte Young*" because while a conviction can be "examined *post hoc* in state post-conviction proceedings and federal habeas," they cannot "be examined in a prospective fashion"); *see Republic of Paraguay v. Allen*, 134 F.3d 622, 629 (4th Cir. 1998) (applying *Woods*). Since plaintiff cannot reply on *Ex parte Young* to obtain the retrospective injunctive relief that he seeks, plaintiff's claim for an injunction against James in her official capacity is dismissed.

### IV. Claims Against Nassau County

**\*6** Donnelly's motion to dismiss plaintiff's Section 1983 claims against Donnelly in her official capacity and claims against Nassau County for failure to state a claim is granted.[3] Even assuming that this Court has jurisdiction over plaintiff's claim for injunctive relief, all of plaintiff's Section 1983

claims against Nassau County fail because plaintiff has not adequately pleaded an official policy or custom that caused plaintiff to be deprived of his rights. *See* Donnelly Mot. to Dismiss at 10-11.

A municipality such as Nassau County can be liable under Section 1983 only if an "action pursuant to official municipal policy of some nature" caused the alleged deprivation of the plaintiff's rights. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978); *see Connick v. Thompson*, 563 U.S. 51, 60-61 (2011). Municipalities "are not vicariously liable under [Section] 1983 for their employees' actions." *Connick*, 563 U.S. at 60 (citation omitted). A plaintiff who seeks to hold a municipality liable under Section 1983 must allege (i) "an official policy or custom," that (ii) "cause[d] the plaintiff to be subjected to," (iii) a "denial" of a federally guaranteed right. *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). A plaintiff can allege a municipal policy or custom by pointing to "decisions of a government's lawmakers, the acts of its policymaking officials, ... practices so persistent and widespread as to practically have the force of law" or, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights." *Connick*, 563 U.S. at 61 (citations omitted). *Monell* applies regardless of whether a plaintiff seeks monetary damages or "prospective relief, such as an injunction or a declaratory judgment." *L.A. County v. Humphries*, 562 U.S. 29, 31 (2010).

Here, plaintiff has not alleged an official policy or custom on the part of Nassau County that caused him to be deprived of his federal rights. Plaintiff alleges that a homicide detective arrested plaintiff without a warrant and took other actions that violated plaintiff's rights. *See* Am. Aff. ¶¶ 13-15, 21. But isolated acts "by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012).

Plaintiff's allegations of "improper conduct by the prosecution" in his case, Mem. in Supp. of Compl. 49, are similarly inadequate. Plaintiff accuses prosecutors of "introducing false evidence and potential [*Brady*] violations," *ibid.*, and he asserts that the prosecution "always tried to mislead the court," *id.* at 31; *see id.* at 15-16. But plaintiff does not specify what false evidence the prosecution introduced or what *Brady* material the prosecution withheld. Without additional factual detail, these statements amount to conclusory allegations that are insufficient to survive a

motion to dismiss. In any event, plaintiff does not allege that prosecutors misled the court, introduced false evidence, or withheld *Brady* material pursuant to an official policy or custom. *Cf. Bellamy v. City of New York*, 914 F.3d 727, 757 (2d Cir. 2019) (holding that *Monell* claim was properly brought against City of New York for actions of county prosecutors where plaintiff had alleged two relevant policies, an "information barrier" and a "failure to discipline summation misconduct"); *O'Hara v. City of New York*, No. 17-CV-4766, 2019 WL 2326040, at *9 (E.D.N.Y. May 31, 2019) (denying motion to dismiss *Monell* claim where plaintiff alleged a District Attorney acted as a policymaker and maintained an unlawful policy and where the complaint "provide[d] many specific examples supporting those allegations"), *mot. for reconsideration granted on other grounds*, 2020 WL 8881554 (E.D.N.Y. Apr. 21, 2020).

**\*7** Because plaintiff has not stated a *Monell* claim, plaintiff's Section 1983 claims against Nassau County are dismissed.

## V. Claims Against Federal Insurance Company

Federal's motion to dismiss plaintiff's claims against it on the basis that plaintiff fails to allege that Federal acted under color of state law is granted. [4] *See* Mem. in Supp. of Federal Mot. to Dismiss 8 (Dkt. #22-1) ("Federal Mem.").

Section 1983 permits suit against any person who deprives another of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. However, "[w]hen Congress enacted [Section] 1983 as the statutory remedy for violations of the Constitution, it specified that the conduct at issue must have occurred 'under color of' state law." *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988); *see Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 263-64 (2d Cir. 2014). As a result, suits may only be brought against private individuals "if, [and] only if," a "close nexus [exists] between the State and the challenged action." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quotation marks and citation omitted). Plaintiff alleges no such nexus. Instead, plaintiff merely alleges that Federal participated in civil litigation against him and prepared a fraudulent financial statement. *See* Mem. in Supp. of Compl. 23, 32. Nothing in the complaint indicates that Federal bore any relationship to the state, or that Federal's actions "may be fairly treated as that of the State itself." *Brentwood Acad.*, 531 U.S. at 295 (citation omitted). And plaintiff's allegation in his response to the Court's January 25 Order

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 35 of 126

Molina v. James, Not Reported in Fed. Supp. (2022)

that Federal was "endowed by the [s]tate with powers or functions governmental in nature and [became an] instrument of the [s]tate," Pl.'s Mem. dated Feb. 22, 2022 at 2, is a "mere conclusory statement[ ]" that cannot alone plead a Section 1983 claim, *Iqbal*, 556 U.S. at 678; *see Peterec-Tolino v. Ace Am. Ins. Co.*, No. 20-CV-5345 (LLS), 2020 WL 5211045, at *5 (S.D.N.Y. Aug. 28, 2020) (finding allegations that insurance company provided insurance payments and sought recovery for payments insufficient to plead a close nexus). Accordingly, plaintiff's Section 1983 claims against Federal are dismissed.

## VI. Claims Against Gurwin Estate

Plaintiff has moved for a default judgment against the Gurwin Estate, which has not appeared in this action. *See* Pl.'s Mot. for Summ. J. 1. But a party moving for default judgment is not automatically entitled to such a judgment. Assuming that the other requirements of Federal Rule of Civil Procedure 55 have been met, a court must determine whether the moving party's allegations "establish [the defaulting party's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

**\*8**  Although the Gurwin Estate has not answered the complaint or filed a motion to dismiss, the allegations against that defendant are insufficient to state a claim for substantially the same reasons as applied to the claims against Federal. Plaintiff does not allege that a close nexus existed between the Gurwins and the state such that the Gurwins acted under color of state law. *See Brentwood Acad.*, 531 U.S. at 295 (citation omitted). Plaintiff alleges that Gurwin participated in civil litigation against him, colluded with Federal, and prepared a fraudulent financial statement. *See* Mem. in Supp. of Compl. 11-12, 21-22; Pl.'s Letter dated Aug. 31, 2021 at 3. Those allegations do not establish that Gurwin had a close nexus with the state. Nor does the fact that Gurwin cooperated with the state's investigation and prosecution of plaintiff by providing the state with documents mean that a close nexus linked Gurwin and the state. Pl.'s Mem. dated Feb. 22, 2022 1; *see Levine v. City of New York*, No. 12-CV-3653 (KAM) (RML), 2014 WL 3778748, at *5 (E.D.N.Y. July 31, 2014) (adopting report and recommendation). And as I explained above, plaintiff's conclusory allegation that Gurwin was given governmental powers and became "an instrument of the [s]tate," Pl.'s Mem. dated Feb. 22, 2022 at 2, is insufficient to plead a Section 1983 claim. Therefore, plaintiff's Section 1983 claim is dismissed.

## VII. Section 641 Claim

Plaintiff also invokes 18 U.S.C. § 641 in the complaint, but that statute does not provide a cause of action for plaintiff's claim. "Section 641 criminalizes embezzlement of public funds" and "provides no basis for civil liability." *Bell v. N.Y. State Dep't of Corrs. & Cmty. Supervision*, No. 17-CV-937, 2019 WL 1305809, at *12 (N.D.N.Y. Mar. 22, 2019) (collecting cases). Plaintiff offers no alternative explanation as to how Section 641 could apply in this case. *See* Pl.'s Mem. dated Feb. 22, 2022. Therefore, to the extent that plaintiff intends to bring a claim under Section 641, the Court *sua sponte* dismisses that claim as to all defendants.

## VIII. State-Law Claims

To the extent that plaintiff's complaint could be construed to raise any state-law claims, the Court sees no basis for diversity jurisdiction and declines to exercise supplemental jurisdiction over them. *See, e.g.*, Resp. to James Mot. to Dismiss 2 (asking the Court "to remand [j]urisdiction to viable [s]tate [l]aw claims").

Plaintiff appears to assert a basis in diversity jurisdiction against Federal. *See* Am. Compl. 3. Complete diversity as required by 28 U.S.C. § 1332 must "be distinctly and positively averred in the pleadings, or should appear with equal distinctness in other parts of the record." *Leveraged Leasing Admin Corp. v. PacifiCorp Cap., Inc.*, 87 F.3d 44, 47 (2d Cir. 1996) (citation omitted). "[A] statement of the parties' residence is insufficient to establish their citizenship." *Ibid.* For complete diversity to be satisfied, no plaintiff can share citizenship with any defendant. *See ibid.* Plaintiff has not filled out the section of the form complaint alleging his own citizenship or the citizenship of any party other than Federal. I have an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party," *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006), and I cannot conclude that complete diversity exists in this case such that I would have diversity jurisdiction over the action.

James argues that the Court should decline to exercise supplemental jurisdiction over remaining state law claims. *See* Mem. in Supp. of James Mot. to Dismiss 6 (Dkt. #12-1). I agree. Four factors bear on whether it is appropriate to exercise supplemental jurisdiction: "judicial economy, convenience, fairness, and comity." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018). Those factors would counsel in favor of dismissing plaintiff's state-

Molina v. James, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 36 of 126

law claims in the event that his federal claims are dismissed. This case is still in its preliminary stages. The action has not passed beyond the pleading stage, and it would be at least as convenient and fair for the parties to litigate plaintiff's state-law claims in state court. Indeed, "[i]t is well settled that where ... the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendant jurisdiction over remaining state law claims." *Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006); *see Brzak v. United Nations*, 597 F.3d 107, 113-14 (2d Cir. 2010). Since all of plaintiff's federal law claims have been dismissed, I decline to exercise supplemental jurisdiction over any state-law claims that plaintiff asserts.

**CONCLUSION**

**\*9** All of plaintiff's federal-law claims against New York, James in her official capacity, Donnelly in her official capacity, Nassau County, and Federal are dismissed. I *sua sponte* dismiss plaintiff's Section 641 claim and claims against the Gurwin Estate, and I decline to exercise supplemental jurisdiction over any remaining state-law claims. Plaintiff may file an amended complaint within thirty days of this Order correcting the deficiencies identified in this Order. All proceedings in this case are stayed for thirty days. If plaintiff fails to file an amended complaint, the case will be dismissed. I certify under 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore deny *in forma pauperis* status for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 813815

---

**Footnotes**

1    Plaintiff originally sued Madeline Singas, the former Nassau County District Attorney, in her official capacity. During the pendency of this action, Anne Donnelly became the Nassau County District Attorney. Pursuant to Federal Rule of Civil Procedure 25(d), Donnelly is substituted for Singas. The Clerk of Court is respectfully directed to amend the caption to reflect that substitution.

Plaintiff sometimes refers to the Gurwin Estate in conjunction with an entity that he calls the "Jewish Geriatric Center of Long Island." *See, e.g.*, Pl.'s Mot. for Summ. J. 1. Because plaintiff does not appear to bring independent claims against the Jewish Geriatric Center, and for the sake of simplicity, this Order uses the name "Gurwin Estate" for that defendant.

2    While plaintiff's filing at Docket No. 23 is styled as a paper "in support of final [summary judgment]," the document responds to defendants' motion to dismiss arguments and appears to clarify factual allegations made in plaintiff's other filings. *See, e.g.*, Pl.'s Mot. for Summ. J. 14. Accordingly, for purposes of this Order, the Court construes plaintiff's motion for summary judgment as part of plaintiff's oppositions to the motions to dismiss.

3    Plaintiff's responsive papers clarify that his claims should be construed as against Nassau County. *See* Resp. to Donnelly Mot. to Dismiss 2 (asserting plaintiff does not sue Donnelly "in her [personal capacity]" and instead brings claims against Nassau County); *see also Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, ... local government units can be sued directly for damages and injunctive or declaratory relief.")

4    Federal construes the complaint as seeking to overturn a summary judgment decision that Federal won in a state court civil case. *See* Federal Mot. to Dismiss 5-6. Federal moves to dismiss that claim for lack of subject-matter jurisdiction under *Rooker-Feldman*. *See ibid.* But as Federal admits, plaintiff does not indicate

in the pleadings that he intends to overturn that state court decision. *See ibid.* Since the pleadings cannot be fairly construed to raise such a claim, I decline to resolve Federal's *Rooker-Feldman* argument.

---

**End of Document**                                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2003 WL 24243989
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Salvatore OGNIBENE, Plaintiff,

v.

NIAGARA COUNTY SHERIFF'S DEPARTMENT,
Niagara County District Attorney's Office, Samuel
Novara, Esq., Town of Wheatfield Court, Niagara
County Court, Niagara County Supreme Court, New
York State Appellate Division, 4 TH Judicial Dept.,
and New York State Court of Appeals, Defendants.

No. 03–CV–0678E(SR).
|
Dec. 1, 2003.

**Attorneys and Law Firms**

Salvatore Ognibene, Niagara Falls, NY, pro se.

DECISION AND ORDER

ARCARA, J.

*INTRODUCTION*

 **\*1**  Plaintiff has filed this *pro se* action seeking relief under 42 U.S.C. § 1983 (Docket No. 1, 3) and has requested permission to proceed *in forma pauperis* (Docket No. 2). Plaintiff claims that the defendants have violated his constitutional rights in relation to an arrest that occurred on July 10, 1997 for which plaintiff was given an Adjournment in Contemplation of Dismissal ("ACD") [1] on November 17, 1997 in the Town of Wheatfield (New York) Town Court. (Complaint, ¶ 5). Apparently, plaintiff later filed some type of motion or appeal in the Town Court of Wheatfield seeking to dismiss the ACD. (Docket No. 3, Table of Contents). [2] This motion was denied and appeals ensued through the state court system all the way to the New York Court of Appeals, which denied plaintiff leave to appeal on or about September 17, 2003. (Complaint, ¶¶ 5–10; Table of Contents, ¶¶ 2–6). For the reasons discussed below, plaintiff's request to proceed as a poor person is granted and the complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

*DISCUSSION*

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a), plaintiff is granted permission to proceed *in forma pauperis*. Section 1915(e)(2)(B) of 28 U.S.C. provides that the Court shall dismiss a case in which *in forma pauperis* status has been granted if, at any time, the Court determines that the action (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

In evaluating the complaint, the Court must accept as true all factual allegations and must draw all inferences in plaintiff's favor. *See King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999). Dismissal is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "This rule applies with particular force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*" *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998).

Based on its evaluation of the complaint, the Court finds that plaintiff's claims must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because they fail to state a claim upon which relief may be granted.

*Plaintiff's Allegations*

Plaintiff alleges that his constitutional rights were violated and therefore brings this action pursuant to 42 U.S.C. § 1983. In order to state a claim under § 1983, plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993).

Plaintiff names as defendants: (1) the Niagara County Sheriff's Department ("Sheriff's Department"), the law enforcement agency that responded to his daughter's "911" telephone call, which occurred while plaintiff was admittedly striking her in his home on July 10, 1997, and took plaintiff into custody (Complaint, Statement of Claim, ¶¶ 1–3); (2) the Niagara County District Attorney's Office ("DA's Office")

that, assumably, prosecuted plaintiff following this arrest; (*id.,* ¶¶ 4–5); (3) Samuel J. Novara, plaintiff's defense counsel in the proceedings in Town Court (*id.,* ¶ 6); (4) the Town of Wheatfield Town Court ("Wheatfield Town Court"), "Presiding" Town Justice Robert Cliffe, where plaintiff was prosecuted and obtained an ACD on November 17, 1997 (*id.,* ¶ 5); (5) the Niagara County Court ("County Court"), "Presiding" Judge, Hon. Peter Broderick, the court to which plaintiff appealed on or about April 14, 2000 (Complaint; Table of Contents, ¶ 3); (6) the New York Supreme Court, Niagara County ("State Supreme Court"), "Presiding" Justice, Hon. John Lane, the court to which plaintiff appealed on or about February 16, 2001 and which denied his request for relief on or about June 13, 2001 (Table of Contents, ¶ 3); (7) the New York State Supreme Court, Appellate Division, Fourth Department ("Appellate Division"), "Presiding" Justice Pine, and Justices Hayes, Hurlburt, Kehoe and Burns, the court to which plaintiff further appealed and which dismissed plaintiff's appeal on April 23, 2002 for failure to prosecute (Complaint, Statement of Claim, ¶ 8; Table of Contents, ¶ 6 A—B); and (8) the New York Court of Appeals ("Court of Appeals"), "Presiding" Justice, Hon. Judith Kaye, which denied plaintiff leave to appeal on or about September 17, 2003. (Complaint, ¶ 10; Table of Contents, ¶ 7).

**\*2** The plaintiff's complaint, liberally construed, appears to allege a violation of plaintiff's civil rights based upon claims of false arrest and false imprisonment on July 10–11, 1997 arising out of his arrest (Complaint, Statement of Claim, ¶¶ 2–4), and the "faulty procedures" of the prosecutor and the courts. The complaint also alleges that the prosecutor and the courts named as defendants failed to insure that plaintiff obtained his *Miranda* warnings and his "right" to give a statement, and that they failed to insure that he obtained his various Sixth Amendment rights, such as the right to a speedy public trial, the right to an impartial jury, the right to notice of the charges against him, the right to confront witnesses, the right to compulsory process, and the right to counsel. (*Id.,* ¶¶ 4–10). The complaint also includes a claim of either a violation of § 1983 or legal malpractice or both against plaintiff's defense attorney. (*Id.,* ¶ 6).

### Claims against Sheriff's Department, DA's Office and Wheatfield Town Court

Plaintiff's claims against the Sheriff's Department, the DA's Office and the Wheatfield Town Court must be dismissed.

First, plaintiff's § 1983 claims against these three defendants accrued at the earliest on July 10, 1997 when he was arrested, and at the latest either on November 17, 1997, when the charges against him were resolved by means of an ACD (Complaint, Statement of Claim, ¶¶ 3–5; Table of Contents, ¶¶ 1–2), or on March 28, 2000, when a motion plaintiff made in the Town Court was denied. (Table of Contents, ¶ 2). The statute of limitations for an action filed under 42 U.S.C. § 1983 in a federal court sitting in New York is three years. *Owens v. Okure,* 488 U.S. 235, 251, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Jewell v. County of Nassau,* 917 F.2d 738, 740 (2d Cir.1990). Therefore, any and all claims against these defendants are time barred.

Second, the claims against the Sheriff's Department, the DA's Office, and the Wheatfield Town Court must also be dismissed because there is no allegation that any of the individual government officials, such as the Town Justice, deputies or assistant prosecutors, were acting pursuant to a policy or custom of the Town of Wheatfield or Niagara County. In the absence of such an allegation, the complaint fails to state a claim for relief and must be dismissed. *See Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipalities are not subject to § 1983 liability solely on the basis of a respondeat *superior* theory. *Collins v. City of Harker Heights,* 503 U.S. 115, 121, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *Monell,* 436 U.S. at 694.

Additionally, to the extent that the plaintiff may have intended to sue the Town Justice individually (Complaint, Defendant's Information), in addition to or instead of the Town Court, the Town Justice would be entitled to absolute judicial immunity. *See Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (internal quotations and citation omitted). The same would be true with respect to the District Attorney or any Assistant District Attorneys involved in the prosecution of plaintiff. Prosecutors are entitled to absolute immunity from suits brought under § 1983 "arising out of [their] prosecutorial duties that are 'intimately associated with the judicial phase of the criminal process." ' *Doe v. Phillips,* 81 F.3d 1204, 1209 (2d Cir.1996) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)), *cert. denied,* 520 U.S. 1115 (1997). Accordingly, the claims against the Sheriff's Department, the DA's Office, the Wheatfield Town Court and, to the extent he is a defendant herein, the Town Justice, Robert B. Cliffe, are dismissed.

Ognibene v. Niagara County Sheriff's Dept., Not Reported in F.Supp.2d (2003)

*Claims against County Court, State Supreme
Court, Appellate Division, and Court of Appeals*

**\*3**  Plaintiff's complaint purports to allege that these courts
somehow violated his numerous Sixth Amendment rights.
In reality, however, what plaintiff is alleging is that these
courts were in error when they denied or dismissed his various
requests to overturn the ACD disposition of the charges
arising from the July 10, 1997 incident. These claims too must
be dismissed.

To the extent the plaintiff names various state courts as
defendants and seeks either legal or equitable relief against
them under § 1983, they are immune from such suit under
the Eleventh Amendment. *Papasan v. Allain,* 478 U.S. 265,
276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Pennhurst State
School & Hospital v. Halderman,* 465 U.S. 89, 98–100, 104
S.Ct. 900, 79 L.Ed.2d 67 (1984). As agencies or arms of the
State of New York, the courts are immune from suit under
the Eleventh Amendment. *See Kentucky v. Graham,* 473 U.S.
159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114; *see also Saint–
Fleur v. City of New York,* 2000 WL 280328, \*2 (S.D.N.Y.,
Mar.14, 2000) (collecting cases); *Fields v. Walthers,* No. 94–
CV–1659, 1997 WL 204308 at \*2 (N.D.N.Y. April 5, 1997)
("For Eleventh Amendment purposes, governmental entities
of the state that are considered 'arms of the state' receive
Eleventh Amendment immunity."). Accordingly, plaintiff's
claims against the County Court, the State Supreme Court,
the Appellate Division, and the Court of Appeals must be
dismissed.

*Claims against Samuel Novara*

The complaint names Samuel Novara, plaintiff's defense
counsel, as a defendant, and either alleges a § 1983 claim
or a state common law legal malpractice claim, or both,
against him. In any event, the claim or claims pled against this
defendant must be dismissed. First, assuming that plaintiff
intended to sue defense counsel under § 1983, such a claim
must be dismissed because criminal defense counsel are not
"state actors" for purposes of the "state action" requirement
of § 1983. *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct.
445, 70 L.Ed.2d 509 (1981). Second, assuming that plaintiff
intended to sue his defense counsel for legal malpractice in
relation to the handling and disposition of his criminal matter,
this Court declines to exercise supplemental jurisdiction, 28
U.S.C. § 1367, over said claim because all the federal claims

have been dismissed at the initial stage of the litigation.
*See Valencia ex rel. Franco v. Lee,* 316 F.3d 299, 305 (2d
Cir.2003); 28 U.S.C. § 1367(c)(3); *see also Giordano v. City
of New York,* 274 F.3d 740, 754 (2d Cir .2001) (noting that
dismissal of pendent state law claims is appropriate where all
federal claims have been dismissed and "it appears that the
state issues substantially predominate") (internal quotation
marks omitted). Accordingly, the complaint is dismissed
without prejudice as against defendant Novara.

*CONCLUSION*

Plaintiff has met the statutory requirements of 28 U.S.C.
§ 1915(a). Accordingly, plaintiff's request to proceed *in
forma pauperis* is granted and, for the reasons discussed
above, the complaint is dismissed with prejudice, pursuant
to 28 U.S.C. § 1915(e)(2)(B)(ii), except with respect to the
state common law legal malpractice claim against defendant
Samuel Novara, which is dismissed without prejudice.

**\*4**  The Court hereby certifies, pursuant to 28 U.S.C. §
1915(a)(3), that any appeal from this Order would not be
taken in good faith, and leave to appeal to the Court of
Appeals as a poor person is denied. *Coppedge v. United
States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).
Further requests to proceed on appeal as a poor person should
be directed, on motion, to the United States Court of Appeals
for the Second Circuit, in accordance with Rule 24 of the
Federal Rules of Appellate Procedure.

*ORDER*

IT HEREBY IS ORDERED, that plaintiff's request to proceed
*in forma pauperis* is granted;

FURTHER, that the complaint is dismissed with prejudice,
except with respect to the state common law legal malpractice
claim against defendant Samuel Novara, which is dismissed
without prejudice; and

FURTHER, that leave to appeal to the Court of Appeals as a
poor person is denied.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2003 WL 24243989

---

### Footnotes

1    *See* N.Y.Crim. Proc. Law § 170.55. This disposition cannot be obtained without the consent of both parties and the court. *Id.*

2    Shortly after filing the complaint, plaintiff filed what he entitled a "Table of Contents" which outlines the dates of the various court filings and dispositions that are at issue in his complaint. This Court will treat this Table of Contents as a document attached to the complaint and incorporated by reference in the complaint. *Chance v. Armstrong,* 143 F.3d 698, 698 n. 1 (2d Cir.1998) ("the court may consider facts set forth in exhibits attached as part of the complaint as well as those in the formal complaint itself"); *see Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991) ("the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference").

---

End of Document                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Riley v. Cuomo, Not Reported in Fed. Supp. (2018)

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 42 of 126

2018 WL 1832929
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Russell RILEY, Plaintiff,

v.

Andrew CUOMO, in his official capacity
as governor of the State of New York,
New York State Police, Defendant(s).

2:17-cv-01631 (ADS)(AYS)
|
Signed 04/16/2018

**Attorneys and Law Firms**

Christopher Joseph Cassar, 13 East Carver Street,
Huntington, NY 11743, By: Christopher J. Cassar, Esq., Of
Counsel, Attorney for the Plaintiff.

New York State Office of the Attorney General, Nassau
Regional Office, 200 Old Country Road, Suite 240, Mineola,
NY 11501, By: Christina H. Bedell, Assistant Attorney
General, Counsel for the Defendants.

**MEMORANDUM OF DECISION & ORDER**

ARTHUR D. SPATT, United States District Judge

 **\*1** The Plaintiff Russel Riley (the "Plaintiff") brought this
federal civil rights action pursuant to 42 U.S.C. § 1983
("Section 1983") against the Defendants Andrew Cuomo, in
his official capacity of the Governor of the State of New
York ("Governor Cuomo," the "Governor," or "Cuomo") and
the New York State Police (the "NYSP") (collectively, the
"Defendants").

Presently before the Court is a motion by the Defendants
to dismiss the complaint pursuant to Federal Rule of Civil
Procedure ("FED. R. CIV. P.") 12(b)(1) and 12(b)(6). For the
following reasons, the Defendants' motion is granted in its
entirety.

**I. BACKGROUND**

**A. The Relevant Facts**

The following facts are drawn from the Plaintiff's complaint,
and for the purposes of the instant motion, are presumed to
be true.

The Plaintiff owned and had a valid license for ten firearms.
On January 9, 2017, members of the NYSP entered the
Plaintiff's home without a warrant and seized ten firearms.

The firearms have not been returned to the Plaintiff, and there
has been no hearing regarding the seizure of the firearms.

The Plaintiff makes broad references to the New York Secure
Ammunition and Firearms Enforcement Act of 2013 (the
"NY SAFE Act"), but does not explicitly state that his
firearms were confiscated as a result of that statute.

**B. The Relevant Procedural History**

On March 23, 2017, the Plaintiff filed his complaint. The
complaint alleges that the NY SAFE Act is unconstitutional
under the Fourth and Fourteenth Amendments to the United
States Constitution in that it fails to provide gun owners who
have had their firearms seized with a hearing. However, the
Plaintiff does not seek a declaratory judgment declaring that
the NY SAFE Act is unconstitutional. Furthermore, as stated
above, he does not explicitly state that his guns were seized
because of that statute; or, if they were, how that statute
caused his firearms to be seized.

The complaint alleges that the Plaintiff's Fourth, Fifth,
and Fourteenth Amendment rights were violated when the
Defendants seized his firearms without a warrant; failed to
provide him with a hearing; and illegally obtained statements
from him. In those ways, the Defendants allegedly violated
Section 1983.

The Plaintiff seeks declaratory relief in the form of an
order stating that the Defendants violated his constitutional
rights. He asks that the Court order that the firearms be
returned to him. Further, he seeks "a judgment ... requiring the
Defendants to conduct a prompt hearing following the seizure
of the property in all cases at which time the Defendants must
demonstrate probable cause for the seizure of the property and
that it was necessary that the property remain in the custody
of the Defendants." (Compl. Wherefore Clause ¶ 3).

The Plaintiff seeks injunctive and declaratory relief; and
a judgment requiring the Defendants to provide notice
and a hearing to any future victims of seizures similar to
the one experienced by the Plaintiff. The complaint does

not explicitly seek damages, but only reasonable attorneys' fees and costs. While the Court notes that the Plaintiff's memorandum in opposition to the motion to dismiss states that "the underlying complaint is not exclusively seeking an award of damages under § 1983," (Pl.'s Mem. in Opp. to Mot. to Dismiss at 4), a plaintiff is not permitted to amend his complaint by virtue of what is said in a memorandum of law, *Uddoh v. United Healthcare*, 254 F. Supp. 3d 424, 429 (E.D.N.Y. 2017) ("A plaintiff, however, is not permitted to interpose new factual allegations or a new legal theory in opposing a motion to dismiss...." (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) ) ). The complaint does not explicitly seek damages, and the Court cannot construe it otherwise.

**\*2** On September 25, 2017, the Defendants filed the instant motion to dismiss the complaint for lack of jurisdiction pursuant to Rule 12(b)(1), and for failure to state a claim pursuant to Rule 12(b)(6).

## II. DISCUSSION

### A. As to the Defendants' Motion to Dismiss Based on Sovereign Immunity

The Defendants have moved for dismissal based on sovereign immunity pursuant to Rule 12(b)(1).

As an initial matter, the Court first observes that within the Second Circuit, the question of whether a motion to dismiss made on sovereign immunity grounds should be reviewed under Rule 12(b)(1) or under Rule 12(b)(6) remains unresolved. *See Carver v. Nassau Cty. Interim Fin. Auth.,* 730 F.3d 150, 156 (2d Cir. 2013) ("[W]hether the claim of sovereign immunity constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense is an open question in the Supreme Court and the Second Circuit." (citing *Wisc. Dep't of Corr. v. Schacht,* 524 U.S. 381, 391, 118 S. Ct. 2047, 141 L.Ed. 2d 364 (1998) ) ); *see also Garcia v. Paylock,* 13-CV-2868 KAM, 2014 WL 298593, at \*2 n.3 (E.D.N.Y. Jan. 28, 2014) ("It is an open question in the Second Circuit whether the claims of sovereign immunity should be viewed as raising a question of subject matter jurisdiction, and thus be evaluated under \*339 Rule 12(b)(1), or as an affirmative defense analyzed under Rule 12(b)(6).").

This "distinction is significant," because "while [a district court] must accept all factual allegations in a complaint as true when adjudicating a motion to dismiss under FED. R. CIV. P. 12(b)(6), ... in adjudicating a motion to dismiss for lack of subject-matter jurisdiction [pursuant to FED. R. CIV. P. 12(b)(1) ], a district court may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits." *State Employees Bargaining Agent Coal. v. Rowland,* 494 F.3d 71, 77 (2d Cir. 2007) (internal citations omitted). As such, in accordance with the approach taken by other district courts within this Circuit, the Court will apply the stricter standard set under Rule 12(b)(6) while analyzing Defendants' sovereign immunity arguments. *See Tiraco v. New York State Bd. of Elections,* 963 F. Supp. 2d 184, 191 n.6 (E.D.N.Y. 2013) (noting that "[t]his distinction [ ] does not alter the outcome" of the case because "the court [ ] considered only the pleadings and the relevant state and federal law and [drew] all inferences in Plaintiff's favor") (citations omitted); *McMillan v. N.Y. State Bd. of Elections,* No. 10-CV-2502 (JG)(VVP), 2010 WL 4065434, at \*3 (E.D.N.Y. Oct. 15, 2010) (looking "only to the pleadings and to state and federal law" to resolve questions regarding sovereign immunity).

### 1. The Rule 12(b)(6) Standard

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See Walker v. Schult,* 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir. 2006); *Bold Electric, Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free School Dist.,* 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

**\*3** Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed. 2d 929 (2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second,

Riley v. Cuomo, Not Reported in Fed. Supp. (2018)

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 44 of 126

only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L.Ed. 2d 868 (2009) ).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679.

## B. The Eleventh Amendment

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *Rowland*, 494 F.3d at 95 (quoting U.S. CONST. AMEND. XI). The Eleventh Amendment bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such a suit or an express statutory waiver of immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 90-100, 104 S. Ct. 900, 79 L.Ed. 2d 67 (1984); *see also Huminski v. Corsones*, 386 F.3d 116, 133 (2d Cir. 2004). Although the plaintiff generally bears the burden of proving subject matter jurisdiction, the entity claiming Eleventh Amendment immunity bears the burden to prove such. *See Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,* 466 F.3d 232, 237 (2d Cir. 2006).

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode,* 423 U.S. 362, 370-71, 96 S. Ct. 598, 46 L.Ed. 2d 561 (1976) (quoting 42 U.S.C. § 1983). It is well-settled that states are not "persons" under section 1983 and, therefore, Eleventh Amendment immunity is not abrogated by that statute. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L.Ed. 2d 45 (1989).

## 1. Claims Against State Administrative Agencies

Regardless of the type of relief sought, the Eleventh Amendment bars this Court from assuming jurisdiction over plaintiffs' claims asserted against the State of New York and its agencies. When the state or one of its "arms" is the defendant, sovereign immunity bars federal courts from entertaining lawsuits against them "regardless of the nature of the relief sought." *Pennhurst,* 465 U.S. at 100.

### a. Application to the Plaintiff's Claims Against the NYSP

**\*4** As the Eleventh Amendment bars all suits against administrative agencies of a state, the Plaintiff's claims against the NYSP cannot be sustained. Defendant New York State Police is a division in the executive department of New York—*see* section 210 of New York's Executive Law— and is therefore immune from all claims, both federal and state. Congress has not overridden states' sovereign immunity respecting constitutional claims brought under 42 U.S.C. § 1983. *Will*, 491 U.S. at 109. And it is well established that "New York State has not waived its sovereign immunity from Section 1983 claims." *Nolan v. Cuomo,* No. 11 CV 5827 (DRH)(AKT), 2013 WL 168674, at \*7 (E.D.N.Y. Jan. 16, 2013) (citing *Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 39-40 (2d Cir. 1977) ); *see also Mamot v. Bd. of Regents,* 367 Fed.Appx. 191, 192 (2d Cir. 2010) (summary order); *Dube v. State Univ. of New York,* 900 F.2d 587, 594-95 (2d Cir. 1990) (holding that the Eleventh Amendment precludes an action under Section 1983 against SUNY, an integral part of the State of New York). Therefore, the NYSP is entitled to sovereign immunity on the Plaintiff's claims.

Accordingly, the Defendants' motion to dismiss the Plaintiff's claims against the NYSP is granted.

## 2. Claims Against State Officials in Their Official Capacity

A suit for damages against a state official in his or her official capacity "is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993); *see also Will,* 491 U.S. at 71; *Ford v. Reynolds,* 316 F.3d 351, 354 (2d Cir. 2003). However, "the applicability of the Eleventh Amendment bar [to suits against individuals in their official capacities] depends on the form of relief sought." *Lee v.*

*Dep't of Children & Families,* 939 F.Supp.2d 160, 165-66 (D. Conn. 2013). Money damages cannot be recovered from state officers sued in their official capacities. *See e.g., Will,* 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against an official but rather is a suit against the official's office."); *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S. Ct. 1347, 39 L.Ed. 2d 662 (1974) ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."); *Goonewardena v. New York,* 475 F. Supp. 2d 310, 329 (S.D.N.Y 2007) ("[S]overeign immunity also extends to bar claims for monetary damages brought against state officers sued under section 1983 in their official capacities.").

Similarly, "judgments against state officers declaring that they violated federal law in the past" are also not permitted. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy,* 506 U.S. 139, 146, 113 S. Ct. 684, 121 L.Ed. 2d 605 (1993) (citing *Green v. Mansour,* 474 U.S. 64, 73, 106 S. Ct. 423, 88 L.Ed. 2d 371 (1985) ). However, prospective injunctive relief is available against individuals being sued in their official capacities in order to correct an ongoing violation of federal law. *See Edelman,* 415 U.S. at 663; *Ex Parte Young,* 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed. 714 (1908). In this regard, through the doctrine of *Ex Parte Young,* a party may bring "a suit for injunctive [or declaratory] relief challenging the constitutionality of a state official's actions in enforcing state law." *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.,* 306 F.3d 87, 98 (2d Cir. 2002) (internal quotation marks and alteration omitted); *see also Arthur v. Nyquist,* 573 F.2d 134, 138 (2d Cir. 1978).

In order to determine whether the *Ex parte Young* exception allows the Plaintiff to bring suit against state officials, this Court must first determine whether the complaint alleges an ongoing violation of federal law and second, whether the Plaintiff seeks relief properly characterized as prospective. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645, 122 S. Ct. 1753, 152 L.Ed. 2d 871 (2002). "[T]o successfully avoid the Eleventh Amendment bar, a plaintiff must prove that a defendant's violation of federal law is of an ongoing nature as opposed to a case 'in which federal law has been violated at one time or another over a period of time in the past.' " *Papasan v. Allain,* 478 U.S. 265, 277-78, 106 S. Ct. 2932, 92 L.Ed. 2d 209 (1986) (quotation omitted). The inquiry for determining whether an "ongoing violation" exists is, "does the enforcement of the law amount to a continuous violation of plaintiffs constitutional rights or a single act that

continues to have negative consequences for plaintiffs." *New Jersey Educ. Ass'n v. New Jersey,* No. 11-5024, 2012 WL 715284, at *4 (D.N.J. Mar. 5, 2012).

**\*5** Furthermore, when a plaintiff seeks prospective relief against a state official in their official capacity where the plaintiff alleges that a particular statute is unconstitutional, "the state officer ... 'must have some connection with the enforcement of the act' " that includes "both a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Kelly v. New York State Civil Serv. Comm'n,* No. 14 CV 716 VB, 2015 WL 861744, at *3 (S.D.N.Y. Jan. 26, 2015) (quoting *Ex Parte Young,* 209 U.S. at 157), *aff'd sub nom. Kelly v. New York Civil Serv. Comm'n,* 632 Fed.Appx. 17 (2d Cir. 2016); *see also CSX Transp.,* 306 F.3d at 99 (amenability to suit under Eleventh Amendment requires "both the power and the duty" to take challenged action).

### a. Application to the Plaintiff's Claims Against Governor Cuomo in His Official Capacity

As stated above, the complaint does not explicitly seek damages. However, even if it did, the Plaintiff would be unable to seek that relief against Governor Cuomo in his official capacity. *Ying Jing Gan,* 996 F.2d at 529 ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." (internal citations omitted) ).

As to his requests for declaratory and injunctive relief, the Court finds that the Plaintiff does not explicitly seek prospective relief. Instead, he seeks a declaration that the Defendants violated federal law in the past, and a return of his firearms. Courts have held that neither of these types of relief are prospective. *See Puerto Rico Aqueduct and Sewer,* 506 U.S. at 146 (stating that "judgments against state officers declaring that they violated federal law in the past" are not permitted under the *Ex Parte Young* doctrine); *Dotson v. Griesa,* 398 F.3d 156, 177 n.16 (2d Cir. 2005) (holding that Second Circuit precedent "preclude[s] a federal court from ordering affirmative action by either the state or federal government employees in their official capacities"); *Nat'l R.R. Passenger Corp. v. McDonald,* 978 F. Supp. 2d 215, 233 (S.D.N.Y. 2013) ("[C]ourts in this Circuit have [held] ... that the return of property taken by the state is barred by the

Riley v. Cuomo, Not Reported in Fed. Supp. (2018)

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 46 of 126

Eleventh Amendment because that constitutes 'retrospective' relief." (collecting cases) ), *aff'd*, 779 F.3d 97 (2d Cir. 2015); *Dean v. Abrams*, No. 94 CIV. 3704 (LAK), 1995 WL 791966, at *2 n.5 (S.D.N.Y. Dec. 26, 1995) ("The only exception to the Eleventh Amendment's protection is for 'prospective injunctive relief,' but Dean's demand for ... the return of her property does not qualify for this exception." (collecting cases) ).

While the Plaintiff does ask for an order declaring that the Defendants must afford any future victims of such seizures a prompt and fair hearing, the Plaintiff has not plead sufficient facts to demonstrate that he has standing to request such relief. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185, 120 S. Ct. 693, 706, 145 L.Ed. 2d 610 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought.")

"In seeking prospective relief like an injunction, a plaintiff must show that he can reasonably expect to encounter the same injury again in the future—otherwise there is no remedial benefit that he can derive from such judicial decree." *MacIssac v. Town of Poughkeepsie*, 770 F. Supp. 2d 587, 593 (S.D.N.Y. 2011) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S. Ct. 1660, 75 L.Ed. 2d 675 (1983) ). A plaintiff cannot seek injunctive relief merely for past injury. *O'Shea*, 414 U.S. at 495-96, 94 S. Ct. 669; *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998). Instead, "the injury alleged must be capable of being redressed through injunctive relief 'at that moment.' " *Robidoux v. Celani*, 987 F.2d 931, 938 (2d Cir. 1993) (quoting *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 51, 111 S. Ct. 1661, 114 L.Ed. 2d 49 (1991) ).

**\*6** Here, the Plaintiff does not allege that his guns will again be seized in the future. Indeed, as stated above, the Plaintiff did not state why his guns were seized. He does not plead sufficient facts to demonstrate standing to seek an order forcing the state to afford any future victims of seizures a prompt and fair hearing because he has not alleged that he will be a victim of such a seizure in the future.

Therefore, the Plaintiff does not seek prospective relief for an ongoing violation of federal law, and cannot avail himself of the *Ex Parte Young* doctrine. Governor Cuomo therefore has sovereign immunity with regard to the Plaintiff's claims.

The Plaintiff contends that he should be permitted to proceed on his theory of supervisory liability until he is able, through discovery, to determine which subordinate officials should

be added to the complaint. This argument is completely unavailing.

First, "[a] defendant's supervisory authority is insufficient in itself to demonstrate liability under § 1983." *LaMagna v. Brown*, 474 Fed.Appx. 788, 789 (2d Cir. 2012) (citing *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) ); *Richardson*, 347 F.3d at 435 ("[M]ere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." (citations and internal quotation marks omitted) ). Instead, "to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (collecting cases). As the Second Circuit has stated, a supervisory defendant's personal involvement can be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiff] by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (emphasis omitted) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ).

Accordingly, "supervisory liability may be imposed when an official has actual or constructive notice of unconstitutional practices and demonstrates 'gross negligence' or 'deliberate indifference' by failing to act." *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989) (quoting *McCann v. Coughlin*, 698 F.2d 112, 125 (2d Cir. 1983) ). The Plaintiff does not

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 47 of 126

Riley v. Cuomo, Not Reported in Fed. Supp. (2018)

allege that any of the above factual circumstances are present here.

Second, the Plaintiff does not even allege that the Governor supervises the NYSP. Indeed, the complaint does not contain any allegations that are specific to Governor Cuomo.

Furthermore, as to the Plaintiff's argument that he should be permitted to maintain suit against Governor Cuomo until he has been afforded an opportunity to identify subordinate officials who have personal liability, the Plaintiff does not meet that "exception" to the supervisory liability rule here. The case cited by the Plaintiff for this very proposition held "[p]ermitting plaintiffs to use discovery as a fishing expedition undermines the principle that only portions of a complaint which satisfy a plausibility standard, *i.e.,* more than possible and less than probable, should unlock the doors of discovery." *Dudek v. Nassau Cty. Sheriff's Dep't,* 991 F. Supp. 2d 402, 414 (E.D.N.Y. 2013) (internal citations and quotation marks omitted).

**\*7** The *Dudek* court relied on the fact that the complaint failed to contain a single factual allegation that any of the supervisory defendant's subordinates were personally involved in the action. Here too, the Plaintiff does not allege that Governor Cuomo supervises members of the NYSP, nor does he allege any specific acts by any individual John Doe officers of the NYSP. Nor would the Plaintiff be permitted to avail himself of the exception allowing discovery to go forward where a litigant raises colorable claims against supervisors because that exception only applies to *pro se* litigants. *See Davis v. Kelly,* 160 F.3d 917, 922 (2d Cir. 1998) ("We therefore hold that when a *pro se* plaintiff brings a colorable claim against supervisory personnel, and those supervisory personnel respond with a dispositive motion grounded in the plaintiff's failure to identify the individuals who were personally involved, under circumstances in which the plaintiff would not be expected to have that knowledge, dismissal should not occur without an opportunity for additional discovery."); *Soto v. Brooklyn Corr. Facility,* 80 F.3d 34, 34 (2d Cir. 1996) (holding that where a pro se litigant mistakenly failed to name the individual corrections officers who might be liable, the pro se plaintiff would be afforded opportunity to amend his complaint after discovery); *Satchell v. Dilworth,* 745 F.2d 781, 785 (2d Cir. 1984) (same).

Finally, the Plaintiff is also unable to bring claims against Governor Cuomo based on his allegation that the NY SAFE Act is unconstitutional. The Court notes again that the Plaintiff does not seek an order stating that the NY SAFE Act is unconstitutional. He instead alleges that it is unconstitutional, and seeks an order requiring the Defendants to afford victims of gun seizures fair hearings.

In any event, the Plaintiff has not alleged that the Governor has any duty to enforce the NY SAFE Act. Nor does N.Y. PENAL LAW § 400, the only specific statute cited by the Plaintiff, afford any duty or power to the Governor. To the extent that the Plaintiff relies on the fact that the NY SAFE Act was signed by Governor Cuomo, which the Court notes that he did not allege, "[t]he well-settled doctrine of absolute legislative immunity ... bars actions against legislators or governors ... on the basis of their roles in enacting or signing legislation." *Warden v. Pataki,* 35 F.Supp.2d 354, 358 (S.D.N.Y. 1999), *aff'd sub nom. Chan v. Pataki,* 201 F.3d 430 (2d Cir. 1999). Furthermore, "the vast majority of courts ... have held ... that a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute." *Warden,* 35 F. Supp. 2d at 359.

Therefore, the Plaintiff has failed to allege that Governor Cuomo has the power or duty to take action regarding the NY SAFE Act, and the Governor has sovereign immunity over those claims.

Accordingly, the Defendants' motion to dismiss the Plaintiff's claims against Governor Cuomo is granted.

### III. CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss the complaint based on sovereign immunity is granted in its entirety. The Clerk of the Court is respectfully directed to close the case.

It is **SO ORDERED.**

### All Citations

Not Reported in Fed. Supp., 2018 WL 1832929

---

End of Document                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 4145456

Only the Westlaw citation is currently available.

United States District Court,

S.D. New York.

Lawrence L. FINKELMAN, Plaintiff,

v.

NEW YORK STATE POLICE, Unknown Governmental
Entities-John Doe's-Jane Doe's 1-100, Defendants.

No. 06 Civ. 8705(JSR).

|

Nov. 15, 2007.

*ORDER*

JED S. RAKOFF, District Judge.

**\*1** On August 20, 2007, the Honorable Kevin Nathaniel
Fox, United States Magistrate Judge, issued a Report
and Recommendation in the above-captioned matter
recommending that plaintiff's claims against defendant New
York State Police be dismissed but that in all other respects
the defendant's motion to dismiss the complaint be denied.
Subsequently, on September 17, 2007, defendant New York
State Police submitted objections to certain portions of the
Report and Recommendation. Accordingly, the Court has
reviewed the motion and the underlying record *de novo*.

Having done so, the Court finds itself in complete agreement
with Magistrate Judge Fox's Report and Recommendation
and hereby adopts its reasoning by reference. Accordingly, the
Court dismisses the claims against the New York State Police,
with prejudice, but denies the motion to dismiss in all other
respects. The Clerk of the Court is directed to close document
number 4 in the Court's docket.

There is, however, an issue as to the remaining defendants
that was only raised now before this Court and that needs to
be addressed by the Magistrate Judge in the first instance,
viz., whether the remaining defendants have been actually
served and, if not, whether belated service at this point
would be untimely and prejudicial. Accordingly, the Court
remands the case to Magistrate Judge Fox to issue a Report
and Recommendation on the issue of whether defendants
"Unknown Governmental Entities-John Doe's-Jane Doe's
1-100" have been served in this action and whether, if they

have not been, the claims against those defendants should be
dismissed pursuant to Federal Rule of Civil Procedure 4(m)
or otherwise, and with or without prejudice.

SO ORDERED.

## REPORT & RECOMMENDATION

KEVIN NATHANIEL FOX, United States Magistrate Judge.

TO THE HONORABLE JED S. RAKOFF, UNITED
STATES DISTRICT JUDGE

## I. INTRODUCTION

Plaintiff Lawrence L. Finkelman ("Finkelman"), proceeding
*pro se,* commenced this action pursuant to 42 U.S.C. §§
1983, 1985, and 1986, against New York State Police
and "Unknown Government Entities-John Doe's-Jane Doe's
1-100" ("defendants"). He contends the defendants conspired
to violate his civil rights when, in 2001, without a warrant
or probable cause, they forced him from his vehicle by
threatening him with physical harm, arrest, and criminal
charges, and locked him in their patrol car, thus violating
both New York and federal penal laws. Finkelman alleges
the conspiracy continued when the defendants twice filed
false documents in New York State courts in the years that
followed.

Before the Court is the defendants' motion, made pursuant
to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to
dismiss the claim against defendant New York State Police
because the Eleventh Amendment bars suit against a state
and its agencies. The defendants also contend Finkelman's
claims are barred by a three-year statute of limitations and,
as such, permitting him to amend the complaint would be
futile. [1] Finkelman opposes the defendants' motion to dismiss
and their contention that the applicable statute of limitations
has expired.

## II. BACKGROUND

**\*2** Finkelman maintains that some time prior to November
28, 2001, the defendants, acting under the color of law,
conspired to kidnap and arrest him unlawfully in violation
of the Fourth, Fifth, Eighth and Fourteenth Amendments.
He contends the defendants' actions constitute violations of

federal and state criminal statutes: 18 § U .S.C. 1201 and New York Penal Law § 135.20. According to Finkelman, on November 28, 2001, the defendants lay in wait for him on Interstate Highway 87 and ordered him out of his car. Finkelman alleges the defendants acted without a warrant or probable cause to believe he had committed an offense. Finkelman recalls the defendants threatened to use deadly force and to arrest and charge him for acts he never committed. Finkelman also alleges that "[t]he defendants [,] upon learning that the plaintiff had the evidence from the [ ] grand larceny in his possession [,] locked the plaintiff up in the back [of] their patrol vehicle," and continued to threaten him while he was in their custody. Finkelman maintains the defendants destroyed the evidence he possessed and asked him if he was going to accuse them of grand larceny.

Finkelman alleges that, on November 3, 2004, "[d]efendants knowingly filed a fraudulent and perjurious complaint against the plaintiff" to further the goals of their conspiracy and to prosecute a "malicious, fradulent and perjurious lawsuit." According to the plaintiff, the defendants engaged in similar misconduct on October 31, 2005, December 28, 2005, and twice on December 29, 2005, when they filed documents related to him, which they knew to be false and perjurious.

Finkelman alleges the defendants "knowingly failed to disclose to the plaintiff, and actively took steps to conceal material information and criminal acts known only to the Defendants regarding the herein criminal violation of the Constitution and laws of the United States and New York," in order to "prevent the plaintiff from filing criminal complaints and making public the criminal acts [enumerated in the instant complaint] and corruption."

Finkelman contends the defendants violated his Sixth and Seventh Amendment rights by using their official positions to deny him the right to a speedy trial, a jury trial, and "compulsory process for obtaining witnesses." Finkelman also contends that the defendants had the opportunity and authority to stop the civil rights violations he alleges were perpetrated, but they declined to do so. According to Finkelman, all the defendants' acts were committed to shield them from prosecution and to intimidate him because the defendants knew he was "a plaintiff and witness in a felony criminal matter against them. [Therefore, t]he [d]efendants [ ] threatened and intimidated [him] to deter him from attending, testifying and initiating a criminal complaint and/or suit in a State Court of the United States and to interfere with judicial proceedings."

On October 26, 2006, Finkelman commenced the instant action. Thereafter, on November 2, 2006, he amended his complaint by removing, as defendants to the action: "State of New York;" "John Doe 1-20;" and "Jane Doe 1-20" and replacing them with the following defendants: "New York State Police" "Unknown Government Entities-John Doe's-Jane Doe's 1-100." Finkelman has also included, in his amended complaint, a request that the court direct the defendants to disclose to him documents which will enable him to learn the names of the individual defendants and, thereafter, serve them with process. Finkelman has asked, *inter alia,* that the court grant him injunctive relief and direct the defendants to avoid contacting any potential witnesses unless he is present.

### III. DISCUSSION

**\*3**  A court may dismiss an action pursuant to Fed.R.Civ.P. 12(b) (1), for lack of subject matter jurisdiction, only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Raila v. United States,* 355 F.3d 118, 119 (2d Cir.2004). In considering a motion made pursuant to Fed.R.Civ.P. (12)(b)(1), "[a] court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Id.* Further, "[o]n a motion invoking sovereign immunity to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of evidence that jurisdiction exists." *Chayoon v. Chao,* 355 F.3d 141, 143 (2d Cir.2004) (quoting *Garcia v. Akwesasne Hous. Auth.,* 268 F.3d 76, 84 (2d Cir.2001).

"In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings." *See Makarova v. United States* 201 F.3d 110, 113 (2d Cir.2000). Additionally, where, as here, the plaintiff is appearing *pro se,* his or her pleadings "are [to be] held 'to less stringent standards than formal pleadings drafted by lawyers,' " *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 176 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595 [1972] ), and should be interpreted "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 [2d Cir.1994] ). This liberal pleading standard is particularly applicable where a *pro se* plaintiff alleges a violation of his

or her civil rights. *See Jacobs v. Ramirez,* 400 F.3d 105, 106 (2d Cir.2005).

In their motion to dismiss, the defendants contend that the Eleventh Amendment bars suit against the state of New York and its agencies and, as a result, defendant New York State Police is immune from suit. Finkelman responds that states "must first be in compliance with the Constitution and the laws of the United States" before the Eleventh Amendment is to be applied.

Under the Eleventh Amendment, a state or an arm of a state may not be sued in a federal court absent the state's consent. *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144, 113 S.Ct. 684, 687-88 (1993) (citations omitted). Defendant New York State Police is an arm of the state, and therefore an action brought against it is a suit against the state. *See, e.g., Morrongiello v. Ashcroft,* No. 01 Civ. 2524, 2004 WL 112944, at *2 (S.D.N.Y. Jan. 22, 2004). Sections 1983 and 1985 of Title 42 were not intended to abrogate the states' immunity. *See Degrafinreid v. Ricks,* No. 03 Civ. 6645, 2004 WL 2793168, at *5 (S .D.N.Y. Dec. 6, 2004). The state of New York has not consented to suit in federal court under: (a) 42 U.S.C. § 1983, see *Le Grand v. Evan,* 702 F.2d 415, 417 (2d Cir.1983); (b) 42 U.S.C. § 1985, *see Quirk v. City of New York,* No. 03 Civ. 0324, 2003 WL 1872714, at *1 (S.D.N.Y. Apr. 10, 2003); or (c) 42 U.S.C. § 1986, *see Gasparik v. Stony Brook University,* No. CV-05-3817, 2007 WL 2026612, at *4 (E.D.N.Y. July 9, 2007).

**\*4** Accordingly, Finkelman's claims against defendant New York State Police should be dismissed. However, the complaint contains claims against "John Does and Jane Does 1-100," which the defendants have not addressed. Therefore, dismissal of the entire complaint is not warranted at this time.

## IV. RECOMMENDATION

For the reasons set forth above, the defendants' motion to dismiss the complaint should be denied. The claims against defendant New York State Police should be dismissed.

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of the Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, United States District Judge, 500 Pearl St., Room 1340, New York, New York 10007, and to the chambers of the undersigned, 40 Centre St., Room 540, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Rakoff. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn,* 474 U.S. 140 (1985); *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Candair Ltd.,* 838 F .2d 55, 57-59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237-38 (2d Cir.1983).

## All Citations

Not Reported in F.Supp.2d, 2007 WL 4145456

---

## Footnotes

1    The defendants have failed to make a proper motion addressing their statute of limitations defense. Therefore, the Court has determined not to analyze that defense in this writing.

Mitchell v. New York State, Not Reported in Fed. Supp. (2023)

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 51 of 126

2023 WL 2734823
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Stephen T. MITCHELL, Plaintiff,

v.

NEW YORK STATE, and Letitia James, Attorney
General of the State of New York, Defendants.

22-CV-1747 (LDH) (LB)
|
Signed March 31, 2023

**Attorneys and Law Firms**

Stephen T. Mitchell, New York, NY, Pro Se.

Ian Ramage, NYS Office of the Attorney General, New York, NY, for Defendants.

### MEMORANDUM AND ORDER

LaSHANN DeARCY HALL, United States District Judge:

 **\*1** Stephen T. Mitchell ("Plaintiff"), proceeding pro se, brings the instant action against Defendants the State of New York and Letitia James ("Defendants") pursuant to 42 U.S.C. § 1983, alleging violations of his Fifth, Sixth, and Fourteenth Amendment rights. Defendants move pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the amended complaint in its entirety.

### BACKGROUND [1]

On October 5, 2010, Plaintiff was arrested and charged with Grand Larceny in the Second Degree in the Supreme Court of the State of New York, Kings County. (Am. Compl. ¶ 5, ECF No. 7; Am. Compl. Ex. 23, ECF No. 7-3.) Plaintiff pleaded not guilty. (Am. Compl. ¶ 5.) Plaintiff alleges that at different points during the pre-trial, trial, and post-trial proceedings, state judicial officers and prosecutors knowingly violated Plaintiff's constitutional rights. (Id. ¶¶ 20, 25.) Specifically, Plaintiff claims that the indictment "was procured by fraud because [prosecutors] knowingly allowed false testimony regarding the mental capabilities of [a witness] to be presented to the grand jurors." (Id. ¶¶ 12–13.) Plaintiff further alleges that the trial court denied him the opportunity to testify and

to be heard in his own defense; allowed a witness to provide false testimony against him regarding material issues during the trial; and denied him the right to cross-examine a witness. (Id. ¶¶ 28–32.) After the trial, Plaintiff was convicted of Grand Larceny in the Second Degree. (Id. ¶ 16.) Plaintiff has exhausted his state court appeals. (Id. ¶ 18.)

### STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. U.S., 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of establishing beyond a preponderance of the evidence that subject matter jurisdiction exists. Id. "In reviewing a Rule 12(b)(1) motion to dismiss, the court " 'must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiff[ ].' " Tiraco v. New York State Bd. of Elections, 963 F. Supp. 2d 184, 190 (E.D.N.Y. 2013) (citing J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004)). Further "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings." Makarova, 201 F.3d at 113.

Moreover, where, as here, a plaintiff is proceeding pro se, his pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Boykin v. KeyCorp, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam)). This rule is "particularly so when the pro se plaintiff alleges that [his] civil rights have been violated." Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) (citing McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004)). Still, "even pro se plaintiffs asserting civil right[s] claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.' " Jackson v. NYS Dep't of Labor, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting Twombly, 550 U.S. at 555).

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 52 of 126

Mitchell v. New York State, Not Reported in Fed. Supp. (2023)

## DISCUSSION

### I. Article III Standing

**\*2** Defendants argue that Plaintiff does not have standing to assert his claims. (Defs.' Mem. Supp. of Mot. to Dismiss ("Defs.' Mem.") at 4–5, ECF No. 17.) Specifically, Defendants contend that Plaintiff failed to establish that Defendants caused his alleged injuries or that Defendants can provide the requested relief. (*Id.*) The Court agrees.

To establish standing, a plaintiff must show: (i) a concrete and particularized, and actual or imminent, invasion of a legally protected interest; (ii) a causal connection between the invasion and the alleged injury; and (iii) a likelihood that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Critically, any alleged injury must be fairly traceable to the challenged action of the defendant and not the result of an independent action of some third party not before the court. *See N.Y. Coastal P'ship, Inc. v. U.S. Dep'. of Interior*, 341 F.3d 112, 116 (2d Cir. 2003). Further, it must be "likely," and not "speculative," that the alleged injury will be redressed by a favorable decision of the court. *Lujan*, 504 U.S. at 560–61. In addition, when a plaintiff seeks injunctive or declaratory relief, he "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that [he] will be injured in the future." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983)). Plaintiff's amended complaint fails to satisfy any of these requirements.

*First*, Plaintiff claims that the New York State courts and certain unnamed New York state prosecutors violated his constitutional rights. (Am. Compl. ¶¶ 11, 19–21, 30–36, 360–61, 378.) However, Plaintiff names only the State of New York and Letitia James, New York's Attorney General, as Defendants. Unsurprisingly, there are no allegations of conduct attributable to the State of New York, and Attorney General James is mentioned only twice in the amended complaint—once in the caption and once in Paragraph Two identifying her as a defendant. (Am. Compl. ¶ 2.) There are simply no allegations that might allow the Court to find that Plaintiff's alleged injury is traceable to either Defendant. (*See generally* Am. Compl.)

*Second*, the amended complaint is devoid of any allegation that might establish the requisite redressability of Plaintiff's claims. Redressability focuses "on whether the *injury* that

a plaintiff alleges is likely to be redressed through the litigation." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 287 (2008). To satisfy the redressability requirement, a plaintiff must demonstrate that "it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit." *Id. at 273–74* (internal quotation marks and citation omitted). Here, Plaintiff asks the Court "to grant relief pursuant to 42 U.S.C. § 1983 in the same manner as if the Plaintiff-Petitioner was successful with a 28 U.S.C. § 2254 application." (Am. Compl. at p.71.) Among other things, Plaintiff seeks an order directing the state court to order a new trial and directing Defendants to vacate and expunge his conviction. [2] (*Id.* ¶ 24.) However, Sections 2254 and 1983 are not interchangeable. "In order for a federal court to have jurisdiction over a [Section 2254] habeas petition, the petitioner must be 'in custody pursuant to the judgment of a State court' at the time the petition is filed." *Vega v. Schneiderman*, 861 F.3d 72, 74 (2d Cir. 2017) (quoting 28 U.S.C. § 2254(a)). Because Plaintiff asserts that he is "no longer [ ] within the custody and control of the State of New York," habeas relief is not available to him and such relief cannot be granted pursuant to Section 1983. (Am. Compl. ¶ 4.) *See Teichmann v. New York*, 769 F.3d 821 (2d Cir. 2014) (finding that "while broad in its equitable and legal remedies—[Section 1983] does not recognize a declaration of innocence, standing alone, as a cognizable form of relief.")

**\*3** *Third*, Plaintiff seeks declaratory and injunctive relief based only upon past injures. Specifically, Plaintiff alleges constitutional violations that occurred during his state court criminal trial. (Am. Compl. ¶¶ 20, 25.) But, again, when a plaintiff seeks injunctive or declaratory relief, he "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that [he] will be injured in the future." *Deshawn E. by Charlotte E.*, 156 F.3d at 344.

Simply put, Plaintiff lacks standing.

### II. Immunity

Even if Plaintiff had established standing to bring his claim, his amended complaint would nonetheless be dismissed under sovereign immunity. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity[.]" *See Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted). Eleventh Amendment

Mitchell v. New York State, Not Reported in Fed. Supp. (2023)

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 53 of 126

immunity also extends to "state officials acting in their official capacities." *Huang v. Johnson*, 251 F.3d 65, 70 (2d Cir. 2001). Because Plaintiff has offered no evidence that New York State consented to be subject to suit in this context, or that its immunity has been otherwise abrogated, the State of New York and Attorney General James are plainly entitled to sovereign immunity.

Conceivably, under the *Ex Parte Young* exception, a plaintiff may bring " 'a suit [for injunctive relief] challenging the constitutionality of a state official's actions in enforcing state law' under the theory that such a suit is not 'one against the State,' and therefore [is] not barred by the Eleventh Amendment." *CSX Transp., Inc. v. N.Y. Off. Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002) (quoting *Ex Parte Young*, 209 U.S. 123, 154 (1908)). But to do so, the complaint must both allege an ongoing violation of federal law and seek relief properly characterized as prospective. *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007). Further, a plaintiff must show that the "state officer against whom a suit is brought '[has] some connection with the enforcement of the act' that is in continued violation of federal law." *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372–73 (2d Cir. 2005) (quoting *Ex Parte Young*, 209 U.S. at 154).

Plaintiff's complaint fails to meet any of these elements.[3] Clearly there is no ongoing violation of federal law because Plaintiff alleges constitutional violations that occurred during his state court criminal trial. And, the relief he seeks is purely retrospective because he seeks to overturn his past criminal conviction. (Am. Compl. at p. 71.) Courts have dismissed claims seeking this exact type of relief against state officers. *See, e.g., Molina v. James*, No. 21-CV-3144, 2022 WL 813815, at *5 (E.D.N.Y. Mar. 17, 2022) (dismissing plaintiff's claim for injunctive relief against Attorney General James seeking an order directing defendants to vacate his state criminal judgment, in part, because this relief was retrospective, which plaintiff could not rely on to use the *Ex Parte Young* exception). In addition, Plaintiff fails to allege how Attorney General James participated in or was connected to the violative conduct. Therefore, the *Ex Parte Young* exception does not apply to Attorney General James.

### III. *Rooker-Feldman* Doctrine

**\*4** Plaintiff's claims are also barred by the *Rooker-Feldman* doctrine. Under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Sung Cho v. City of New York*, 910 F.3d 639, 644 (2d Cir. 2018) (citation omitted). That is, because "federal district courts are granted original—and not appellate—jurisdiction, cases that function as *de facto* appeals of state-court judgments are therefore jurisdictionally barred." *Id.* The *Rooker-Feldman* doctrine is properly invoked where: "(1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Id.* at 645. Here, all four factors are met. Plaintiff complains that he was "unconstitutionally convicted and incarcerated," after a state court trial in 2014—almost nine years prior to the commencement of this action. (Am. Compl. ¶¶ 16, 21.) Because Plaintiff challenges the validity of his state court criminal conviction, he necessarily invites the Court to review the judgment of conviction. (*Id.* ¶¶ 16, 20, 24 and ECF p. 71.) Dismissal is warranted. *See Molina*, 2022 WL 813815, at *5 (dismissing plaintiff's request for an injunction to dismiss his criminal conviction as barred by the *Rooker-Feldman* doctrine).[4]

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

### All Citations

Not Reported in Fed. Supp., 2023 WL 2734823

---

**Footnotes**

**Mitchell v. New York State, Not Reported in Fed. Supp. (2023)**

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 54 of 126

1     The following facts are taken from the amended complaint (ECF No. 7) and are assumed to be true for the purpose of this motion.

2     Plaintiff also requests that the Court expunge his criminal conviction. (Am. Compl. ¶¶ 24, 37.) However, the Court is unaware of a mechanism under New York law that would allow for a criminal record to be expunged.

3     Plaintiff filed a letter on October 5, 2022 requesting that the Court allow him to file his second amended complaint to include Eric Gonzalez, Esq., the Kings County District Attorney, and the Kings County District Attorney's Office as defendants. (*See* ECF No. 20.) Plaintiff's request is denied. Even if the Court granted Plaintiff leave to amend and add these Defendants, suit against these Defendants are similarly barred under the Eleventh Amendment. *See, e.g., Burris v. Nassau Cnty. Dist. Att'y*, No. 14-CV-5540, 2017 WL 9485714, at *4 (E.D.N.Y. Jan. 12, 2017) (collecting cases establishing that it is well settled in the Second Circuit that § 1983 suits against a district attorney in his official capacity and a district attorney's office are barred by the Eleventh Amendment because prosecutorial decisions made by both entities are made in a quasi-judicial capacity, and thus they represent the state, not the county). In other words, such an amendment would be futile.

4     Although Defendants raise arguments for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, in light of the findings set forth above, the Court need not reach those arguments.

---

**End of Document**                                                   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1702010
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

David John CAMPBELL, Plaintiff,

v.

NEW YORK STATE POLICE; Steven A. Negrelli,
Superintendent of New York State Police; Broome
County; Broome County Sheriff's Office; David Harder,
Broome County Sheriff; Mark Hamilton, Deputy
Sheriff for Broome County; Brian Curtis, CO for
Broome County; Broome County District Attorney's
Office; Lucas Finley, Assistant District Attorney for
Broome County in official and individual capacities;
City of Binghamton; Jared M. Kraham, Mayor of City
of Binghamton, New York in official and individual
capacities; Binghamton Police Department; Chief
Joseph Zikuski, Binghamton Police Department;
Nicholas Mushalla, Officer for Binghamton Police
Department; Bryan Sostowski, Detective for Binghamton
Police Department; UHS Binghamton General
Hospital, City owned hospital/Department of City of
Binghamton; Jessica R. Raymond, Nurse Practitioner
for UHS Binghamton General Hospital; Unknown
1, in official and individual capacities; Unkown 2,
in official and individual capacities; and Unknown
3, in official and individual capacities, Defendants.

3:23-CV-1337 (AMN/ML)
|
Signed April 19, 2024

**Attorneys and Law Firms**

DAVID JOHN CAMPBELL, Plaintiff, Pro Se, 5 Bradley
Street, Binghamton, New York 13904.

## <u>ORDER and REPORT-RECOMMENDATION</u>

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent a complaint in the above captioned
action together with an amended application to proceed
*in forma pauperis* and letter motion, filed by David John
Campbell ("Plaintiff") to the Court for review. (Dkt. Nos.
1, 5, 6.) For the reasons discussed below, I (1) grant

Plaintiff's amended *in forma pauperis* application (Dkt. No.
5), (2) recommend that Plaintiff's Complaint (Dkt. No. 1) be
dismissed (a) in part with leave to amend, and (b) in part
without leave to amend, and (3) recommend that Plaintiff's
Letter Request/Motion (Dkt. No. 6) be denied as moot.

## I. INTRODUCTION

Construed as liberally [1] as possible, Plaintiff's Complaint
alleges that his rights were violated by Defendants
New York State Police ("Defendant NYSP"), Steven
A. Negrelli, Broome County, Broome County Sheriff's
Office ("Defendant BCS"), David Harder, Mark Hamilton,
Brian Curtis, Broome County District Attorney's Office
("Defendant BCDA"), Lucas Finley, City of Binghamton,
Jared M. Kraham, Binghamton Police Department
("Defendant BPD"), Chief Josheph Zikuski, Nicholas
Mushalla, Bryan Sostowski, UHS Binghamton General
Hospital ("Defendant UHS"), Jessica R. Raymond, Unknown
1, Unknown 2, and Unknown 3 (collectively "Defendants").
(*See generally* Dkt. No. 1.) The Complaint is difficult to
follow and includes terse sentences that make little sense.

As best as the undersigned can decipher, the Complaint
alleges that on May 4, 2022, Plaintiff called Defendant
BCS to inquire about "local gun policies." (Dkt. No. 1
at 8.) The Complaint alleges that Plaintiff was directed to
surrender "what he had" so, on May 5, 2022, he "show[ed]
up to [Defendant] BCS ... to surrender property." (*Id.*) The
Complaint alleges that Plaintiff was detained, "unreasonably
searched and property seized by [Defendant] Hamilton." (*Id.*)

The Complaint alleges that at some point in time, Plaintiff
attempted to "redress again" (presumably the issue with the
property that he surrendered) but that his attempt "triggered
a *blue alert*" wherein, Plaintiff was falsely accused of
threatening law enforcement officers. (Dkt. No. 1 at 8.)
Plaintiff alleges that, as a result, he "had to leave his job out
of safety concerns." (*Id.*)

The Complaint alleges that at, at some point in time,
Defendant BPD attempted to enter Plaintiff's apartment and
claimed that someone inside the apartment called 911. (Dkt.
No. 1 at 8.)

The Complaint alleges that on November 23, 2023, Plaintiff
was pulled over by Defendant NYSP "just after updating his
professional credentials." (*Id.*) Plaintiff alleges that the stop
was never documented by Defendant NYSP. (*Id.*)

The Complaint alleges that on January 13, 2023, Plaintiff found his vehicle vandalized "and completely disabled." (Dkt. No. 1 at 8.) Notwithstanding the damage, Plaintiff alleges that he was able to "rig" the car to make it operable. (*Id.*) The Complaint alleges that Plaintiff's wife called Defendant BPD to report the crime and Defendant Mushalla responded. (*Id.*) Plaintiff alleges that Defendant Mushalla and another officer confiscated "an undocumented amount of property exceeding $3,000 in value." (Dkt. No. 1 at 8-9.)

**\*2** The Complaint alleges that on January 14, 2023, approximately five officers employed by Defendant BPD went to Plaintiff's house and claimed that they had a warrant to enter. (Dkt. No. 1 at 9.) The Complaint alleges that Plaintiff was in only boxer-style underwear at the time officers arrived and was inappropriately touched and taunted during the search. (*Id.*) The Complaint alleges that Defendant Sostowski tried to trick Plaintiff into signing a consent form by telling Plaintiff that it was a confiscation form. (*Id.*)

The Complaint alleges that as a result of the stress from the searches, "[k]nowing the police were harassing [him,] his wife [was] turning people against [him]," and "knowing someone [was] out to get Plaintiff but no[ ]one believing [him,] Plaintiff checked into the local hospital for [an] evaluation." (Dkt. No. 1 at 9.) The Complaint alleges that on January 16, 2023, Defendant BPD lied to Defendant Raymond about having warrants to search his home, which led to misdiagnosis and mistreatment. (*Id.*)

The Complaint alleges that Plaintiff was involuntarily committed to Defendant UHS for six days without due process or Plaintiff's consent. (Dkt. No. 1 at 9.) The Complaint alleges that on January 17, 2023, while Plaintiff was involuntarily committed, Defendant Sostowski—with assistance from Defendants BCDA and Finley—filed false documents with the Court pursuant to the New York State red flag laws. (Dkt. No. 1 at 9-10.)

The Complaint alleges that Defendants BPD, BCS, and UHS included false records of encounters with Plaintiff, which resulted in Plaintiff permanently losing his gun rights. (Dkt. No. 1 at 10.) The Complaint alleges that neither Plaintiff nor his wife were ever charged with a crime. (*Id.*)

The Complaint alleges that All Star Pawn informed Plaintiff that "gun pieces were sabotaged/switched by [Defendant BCS]." (Dkt. No. 1 at 10.)

Based on these factual allegations, the Complaint appears to allege the following nine causes of action: (1) a claim that on May 5, 2022, Defendant Hamilton conducted an unreasonable search and seizure of Plaintiff's personal items in violation of the First, Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983; (2) a claim that Defendant BCS retaliated against Plaintiff by creating false information to conceal its unreasonable searches in violation of the First, Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983; (3) a claim that on January 16, 2023, Defendant BPD's actions intentionally influenced Defendant UHS's involuntary commitment of Plaintiff in violation of the First, Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983; (4) a claim that on January 13, 2023, Defendant Mushalla unreasonably seized property valued at over $3,000 and created false business records in violation of the First, Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983; (5) a claim that on January 14, 2023, Defendant BPD officers unreasonably searched Plaintiff's home causing $1,000 in damages in violation of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments and 42 U.S.C. § 1983; (6) a claim that Defendant Sostowski filed a false petition in violation of the Fourth, Seventh, and Fourteenth Amendments and 42 U.S.C. § 1983; (7) a claim that Defendants NYSP, City of Binghamton, BPD, Broome County, BCS, and UHS failed to provide services in violation of the First, Fifth, Seventh, and Fourteenth Amendments and 42 U.S.C. § 1983; (8) a claim that on November 23, 2022 at 10:30 p.m., an unknown officer employed by Defendant NYSP conducted a traffic stop of Plaintiff without calling in the stop and was verbally aggressive during the encounter in violation of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments and 42 U.S.C. § 1983; and (9) a claim that between January 15, 2023, and January 23, 2023, Defendant UHS falsified records in the scheme devised by Defendant BPD in violation of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments and 42 U.S.C. § 1983. (Dkt. No. 1 at 12-15.) As relief, Plaintiff seeks, *inter alia*, (1) "$10,000 from each [D]efendant per each seized item per day every single day kept from Plaintiff," (2) "Supervised Policy improvement(s) to [Defendants NYSP, Broome County, City of Binghamton, and UHS] preventing similar acts," (3) "immediate deactivation of ERPO and TERPO," (4) destruction of all inaccurate documents with corrected records created to accurately reflect Plaintiff's encounters with Defendants and "$10,000 per day for every

day record releases and corrections not completed," (5) the return of Plaintiff's property and "$3,000,000 for items not returned to Plaintiff after release," (6) $2,000,000 in punitive damages, (7) contempt of court proceedings against Defendants, and (8) an order that in the future, Plaintiff be handcuffed in the front and/or that Defendants use two pars of handcuffs in the back. (*Id.* at 16-18.)

## II. PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

**\*3** When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). [2] After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 5), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's amended application to proceed *in forma pauperis* is granted. [3]

## III. LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

**\*4** "In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that it be dismissed for the following six reasons.

First, the undersigned finds Plaintiff's Complaint factually frivolous. [4] To the extent allegations are discernible from

the pleading, they are "wholly incredible, irrational, and/or appear to be the product of delusion or fantasy." *Curmen v. U.S. Gov't*, 18-CV-1546, 2018 WL 2324060, at *3 (E.D.N.Y. May 22, 2018). The Complaint alleges a wide-ranging conspiracy among various law enforcement agencies and a hospital to seize Plaintiff's firearms and personal property. (*See generally* Dkt. No. 1.)

Courts routinely dismiss this kind of *pro se* complaint. *See Gallop v. Cheney*, 08-CV-10881, 2010 WL 909203, at *5 (S.D.N.Y. Mar. 15, 2010) ("Courts have not hesitated to dismiss complaints asserting delusional claims of conspiracy."), *aff'd*, 642 F.3d 364 (2d Cir. 2011); *Ceparano v. Suffolk Cnty.*, 10-CV-2030, 2010 WL 5437212, at *3 (E.D.N.Y. Dec. 15, 2010) ("[P]rolix, unintelligible, speculative complaints that are argumentative, disjointed and needlessly ramble have routinely been dismissed in this Circuit.").

For example, in *Harvey v. Kirk*, 19-CV-0411, 2019 WL 5150035, at *4 (N.D.N.Y. May 9, 2019) (Baxter, M.J.), the trial court *sua sponte* dismissed as frivolous a *pro se* litigant's claim without leave to amend where the plaintiff alleged that government agents were surveilling and harassing him using telepathic methods. *Harvey*, 2019 WL 5150035, at *4, *report and recommendation adopted by*, 2019 WL 3491264 (N.D.N.Y. Aug. 1, 2019); *see also Ciltas v. Wang*, 20-CV-2520, 2020 WL 6146865, at *1 (E.D.N.Y. Oct. 20, 2020) (dismissing as frivolous the plaintiff's claims that a defendant had been trying to murder her for years, had made false statements and hidden cameras in her home and vehicle and hacked her electronic devices); *Raoul v. City of N.Y. Police Dep't*, 14-CV-1787, 2015 WL 1014204, at *1-2 (E.D.N.Y. Mar. 6, 2015) (dismissing as factually frivolous a complaint alleging a "wide-ranging conspiracy" between state and federal agencies that involved a campaign to harass, torture, and harm the plaintiff). As a result, I recommend that Plaintiff's Complaint be dismissed in its entirety because it is factually frivolous.

**\*5** Second, to the extent that the Complaint seeks monetary damages, it asserts claims against several Defendants who are immune. More specifically, Plaintiff's claims against Defendant NYSP "are barred by both the Eleventh Amendment and the language of § 1983." *Kilcher v. New York State Police*, 19-CV-0157, 2019 WL 2511154, at *2-3 (N.D.N.Y. June 18, 2019) (D'Agostino, J.) (citing *Pierce v. New York State Police (Troop D Lowville)*, 05-CV-1477, 2011 WL 1315485, at *13 (N.D.N.Y. Apr. 4, 2011)). To

the extent that the Complaint alleges any claims against Defendant Negrelli in his official capacity as Superintendent of Defendant NYSP, those claims are also barred pursuant to the Eleventh Amendment immunity applicable to Defendant NYSP. *See Swanhart v. New York*, 20-CV-6819, 2022 WL 875846, at *4-5 (S.D.N.Y. Mar. 24, 2022) (citing *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993); *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988)) ("The immunity provided by the Eleventh Amendment extends to actions seeking damages against state officials sued in their official capacities if the state is the real party in interest."). Moreover, Plaintiff's claims against Defendant BCDA and Defendant Finley in his official capacity are barred by the Eleventh Amendment. *Roark v. New York*, 23-CV-1237, 2023 WL 8827185, at *3 (N.D.N.Y. Dec. 21, 2023) (Lovric, M.J.) (citations omitted) (recommending that the plaintiff's claims against the Watertown District Attorney's Office be dismissed as barred by the Eleventh Amendment), *report and recommendation adopted by*, 2024 WL 125512, at *1 (N.D.N.Y. Jan. 11, 2024) (Hurd, J.). As a result, I recommend that, in the alternative, Plaintiff's claims seeking monetary damages against Defendants NYSP, Negrelli in his official capacity, BCDA, and Finley in his official capacity, be dismissed because they are immune from suit pursuant to 28 U.S.C. § 1915(e)(2)(B).

Third, the Complaint failed to allege the personal involvement of Defendants Negrelli, Harder, Curtis, Kraham, Zikuski, Unknown 1, Unknown 2, and Unknown 3 in any alleged constitutional deprivation, which is a prerequisite to an award of damages under 42 U.S.C. § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *see Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986) (holding that in order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered."); *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (internal quotation marks omitted) ("[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal."). The Second Circuit has made clear that "there is no special rule for supervisory liability," and a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Here, although

Plaintiff names Defendants Negrelli, Harder, Curtis, Kraham, and Zikuski as defendants, the body of the Complaint lacks any allegations of wrongdoing by them. (*See generally* Dkt. No. 1.) As a result, I recommend that, in the alternative, Plaintiff's claims against Defendants Negrelli, Harder, Curtis, Kraham, and Zikuski be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).

Fourth, Defendants BPD and BCS, which are merely departments of a municipality, are not amenable to suit.[5] *See White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")) ("Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal ... department does not have the capacity to be sued as an entity separate from the municipality in which it is located."), *report and recommendation adopted*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.). As a result, I recommend that, in the alternative, Plaintiff's claims against Defendants BPD and BCS be dismissed because they are not entities amenable to suit.

**\*6** Fifth, the Complaint fails to allege facts plausibly suggesting that municipal Defendants Broome County and the City of Binghamton violated Plaintiff's constitutional rights through the execution of their policies. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (outlining the limited circumstances under which a municipality may be liable under Section 1983 and holding that only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) (holding that official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law."). A municipality may not be held liable solely because it employs a tortfeasor. *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010).

Here, there is no basis for municipal liability alleged in the Complaint. Plaintiff essentially complains of a series of discrete incidents, during which an officer or officers employed by Defendants City of Binghamton and Broome County did not act properly. There is no indication that Plaintiff can assert a policy or custom which would support municipal liability based on these facts. In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with employees of Defendants City of Binghamton and Broome County.

As a result, I recommend that, in the alternative, Plaintiff's claims against Defendants City of Binghamton and Broome County be dismissed for failure to state a claim upon which relief may be granted. *See Flagg v. NYS Division of Parole*, 19-CV-0886, 2019 WL 5002215, at *5 (N.D.N.Y. Aug. 15, 2019) (Baxter, M.J.) (citing *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)) ("A single incident, particularly if it involved individuals below the policy-making level is insufficient to state a *Monell* claim."), *report and recommendation adopted*, 2019 WL 4963112 (N.D.N.Y. Oct. 8, 2019) (McAvoy, J.).

Sixth, to the extent that the Complaint seeks the return of property confiscated by the police, such a claim "is not cognizable in federal court if the state courts provide a remedy for the deprivation of that property" and "New York provides such an adequate post-deprivation remedy." *Winters v. New York*, 20-CV-8128, 2020 WL 6586364, at *4 (S.D.N.Y. Nov. 9, 2020) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir. 1988); *Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983)). "Because Plaintiff does not allege facts suggesting that his remedy under state law is in any way inadequate or inappropriate, his claim with respect to the seized property must be dismissed." *Winters*, 2020 WL 6586364, at *4 (citing *Butler v. Castro*, 896 F.2d 698, 700-04 (2d Cir. 1990)). As a result, I recommend that, in the alternative, Plaintiff's claims seeking the return of his seized property be dismissed.

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to

amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [6]

**\*7** Here, an amended pleading cannot cure the defects outlined above with respect to Plaintiff's claims against Defendants (1) NYSP, BCDA, Negrelli in his official capacity, and Finley in his official capacity because they are immune from suit, and (2) BPD and BCS because they are not entities amenable to suit. As a result, I recommend that the claims against those defendants be dismissed without prejudice but without leave to amend.

Although I have serious doubts about whether Plaintiff can replead to assert actionable claims against Defendants (1) Negrelli in his individual capacity, (2) Broome County, (3) Harder, (4) Hamilton, (5) Curtis, (6) Finley in his individual capacity, (7) City of Binghamton, (8) Kraham, (9) Zikuski, (10) Mushalla, (11) Sostowski, (12) UHS, (13) Raymond, (14) Unknown 1, (15) Unknown 2, and (16) Unknown 3, given that this is the Court's first review of Plaintiff's pleading, out of an abundance of caution and in light of Plaintiff's status as a *pro se* litigant, I recommend that he be permitted leave to amend.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each

alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

## VI. PLAINTIFF'S LETTER REQUEST/MOTION

On March 26, 2024, Plaintiff filed a Letter Request/ Motion. (Dkt. No. 6.) To the extent that the Court adopts the recommendations contained herein which recommend dismissal of the Complaint, I recommend that Plaintiff's Letter Request/Motion be dismissed as moot.

In the alternative, as best as the undersigned can glean from Plaintiff's Letter Request/Motion, Plaintiff is merely requesting that the Court rule on his motion for IFP. (Dkt. No. 6.) This Order and Report-Recommendation rules on Plaintiff's amended IFP application and thus, Plaintiff's Letter/Motion is moot.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's amended application to proceed *in forma pauperis* (Dkt. No. 5) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts claims against Defendants (1) Negrelli in his individual capacity, (2) Broome County, (3) Harder, (4) Hamilton, (5) Curtis, (6) Finley in his individual capacity, (7) City of Binghamton, (8) Kraham, (9) Zikuski, (10) Mushalla, (11) Sostowski, (12) UHS, (13) Raymond, (14) Unknown 1, (15) Unknown 2, and (16) Unknown 3, because it is factually frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**\*8** **RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE BUT WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts claims against Defendants (1) NYSP, BCDA,

Negrelli in his official capacity, and Finley in his official capacity because they are immune from suit, and (2) BPD and BCS because they are not entities amenable to suit pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED** that the Court **DENY** Plaintiff's Letter Request/Motion (Dkt. No. 6) as moot; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [7]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [8] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Slip Copy, 2024 WL 1702010

---

## Footnotes

1      The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

2      The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

3      Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

4      While the undersigned has no basis to doubt the sincerity of Plaintiff's beliefs, the allegations exhibit a level of delusional paranoia that makes the continuation of this vexatious litigation an unjustified expenditure of public resources.

5      The Complaint alleges that Defendant UHS is a "City owned hospital/Department of City of Binghamton." (Dkt. No. 1 at 6.) Thus, Defendant UHS, as a department of Defendant City of Binghamton, would also not be amenable to suit. Notwithstanding Plaintiff's allegation that Defendant UNS is a municipal-run hospital, it appears that Defendant UHS is a private medical institution. *See* New York United Health Services, https://www.nyuhs.org/why-choose-us/leadership-performance (last visited Apr. 4, 2024) ("UHS is a not-for-profit, community-benefit organization governed by a board of directors whose members are selected from the communities we serve."). The Complaint fails to allege facts plausibly suggesting that Defendant UHS's actions are "fairly attributable to the state" and thus, fails to state any claims for relief pursuant to 42 U.S.C. § 1983. *See Roark*, 2023 WL 8827185, at *5 (citing *White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010) ("[P]rivate actors and institutions, such as the hospitals ... named as defendants in [plaintiff's] complaint, are generally not proper § 1983 defendants because they do not act under color of state law."); *Guillory v. Benedict*, 21-CV-0073, 2021 WL 707076, at *2 (N.D.N.Y. Feb. 4, 2021) (Baxter, M.J.) (recommending dismissal of the plaintiff's § 1983 claims against private medical institution St. Joseph's Hospital), *report and recommendation adopted by*, 2021 WL 706644 (N.D.N.Y. Feb. 23, 2021) (Sharpe, J.); *Guillory v. Crouse*

*Hosp.*, 21-CV-1177, 2021 WL 5605260, at *2 (N.D.N.Y. Nov. 2, 2021) (Baxter, M.J.) ("it remains well settled in this Circuit that a private hospital, and its employees, are not deemed state actors solely because the state has granted them authority to practice medicine within its borders."), *report and recommendation adopted by*, 2021 WL 5585926 (N.D.N.Y. Nov. 30, 2021) (Hurd, J.)) (recommending dismissal of the § 1983 claims against Samaritan Hospital, a private medical institution, because the complaint failed to allege facts plausibly suggesting how its actions are "fairly attributable to the state.").

6   *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

7   The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

8   If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                                          © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   8

2023 WL 8827185

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Mark A. ROARK, Plaintiff,

v.

The People of the State of NEW YORK;

Watertown Police Dep't; Samaritan Hosp.;

and the Watertown District Attorney's

Office, Kristyna S. Mills, [1] Defendants.

5:23-CV-1237 (DNH/ML)

|

Signed December 21, 2023

**Attorneys and Law Firms**

MARK A. ROARK, Plaintiff, Pro Se, Ulster Correctional Facility, Post Office Box 800, Berme Road, Napanoch, New York 12458.

## ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent a *pro se* complaint in the above captioned action together with an application to proceed *in forma pauperis* and inmate authorization filed by Mark A. Roark ("Plaintiff") to the Court for review. (Dkt. Nos. 1, 2.) For the reasons discussed below, I grant Plaintiff's *in forma pauperis* application and recommend that Plaintiff's Complaint be dismissed in its entirety. (Dkt. Nos. 1, 2.)

## I. BACKGROUND

Construed as liberally [2] as possible, Plaintiff's Complaint appears to allege that his civil rights were violated by Defendants The People of the State of New York, Watertown Police Department ("WPD"), Samaritan Hospital, and the Watertown District Attorney's Office (collectively "Defendants"). (*See generally* Dkt. No 1.) More specifically, the Complaint alleges that on an unspecified date, time, and year, he was walking around an unspecified town where he was "pulled to the side of the road" by officers employed by Defendant WPD and asked why he was J-walking. (Dkt. No. 1 at 5, 7.) The Complaint alleges that, despite not being "put through any test," the officers insisted that Plaintiff was under the influence of a substance, placed handcuffs on him, and

transported him to the WPD headquarters. (Dkt. No 1 at 5, 7.) The Complaint alleges that while at WPD headquarters, "6 John Doe's came in and assaulted [Plaintiff] while being fully [restrained]." (Dkt. No. 1 at 5.)

The Complaint alleges that after Plaintiff was assaulted, he was taken to Defendant Samaritan Hospital, where he was admitted for medical care. (Dkt. No 1 at 5.)

The Complaint alleges that Defendant Watertown District Attorney's Office "never spoke to [Plaintiff] nor read [him his] rights" but that he sat in jail for ten days before being transported by the New York State Police to the Clinton County Jail for a probation violation. (Dkt. No. 1 at 6.) The Complaint alleges that no new charges were filed against Plaintiff, he did not plead guilty, and did not appear before a judge. (*Id.*)

Notwithstanding these allegations, the Complaint also alleges that on an unspecified date and at an unspecified time, Plaintiff was "brought in[ ]front of a [j]udge and ... charged [with] orderly misconduct." (Dkt. No. 1 at 8.)

Plaintiff alleges that as a result of the incidents alleged in the Complaint, he has lost his dog, his belongings, and his freedom. (Dkt. No. 1 at 8.)

Based on these factual allegations, Plaintiff appears to assert the following nine claims: (1) a claim of false arrest against Defendant WPD in violation of the Fourth Amendment and 42 U.S.C. § 1983; (2) a claim of excessive force against Defendant WPD in violation of the Fourth Amendment and 42 U.S.C. § 1983; (3) a claim of failure to protect against Defendant WPD in violation of the Fourth Amendment and 42 U.S.C. and § 1983; (4) a claim that his right to equal protection of the law was violated by Defendant WPD pursuant to Fourteenth Amendment and 42 U.S.C. § 1983; (5) a claim that Defendant Watertown District Attorney's Office denied his right of access to the courts pursuant to First Amendment and 42 U.S.C. § 1983; (6) claim of false arrest against Defendant Watertown District Attorney's Office in violation of the Fourth Amendment and 42 U.S.C. § 1983; (7) a claim that Defendant Watertown District Attorney's Office violated his right to freedom of speech pursuant to the First Amendment and 42 U.S.C. § 1983; (8) a claim that Defendant Watertown District Attorney's Office violated his due process rights pursuant to Fourteenth Amendment and 42 U.S.C. § 1983; and (9) a claim that Defendant Watertown District Attorney's Office violated his right to counsel pursuant to the

Sixth Amendment and 42 U.S.C. § 1983. (Dkt. No. 1 at 5-7.) As relief, Plaintiff seeks $5,000,000.00 in damages and would like to "fully charge the officers from [his] assault." (Dkt. No. 1 at 5.)

**\*2** Plaintiff also filed a motion for leave to proceed *in forma pauperis.* (Dkt. No. 2.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein,* 09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). [3] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash,* 2010 WL 5185047, at \*1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, the Court finds that Plaintiff has submitted a completed IFP application which has been certified by an appropriate official at his facility (Dkt. No. 2 at 2), and which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization required in the Northern District. (Dkt. No. 2 at 3.)

Accordingly, Plaintiff's application to proceed with this action IFP is granted. (Dkt. No. 2.)

## III. LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

Having found that Plaintiff met the financial criteria for commencing this action *in forma pauperis,* the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e). Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis,* "the court shall dismiss the case at any time if the court determines that— ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also* 28 U.S.C. 1915A(a) ("The court shall review ... as soon as practicable ... a complaint in a civil action in which a prisoner seeks redress from a

governmental entity or officer or employee of a governmental entity."). [4]

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano,* 75 F.R.D. 497, 498 (D.D.C. 1977)).

**\*3** A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007), *rev'd on other grounds,* 682 F. App'x 30. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown,* 335 F. App'x 102, 104 (2d Cir. 2009).

"[E]xtreme caution should be exercised in ordering sua sponte dismissal of a ... complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir. 1983). The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee).

"Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A. Defendants The People of the State of New York and Watertown District Attorney's Office [5]

To the extent Plaintiff seeks money damages against Defendants The People of the State of New York and Watertown District Attorney's Office, those claims are barred by the Eleventh Amendment. *Drawhorne v. Aloise*, 23-CV-1278, 2023 WL 8188396, at *3 (N.D.N.Y. Nov. 27, 2023) (Dancks, M.J.) (citing *Best v. Brown*, 19-CV-3724, 2019 WL 3067118, at *2 (E.D.N.Y. July 12, 2019) (dismissing the plaintiff's claim against the Office of the Queens County District Attorney as barred by the Eleventh Amendment); *D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) ("[I]f a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity."); *Rich v. New York*, 21-CV-3835, 2022 WL 992885, at *5 n.4 (S.D.N.Y. Mar. 31, 2022) ("[A]ny claims Plaintiff may raise against the DA Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment."); *Gentry v. New York*, 21-CV-0319, 2021 WL 3037709, at *6 (N.D.N.Y. June 14, 2021) (Lovric, M.J.) (recommending dismissal of the plaintiff's claims against the defendant assistant district attorneys in their official capacities—which were effectively claims against the State of New York— as barred by the Eleventh Amendment) *adopted by*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021) (Suddaby, C.J.)).

Therefore, the undersigned recommends Plaintiff's Section 1983 claims against Defendants The People of the State of New York and Watertown District Attorney's Office be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e), 1915A. *Drawhorne*, 2023 WL 8188396, at *3.

### B. Defendant Watertown Police Department

**\*4**   "Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located." *White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")), *report and recommendation adopted by*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.). Thus, Defendant WPD is not a proper party which would be amenable to suit.

To the extent that Plaintiff's claims are liberally construed as against the City of Watertown, I recommend that they be dismissed.

A municipality may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979). Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so

widespread as to "practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly.

Finally, municipal liability can, under limited circumstances, be based upon a failure to properly train the municipality's employees. *Connick*, 563 U.S. at 51. However, municipal liability is most tenuous when a claim turns on the failure to train. *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell")). To satisfy the statute, a municipality's failure to train its employees must amount to " 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' " *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

There is no basis for municipal liability alleged in the Complaint. Plaintiff essentially complains of a single incident, during which an officer or officers employed by the Watertown Police Department did not act properly. There is no indication that Plaintiff can assert a policy or custom which would support municipal liability based on these facts. In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with employees of Defendant WPD.

**\*5** As a result, I recommend that, to the extent Plaintiff's claims against Defendant WPD are construed as against the City of Watertown, they be dismissed at this time. *See Flagg v. NYS Division of Parole*, 19-CV-0886, 2019 WL 5002215, at \*5 (N.D.N.Y. Aug. 15, 2019) (citing *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)) ("A single incident, particularly if it involved individuals below the policy-making level is insufficient to state a *Monell* claim."), *report and recommendation adopted*, 2019 WL 4963112 (N.D.N.Y. Oct. 8, 2019) (McAvoy, J.).

### C. Defendant Samaritan Hospital
A claim for relief under 42 U.S.C. § 1983 must allege facts showing that the defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or

a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988). Private parties are generally not state actors, and are therefore not usually liable under § 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.") (internal quotation marks and citation omitted).

"For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Caballero v. Shayna*, 18-CV-1627, 2019 WL 2491717, at \*3 (E.D.N.Y. June 14, 2019) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Caballero*, 2019 WL 2491717, at \*3 (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)).

Plaintiff is suing Samaritan Hospital, a private medical institution. [6] The Complaint alleges no facts suggesting that the hospital is under any of the aforementioned exceptions, or describing how Defendant Samaritan Hospital's actions are otherwise "fairly attributable to the state." Because Plaintiff has failed to plausibly allege that Defendant Samaritan Hospital acted under color of state law, the Complaint fails to state any claims for relief under § 1983. *See White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010) ("[P]rivate actors and institutions, such as the hospitals ... named as defendants in [plaintiff's] complaint, are generally not proper § 1983 defendants because they do not act under color of state law."). As a result, I recommend that the district court dismiss Plaintiff's claims alleged pursuant to § 1983. *Guillory v. Benedict*, 21-CV-0073, 2021 WL 707076, at \*2 (N.D.N.Y. Feb. 4, 2021) (Baxter, M.J.) (recommending dismissal of the plaintiff's § 1983 claims against private medical institution St. Joseph's Hospital), *report and recommendation adopted by*, 2021 WL 706644 (N.D.N.Y. Feb. 23, 2021) (Sharpe, J.); *see Guillory v. Crouse Hosp.*, 21-CV-1177, 2021 WL 5605260, at \*2 (N.D.N.Y. Nov.

2, 2021) (Baxter, M.J.) (citing *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014); *White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010); *Doe v. Rosenberg*, 996 F. Supp. 343, 352 (S.D.N.Y. 1998), *aff'd*, 166 F.3d 507 (2d Cir. 1999)) ("it remains well settled in this Circuit that a private hospital, and its employees, are not deemed state actors solely because the state has granted them authority to practice medicine within its borders."), *report and recommendation adopted by*, 2021 WL 5585926 (N.D.N.Y. Nov. 30, 2021) (Hurd, J.).

**V. OPPORTUNITY TO AMEND**

 **\*6**  Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [7]

Here, I find that leave to replead would be futile with respect to Plaintiff's claims against Defendants The People of the State of New York and Watertown District Attorney's Office. [8]

Although I have serious doubts about whether Plaintiff can replead to assert an actionable claim against Defendants WPD and Samaritan Hospital, given that this is the Court's first review of Plaintiff's pleading, out of an abundance of caution, I recommend that he be permitted to replead the Complaint with respect to those claims.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are

insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at \*7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

 **\*7**  **ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court (1) provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 2 at 3) and notify that official that Plaintiff has filed this action and is required to pay the Northern District of New York the entire statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and (2) provide a copy of Plaintiff's inmate authorization form (Dkt. No. 2 at 3) to the Financial Deputy of the Clerk's office; and it is further

**ORDERED** that the Clerk of the Court add "Watertown District Attorney's Office, Kristyna S. Mills" as a defendant in this action; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS** the Complaint (Dkt. No. 1) **WITH PREJUDICE AND WITHOUT LEAVE TO REPLEAD** to the extent that it asserted claims against Defendants The People of the State of New York

and Watertown District Attorney's office, and **WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD** to the extent that it asserted claims against Defendants WPD and Samaritan Hospital; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [9]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [10] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Slip Copy, 2023 WL 8827185

---

## Footnotes

1    The Clerk of the Court is directed to add Watertown District Attorney's Office, Kristyna S. Mills to the docket as a defendant in this action. (Dkt. No. 1 at 2.)

2    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

3    Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

4    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

5    The Court presumes that Plaintiff intended to assert claims against the Jefferson County District Attorney's Office. Watertown, New York is located within Jefferson County and the current District Attorney of Jefferson County is Kristyna S. Mills.

6    "Samaritan Medical Center (Watertown, New York) is a 290-bed not-for-profit community medical center, offering a full spectrum of inpatient and outpatient health services." Samaritan Health, https://samaritanhealth.com/ (last visited December 20, 2023).

7    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

8    The undersigned notes that a dismissal based on the doctrine of sovereign immunity, is consequently a dismissal for lack of subject matter jurisdiction. *Crumble v. United States*, 23-CV-4427, 2023 WL 5102907, at *7 (S.D.N.Y. Aug. 7, 2023); *Nguyen v. Kijakazi*, 20-CV-0607, 2022 WL 542265, at *8 (E.D.N.Y. Feb. 23, 2022). Moreover, the Second Circuit has directed that dismissals for lack of subject matter jurisdiction are to be made without prejudice. *Abadi v. City of New York*, 22-CV-1560, 2023 WL 3295949, at *3 n.3 (2d Cir. May 8, 2023) (summary order) (citing *Katz v. Donna Karan Co.*, 872 F.3d 114, 116 (2d Cir. 2017) ("[A] complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction.")) ("Because the Court lacks subject matter jurisdiction ... the amended complaint should be dismissed *without* prejudice.") (emphasis in original). Notwithstanding, the undersigned recommends dismissal with prejudice and without leave to amend because any amendment or attempt to bring these claims against Defendants The People of the State of New York and Watertown District Attorney's Office, would be futile. *Drawhorne*, 2023 WL 8188396, at *3 (recommending that the plaintiff's "Section 1983 claims against The People of the State of New York be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e), 1915A.").

9    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

10   If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.                    7

2024 WL 125512
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Mark A. ROARK, Plaintiff,

v.

The People of the State of
NEW YORK et al., Defendants.

5:23-CV-1237
|
Signed January 11, 2024

**Attorneys and Law Firms**

MARK A. ROARK, Plaintiff, Pro Se, 23-R-2152, Ulster
Correctional Facility, P.O. Box 800, Berme Road, Napanoch,
NY 12458.

### ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

**\*1** On September 29, 2023, *pro se* plaintiff Mark A.
Roark ("plaintiff"), who is currently incarcerated at Ulster
Correctional Facility, initially filed this civil action in the U.S.
District Court for the Western District of New York. Dkt.
No. 1. Along with his complaint, plaintiff sought leave to
proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2.
But the case was transferred to this judicial district because it
involved events that occurred in Watertown, New York, which
is located in Jefferson County. Dkt. Nos. 3, 4.

On December 21, 2023, U.S. Magistrate Judge Miroslav
Lovric granted plaintiff's IFP Application and advised
by Report & Recommendation ("R&R") that plaintiff's
complaint be dismissed with leave to replead some claims but
not others. Dkt. No. 5. As Judge Lovric explained, plaintiff's
claims for money damages against the State of New York
or the Watertown District Attorney's Office (or one of its
named employee for actions taken in the course of her official
duties) were barred by Eleventh Amendment immunity. *Id.*
So Judge Lovric recommended that those claims be dismissed
for lack of subject matter jurisdiction. *Id.* But Judge Lovric

concluded that plaintiff might be able to plead one or more
actionable claims for relief against defendant Watertown
Police Department and/or defendant Samaritan Hospital. *Id.*

Plaintiff has not filed objections, and the time period in which
to do so has expired. *See* Dkt. No. 5. Upon review for clear
error, the R&R is accepted and will be adopted in all respects.
*See* FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation (Dkt. No. 5) is
ACCEPTED;

2. Plaintiff's complaint (Dkt. No. 1) is DISMISSED;

3. Plaintiff's claims against defendants The People of the State
of New York and Watertown District Attorney's Office are
DISMISSED without prejudice but <u>without leave to amend</u>
for lack of subject matter jurisdiction;

4. Plaintiff's claims against defendants Watertown Police
Department and Samaritan Hospital are DISMISSED with
leave to amend;

5. Plaintiff shall have THIRTY DAYS in which to submit an
amended complaint in accordance with the instructions set
forth in Judge Lovric's R&R;

6. If plaintiff timely files an amended complaint, this matter
shall be referred to Judge Lovric for further review or other
action as appropriate; and

7. If plaintiff does not timely file an amended complaint, the
Clerk of the Court is directed to close this matter without
further Order of the Court.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2024 WL 125512

---

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 3063674

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

David John CAMPBELL, Plaintiff,

v.

NEW YORK STATE POLICE, et al., Defendants.

David J. Campbell, Plaintiff,

v.

City of Binghamton, NY, et al., Defendants.

3:23-cv-01337 (AMN/ML), 3:24-cv-00067 (AMN/ML)

|

Signed June 20, 2024

**Attorneys and Law Firms**

DAVID J. CAMPBELL, Binghamton, NY 13904, Plaintiff
pro se

**MEMORANDUM-DECISION AND ORDER**

Anne M. Nardacci, United States District Judge:

**I. INTRODUCTION**

**\*1** On October 30, 2023, Plaintiff *pro se* David John
Campbell ("Plaintiff"), filed a civil rights complaint pursuant
to 42 U.S.C. § 1983 ("Section 1983") against Defendants
New York State Police ("NYSP"), Steven A. Negrelli,
Broome County, Broome County Sheriff's Office ("BCSO"),
David Harder, Mark Hamilton, Brian Curtis, Broome
County District Attorney's Office ("BCDA"), Lucas Finley, City of
Binghamton ("Binghamton"), Jared M. Kraham, Binghamton
Police Department ("BPD"), Chief Jospeh Zikuski, Nicholas
Mushalla, Bryan Sostowski, UHS Binghamton General
Hospital ("UHS"), Jessica R. Raymond, Unknown 1,
Unknown 2, and Unknown 3. Case No.3:23-cv-01337-AMN-
ML (N.D.N.Y.) (the "2023 Action"), Dkt. No. 1 (the "2023
Complaint"). [1] In the 2023 Complaint, Plaintiff asserts nine
claims, which generally allege the mistreatment of Plaintiff
and his property in violation of his First, Fourth, Fifth,
Sixth, Seventh, and Fourteenth Amendment rights, and seeks
declaratory, injunctive, and monetary relief. *See id.* at 12-15.
Plaintiff also sought leave to proceed *in forma pauperis*
("IFP"), 2023 Action, Dkt. No. 2, which motion was denied,
2023 Action, Dkt. No. 4, and on March 25, 2024, Plaintiff
filed a second IFP motion, 2023 Action, Dkt. No. 5.

On January 16, 2024, Plaintiff filed a second civil rights suit
pursuant to Section 1983 against Defendants Binghamton,
Jared M. Kraham, BPD, Chief Joseph Zikuski, Detective
Bryan Sostowski, Broome County, Broome County Clerk's
Office, Judith E. Osburn, Honorable Judge Joseph A.
Cawley, and Unknown(s). Case No. 3:24-cv-00067-AMN-
ML (N.D.N.Y.) (the "2024 Action"), Dkt. No. 1 (the "2024
Complaint"). In the 2024 Complaint, Plaintiff asserts two
claims related to the allegations in the 2023 Complaint for
violations of Plaintiff's own and his wife's due process rights,
and seeks declaratory, injunctive, and monetary relief. *See id.*
at 5-7. Plaintiff also sought leave to proceed IFP, 2024 Action,
Dkt. No. 2, which motion was denied, 2024 Action, Dkt. No.
4, and on March 22, 2024, Plaintiff filed a second IFP motion,
2024 Action, Dkt. No. 5. [2]

Both actions were referred to United States Magistrate
Judge Miroslav Lovric, who, on April 19, 2024, issued
an Order and Report-Recommendation in the 2023 Action
(1) granting Plaintiff's IFP motion; (2) recommending
that Plaintiff's claims against Defendants Negrelli in his
individual capacity, Broome County, Harder, Hamilton,
Curtis, Finley in his individual capacity, Binghamton,
Kraham, Zikuski, Mushalla, Sostowski, UHS, Raymond,
Unknown 1, Unknown 2, and Unknown 3 be dismissed with
leave to replead; and (3) recommending that Plaintiff's claims
against Defendants NYSP, BCDA, Negrelli in his official
capacity, Finley in his official capacity, BPD, and BCS be
dismissed without leave to replead. 2023 Action, Dkt. No. 7 at
16-18 (the "2023 Action Report-Recommendation"). Also on
April 19, 2024, Magistrate Judge Lovric issued an Order and
Report-Recommendation in the 2024 Action (1) granting the
IFP Motion; (2) recommending that Plaintiff's claims against
Defendants Binghamton, Broome County, Kraham, Zikuski,
and Unknown(s) be dismissed with leave to replead; and
(3) recommending that Plaintiff's claims against Defendants
Crawley, Osburn, Broome County Clerk's Office, and BPD be
dismissed without leave to replead. 2024 Action, Dkt. No. 7 at
16-18 (the "2024 Action Report-Recommendation"). Finally,
in light of the above recommendations, Magistrate Judge
Lovric recommended denying Plaintiff's Letter Requests as
moot. 2023 Action, Dkt. No. 7 at 17-18; 2024 Action, Dkt.
No. 7 at 17-18.

**\*2** Magistrate Judge Lovric advised Plaintiff that under
28 U.S.C. § 636(b)(1), he had fourteen days to file written
objections to the Report-Recommendations and failure to
object within fourteen days would preclude appellate review.
2023 Action, Dkt. No. 7 at 18; 2024 Action, Dkt. No. 7 at

18. On April 26, 2024, Plaintiff timely filed Objections to the 2024 Action Report-Recommendation, 2024 Action, Dkt. No. 8 (the "2024 Action Objections"), and on April 29, 2024, Plaintiff timely filed Objections to the 2023 Action Report-Recommendation, 2023 Action, Dkt. No. 8 (the "2023 Action Objections").

For the reasons set forth below, the Court adopts the Report-Recommendations in their entireties.

## II. STANDARD OF REVIEW

This Court reviews *de novo* those portions of a magistrate judge's report-recommendation that have been properly preserved with a specific objection. 28 U.S.C. § 636(b)(1) (C). "To be 'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.' " *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012) (alteration in original) (quoting N.D.N.Y. Local Rule 72.1(c)). If no specific objections have been filed, this Court reviews a magistrate judge's report-recommendation for clear error. *See id.* at 229 (citing Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition). Similarly, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [previously] presented to the magistrate judge," the district court reviews a magistrate judge's report-recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322 (TJM) (DRH), 2011 WL 933846, at *1 (N.D.N.Y. Mar. 16, 2011) (citations omitted); *accord Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (a "statement, devoid of any reference to specific findings or recommendations to which [the plaintiff] objected and why, and unsupported by legal authority, was not sufficient to preserve" a claim); *Petersen*, 2 F. Supp. 3d at 228-29 & n.6 (collecting cases). "When performing [ ] a 'clear error' review, 'the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " *Dezarea W. v. Comm'r of Soc. Sec.*, No. 6:21-CV-01138 (MAD/TWD), 2023 WL 2552452, at *1 (N.D.N.Y. Mar. 17, 2023) (quoting *Canady v. Comm'r of Soc. Sec.*, No. 1:17-CV-0367 (GTS/WBC), 2017 WL 5484663, at *1 n.1 (N.D.N.Y. Nov. 14, 2017)).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted).

The Second Circuit has held that courts are obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). That said, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal ...." *Machicote v. Ercole*, No. 06 Civ. 13320 (DAB) (JCF), 2011 WL 3809920, at *2, (S.D.N.Y. Aug. 25, 2011) (citation omitted); *accord Caldwell v. Petros*, No. 1:22-cv-567 (BKS/ CFH), 2022 WL 16918287, at *1 (N.D.N.Y. Nov. 14, 2022). After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. DISCUSSION

### A. The 2023 Action Report-Recommendation and Objections

**\*3** In his Objections to the 2023 Action Report-Recommendation, Plaintiff contends, among other things, that he has standing to bring his action, it is of major public concern, and it addresses prohibited official acts which would nullify any immunity defenses. 2023 Action, Dkt. No. 8 at 1-2. Notably, Plaintiff does not cite to or quote from the 2023 Action Report-Recommendation, does not cite to any additional allegations from the 2023 Complaint that support his claims, does not cite any allegations Magistrate Lovric allegedly overlooked or misinterpreted, and cites only one case. *See id.* (citing *Ex Parte Young*, 209 U.S. 123 (1908)). Read in the light most favorable to Plaintiff, the Court finds that these objections are not specific, [3] and accordingly the Court reviews the 2023 Action Report-Recommendation for clear error. *See Mario*, 313 F.3d at 766; *O'Diah*, 2011 WL 933846, at *1.

The 2023 Action Report-Recommendation details the factual allegations contained in the 2023 Complaint, *see* 2023 Action, Dkt. No. 7 at 2-6, before undertaking a reasoned analysis and concluding that the 2023 Complaint should be dismissed for one overarching reason, *see id.* at 8-10, or alternatively, for five claim- and Defendant-specific reasons, *see id.* at 10-14. Magistrate Judge Lovric first concluded that the 2023 Complaint should be dismissed for frivolousness. *Id.* at 9-10. Second, Magistrate Judge Lovric also found that Defendants NYSP, BCDA, Negrelli in his official capacity, and Finley in his official capacity are immune from the claims asserted under the Eleventh Amendment and 28 U.S.C. § 1915(e)(2)(B), and should be dismissed from the action.

*Id.* at 10-11. Third, Magistrate Judge Lovric found that the 2023 Complaint lacks any allegations of wrongdoing by Defendants Negrelli, Harder, Curtis, Kraham, and Zikuski, and thus the claims against them should be dismissed for failure to state a claim. *Id.* at 11-12. Fourth, Magistrate Judge Lovric found that Defendants BPD, BCS, and UHS are not proper Section 1983 defendants. *Id.* at 12-13. Fifth, Magistrate Judge Lovric found that the 2023 Complaint does not allege a municipal policy or custom, failure to train, or deliberate indifference that would support liability with respect to Defendants Binghamton or Broome County. *Id.* at 13-14. And sixth, to the extent Plaintiff seeks to have certain property returned, Magistrate Judge Lovric found that Plaintiff has not shown that his remedy under state law is inadequate or unavailable. *Id.* at 14.

Finding no clear error in the above-described analysis and conclusions, the Court adopts the 2023 Action Report-Recommendation determination as to each claim in the 2023 Complaint. Further, upon a *de novo* review of the 2023 Complaint, the Court agrees with Magistrate Judge Lovric's conclusions for the reasons stated in the 2023 Action Report-Recommendation.

**B. The 2024 Action Report-Recommendation and Objections**

In his Objections to the 2024 Action Report-Recommendation, Plaintiff contends, among other things, that Defendants are not immune from suit and that Magistrate Judge Lovric did not consider all of his claims. *See* 2024 Action, Dkt. No. 8 at 1-4. However, these objections are either not specific or merely assert disagreements without providing a basis to find otherwise. Accordingly, the Court reviews the 2024 Action Report-Recommendation for clear error. *See Mario*, 313 F.3d at 766; *O'Diah*, 2011 WL 933846, at *1.

In the 2024 Action Report-Recommendation, Magistrate Judge Lovric carefully considered the claims against the nine named Defendants and one unknown Defendant in light of the deference due to *pro se* pleadings, and found each claim lacking. *See* 2024 Action, Dkt. No. 7 at 6-14. First, Magistrate Judge Lovric considered the 2024 Complaint claims against Broome County Court Judge Cawley, noting the limitations on judicial immunity "when a judge takes action outside his or her judicial capacity" or " 'in the complete absence of all jurisdiction[,]' " *id.* at 6-7 (quoting *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)), and recommended that claims against Defendant Judge Cawley in his individual capacity be dismissed due to judicial immunity and in his official

capacity due to the Eleventh Amendment, *id.* (collecting cases). Second, Magistrate Judge Lovric considered the claims against the Broome County Clerk's Office, finding that such claims were barred "under the Eleventh Amendment because it is an arm of the State of New York." *Id.* at 7-8 (citing, *inter alia, Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009)). Third, Magistrate Judge Lovric properly determined that BPD, as a municipal department of Defendant Binghamton, is not a proper Section 1983 Defendant. *Id.* at 8 (collecting cases); *see Moulton v. Cnty. of Tioga, NY*, No. 3:22-cv-00340 (AMN/ML), 2023 WL 4627646, at *15 (N.D.N.Y. July 19, 2023). Fourth, Magistrate Judge Lovric considered Plaintiff's claims against Osburn, the Chief Clerk of Broome County Supreme Courts and County Clerks, and determined that she is immune from suit in her individual capacity as a quasi-judicial actor, the 2024 Complaint failed to allege her personal involvement in any of the alleged constitutional deprivations, and that she is immune from suit in her official capacity under the Eleventh Amendment. 2024 Action, Dkt. No. 7 at 9-10. Fifth, Magistrate Judge Lovric found that the body of the 2024 Complaint completely lacked allegations of wrongdoing by Defendants Kraham, Zikuski, and Unknown(s), and accordingly concluded that the claims against them should be dismissed for failure to state a claim. *Id.* at 10-11. Sixth, Magistrate Judge Lovric considered the claims against Binghamton and Broome County and concluded that the 2024 Complaint failed to state a claim because the acts alleged did not amount to a policy or custom sufficient to support municipal liability, nor did the allegations reflect a failure to train or deliberate indifference to the rights of Plaintiff or others considering the acts alleged. *Id.* at 11-12. Lastly, Magistrate Judge Lovric considered the claims against Defendant Sostowski, interpreting them as either a civil extortion claim, or more broadly as a procedural due process claim, and determined that the allegations were conclusory, extortion is not a cognizable civil claim, the Complaints do not allege or suggest a due process violation, and New York has adequate post-deprivation remedies that were available to Plaintiff. *Id.* at 12-14.

**\*4** Finding no clear error in the above-described analysis and conclusions, the Court adopts the 2024 Action Report-Recommendation determination as to each claim in the 2024 Complaint. Further, upon a *de novo* review of the 2024 Complaint, the Court agrees with Magistrate Judge Lovric's conclusions for the reasons stated in the 2024 Action Report-Recommendation.

**C. Leave to Amend**

Finally, Magistrate Judge Lovric recommended that certain claims should be dismissed without leave to amend, while others, in an abundance of caution, should be dismissed with leave to amend. Magistrate Judge Lovric articulated the proper standard cautioning courts against dismissing claims filed by a *pro se* litigant without affording the opportunity to amend, and as a result only recommended dismissal without leave to amend claims for which better pleading could not cure the defects identified. *See* Dkt. No. 7 at 14-16; 2024 Action, Dkt. No. 7 at 14-16. Plaintiff's Objections do not specifically take issue with the amendment analysis contained in the Report-Recommendation, and the Court finds no clear error in the determination to dismiss certain futile claims without leave to amend, while permitting Plaintiff an additional opportunity to state his other claims. [4]

Accordingly, the Court adopts both Report-Recommendations in their entireties.

**IV. CONCLUSION**
For these reasons, the Court hereby

**ORDERS** that the 2023 Action Report-Recommendation, Case No. 3:23-cv-01337-AMN-ML (N.D.N.Y.), Dkt. No. 7, is **ADOPTED in its entirety**; and the Court further

**ORDERS** that the 2023 Complaint, Case No. 3:23-cv-01337-AMN-ML (N.D.N.Y.), Dkt. No. 1, is **DISMISSED with leave to amend claims against Defendants Negrelli in his individual capacity, Broome County, Harder, Hamilton, Curtis, Finley in his individual capacity, Binghamton, Kraham, Zikuski, Mushalla, Sostowski, UHS, Raymond, Unknown 1, Unknown 2, and Unknown 3**, and the remainder **DISMISSED without leave to amend**; and the Court further

**ORDERS** that the 2024 Action Report-Recommendation, Case No. 3:24-cv-00067-AMN-ML (N.D.N.Y.), Dkt. No. 7, is **ADOPTED in its entirety**; and the Court further

**ORDERS** that the 2024 Complaint, Case No. 3:24-cv-00067-AMN-ML (N.D.N.Y.), Dkt. No. 1, is **DISMISSED with leave to amend claims against Defendants Binghamton, Broome County, Kraham, Zikuski, and Unknown(s)**, and the remainder **DISMISSED without leave to amend**; and the Court further

**\*5 ORDERS** that Plaintiff's Letter Requests, 2023 Action, Dkt. No. 6; 2024 Action, Dkt. No. 6, are **DENIED as moot**; and the Court further

**ORDERS** that Plaintiff shall file an amended complaint in either or both of his actions within **SIXTY (60) DAYS** of the date of this Order. Any amended complaint must be a complete pleading which will replace the current complaint in the respective case in total; and the Court further

**ORDERS** that if Plaintiff timely files an amended complaint in either or both of his actions, such complaint shall be referred to Magistrate Judge Lovric for review; and if Plaintiff fails to timely file an amended complaint, the Clerk is directed to close the applicable case without further order of this Court; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 3063674

---

**Footnotes**

1    Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

2    Additionally, on March 26, 2024, Plaintiff filed identical letters in both Actions requesting that the Court act on his pending Complaints and IFP motions. 2023 Action, Dkt. No. 6; 2024 Action, Dkt. No. 6 (collectively, "Plaintiff's Letter Requests").

3    To the extent Plaintiff attempts to incorporate his earlier-filed 2024 Action Objections into his 2023 Action Objections, *see* Dkt. No. 8 at 2, the Court considers those arguments below, *infra* § III.B.

4    The Court reiterates Magistrate Judge Lovric's admonition to Plaintiff that any amended complaint "will replace the existing complaint, and must be a wholly integrated and complete pleading," Dkt. No. 7 at 16, and must "contain some specific allegations of fact indicating a deprivation of rights," *id.* (quoting *Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987)*), "set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts," and "allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations[,]" *id.* (quoting *Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986)*). Finally, should Plaintiff wish to pursue this case as a single action, he may file an amended complaint compiling all of his related allegations in one of his cases, and not the other.

---

**End of Document**        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

King v. New York State, Not Reported in Fed. Supp. (2023)

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 76 of 126

2023 WL 5625440
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Cecil Roy KING, Plaintiff,

v.

NEW YORK STATE, James Francis Mathews [sic],
William B. Rebolini, Howard Heckman, Defendants.

23-CV-3421(GRB)(ST)
|
Signed August 31, 2023

**Attorneys and Law Firms**

Cecil Roy King, Coram, NY, Pro Se.

Lori L. Pack, Office of the New York State Attorney General,
Hauppauge, NY, for Defendants New York State, James
Francis Mathews, William B. Rebolini.

**ORDER**

GARY R. BROWN, United States District Judge:

 *1  Before the Court is the fee paid *pro se* complaint of Cecil
Roy King ("Plaintiff") brought pursuant to 42 U.S.C. § 1983
against New York State ("NYS") and three NYS judges: Hon.
James Francis Matthews ("Judge Matthews"), Hon. William
B. Rebolini ("Judge Rebolini"), and Hon. Howard Heckman
("Judge Heckman" and collectively, "Defendants"). *See*
Docket Entry "DE" 1; Receipt No. 200001582. Upon initial
review of Plaintiff's complaint and Defendants' letter motion
requesting a pre-motion conference in anticipation of filing
amotion to dismiss the complaint (DE 5), the Court ordered
Plaintiff to show cause within thirty days why the claims set
forth in the complaint should not be dismissed for lack of
subject matter jurisdiction. (DE 7.) Plaintiff has responded
by filing a "Response to Order to Show Cause & Temporary
Restraining Order." [1] (DE 8.)

For the reasons that follow, the Court lacks subject matter
jurisdiction to adjudicate Plaintiff's claims. Accordingly, the
complaint is dismissed without prejudice pursuant to Federal
Rule of civil Procedure 12(h)(3). Given the dismissal of the
complaint, the request for a restraining order is denied.

**BACKGROUND**

**1. Summary of the Complaint**

Plaintiff's complaint is brought against NYS and three state
judges arising from an underlying state mortgage foreclosure
action and subsequent eviction proceedings. *See* DE 1. The
brief complaint is submitted on the Court's form for civil
rights actions brought pursuant to Section 1983 and has
an additional 169 pages of attachments. [2] *Id.* According to
the complaint, Defendants violated Plaintiff's civil rights by
depriving Plaintiff of property rights without due process of
law. *Id.* at ¶ II.B. In its entirety, Plaintiff's Statement of Claim
alleges:

> Mortgage was illegally assigned to
> PHH Mortgage. Original mortgage
> was Fleet Bank in 2003. Assigned
> to PHH on 12/16/10. Referee's deed
> executed 2/14/20. Referee's deed
> executed 2/14/20 and sold in a no
> due process foreclosure sale. James
> Mathew denied plaintiff's motion to
> have fair trial 11/2/22. Judge Heckman
> signed illegal foreclosure with equal
> protection of law. Promissory note was
> illegally assigned to PHH Mortgage
> on 12/16/10. Referee's deed was
> executed without due process denying
> the plaintiff equal protection of law
> and depriving plaintiff of life, liberty
> and property without due process
> or no recourse. Plaintiff's property
> was sold to Federal National Corp
> – not sure when they became the
> owner – defendant took Plaintiff to
> District Court on 9/28/22 as the owner/
> petitioner of the home. PHH Mortgage
> and Federal National Mortgage does
> not have standing. There is a title
> dispute as to who owns the property.

*Id.* at ¶ III. In the space on the form complaint that calls for
a description of any injuries sustained as a result, Plaintiff
wrote:

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 77 of 126

King v. New York State, Not Reported in Fed. Supp. (2023)

**\*2** The Plaintiff did not get a fair and impartial procedure/trial/hearing in Supreme Court or District Court. The defendants conspired and acted with deliberate indifference to the Constitution and federal laws when making decisions without investigating the facts. The defendants were provided notice that there is a title dispute. Plaintiff suffered wrongful eviction, slander, libel and intentional infliction of emotional distress.

Id. at ¶ IV. For relief

plaintiff requests 20 million dollar payment on this claim to be divided among the defendants. The plaintiff requests the state and district court judges licenses to practice law revoked. The judges assets to be liquidated to pay the judgement in full. The plaintiff demands complete control of the state's corporate charter and to have all records of illegal assignments, deed and all records to the plaintiff.

Id. ¶ V.

## 2. Plaintiff's Response to the Order to Show Cause

By Order to Show Cause dated June 16, 2023, the Court ordered Plaintiff to show cause why the claims in the complaint should not be dismissed without prejudice for lack of subject matter jurisdiction. DE 7. The Court explained that Eleventh Amendment immunity, absolute judicial immunity, and the *Rooker-Feldman* doctrine appeared to divest the Court of subject matter jurisdiction and set forth the legal and factual bases for that circumstance. *Id.* at 5-9. The Court invited Plaintiff to demonstrate why these doctrines do not bar adjudication of Plaintiff's claims in this Court and suggested that Plaintiff consult with the Hofstra Law *Pro Se* Clinic. *Id.* at 9.

Plaintiff's twenty-two page response does not address any of the issues raised by the Court and, instead, re-alleges the claims set forth in the complaint and argues the merits thereof. *See* DE 8, *in toto.* The only mention of "immunity" is at page 14 of Plaintiff's submission where in a single paragraph asserts that:

The judge has qualified immunity when he/she follows the constitution and the law. The Tucker Act exposes the government to liability for certain claims. Specifically, the Act extended the court's jurisdiction to include claims for liquidated or unliquidated damages arising from the Constitution (including takings claims under the Fifth Amendment), a federal statute or regulation, and claims in cases not arising in tort. The relevant text of the Act is codified in 28 U.S.C. §§ 1346(a) and 1491. The Tucker Act (March 3, 1887, Ch. 359, 24 Stat. 505, 28 U.S.C. § 1491) is a federal statute of the United States by which the United States government has waived its sovereign immunity with respect to lawsuits pertaining to 5th Amendment violations of due process.

*Id.* at 14.

## LEGAL STANDARDS

Regardless of whether a plaintiff has paid the Court's filing fee, a district court may *sua sponte*, that is, on its own, dismiss a frivolous *pro se* complaint. *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (*per curiam*) ("[D]istrict courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee" because "as courts of first instance, district courts are especially likely to be exposed to frivolous actions, and thus have an even greater need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources."); *Clark v. Schroeder*, 847 F. App'x 92, 93 (2d Cir. 2021) (summary order) ("District courts have the inherent power to dismiss a complaint as frivolous, even when, as here, the plaintiff has paid the filing fee."); *Hawkins-El III v. AIG Fed. Sav. Bank*, 334 F. App'x 394, 395 (2d Cir. 2009) (affirming the district court's *sua sponte* dismissal of fee paid frivolous complaint).

**\*3** A claim is "frivolous when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v.*

Case 3:24-cv-00003-BKS-ML Document 11 Filed 09/18/24 Page 78 of 126

King v. New York State, Not Reported in Fed. Supp. (2023)

*Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). In addition, a complaint is frivolous where it seeks relief from defendants who are immune from suit. *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) ("A complaint will be dismissed as frivolous when it is clear that the defendants are immune from suit.") (internal quotation marks omitted).

*Pro se* complaints are to be examined with "special solicitude," *Tracy v. Freshwater*, 620 F.3d 90, 102 (2d Cir. 2010), and are to be "interpreted to raise the strongest arguments they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level...." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations, brackets, and citation omitted).

Notwithstanding the liberal pleading standard afforded *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if subject matter jurisdiction is lacking. *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 70-01 (2d Cir. 2000). Lack of subject matter jurisdiction cannot be waived and may be raised at any time or by the court *sua sponte. Id.*; *see also* FED. R. CIV. P. 12(h)(3)("Whenever it appears ... that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."); *Lance v. Coffman*, 549 U.S. 437, 439 (2007) ("Federal courts must determine that they have jurisdiction before proceeding to the merits."). Although *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys, *Erickson v. Pardus*, 551 U.S. 89 (2007), a *pro se* plaintiff is not exempt from "compliance with relevant rules of procedural and substantive law", *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983), and still must establish that the Court has subject matter jurisdiction over the action. *Ally v. Sukkar*, 128 F. App'x 194, 195 (2d Cir. 2005).

Even where subject matter is established, the Court may be divested of subject matter jurisdiction in certain circumstances, such as where the defendant is immune from suit. *See*, e.g., *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (federal courts lack subject matter jurisdiction over claims against judges relating to the exercise of their judicial functions on immunity grounds); *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) ("[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity[.]").

## DISCUSSION

### I. Eleventh Amendment Immunity

**\*4** The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. The Supreme Court has long held that the Eleventh Amendment bars suits against a state by one of its own citizens in federal court. *See*, e.g., *Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). Eleventh Amendment immunity extends to state officials acting in their official capacities, including state court judges. *Thomas v. Martin-Gibbons*, No. 20-3124, 2021 WL 2065892 (2d Cir. May 24, 2021) (summary order) (affirming dismissal of *pro se* Section 1983 claims against the State of New York and a state court judge in his official capacity based on Eleventh Amendment immunity).

However, sovereign immunity "is not absolute," and the Supreme Court "ha[s] recognized ... two circumstances in which an individual may sue a State." *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). First, "a State may waive its sovereign immunity by consenting to suit." *Id.* Second, "Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment." *Id.*; *see also* *Kimel v. Florida Bd. Of Regents*, 528 U.S. 62, 80 (2000). Neither of these exceptions applies in this case. It is well-established that New York State has not waived its sovereign immunity from Section 1983 claims. *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) (summary order). Moreover, Congress did not abrogate that immunity when it enacted Section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity[.]"); *Clark v.*

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 79 of 126

King v. New York State, Not Reported in Fed. Supp. (2023)

*Schroeder*, 847 F. App'x 92, 93-94 (2d Cir. 2021) ("Absent the State's express waiver or a congressional abrogation of immunity, the Eleventh Amendment renders a state immune from federal lawsuits brought either by its own citizens or by citizens of another state.").

Thus, the Eleventh Amendment precludes Plaintiff's claims against NYS and the individuals Defendants sued in their official capacities. *See*, *e.g.*, *Parker v. New York*, No. 22-CV-3170(GRB)(AYS), 2022 WL 2441215, at *3 (E.D.N.Y. July 1, 2022) (finding New York state has not waived its Eleventh Amendment immunity and dismissing *pro se* plaintiff's Section 1983 claims against New York State). Plaintiff does not argue otherwise having been given an opportunity to do so. *See* DE 8. Accordingly, the Court lacks subject matter jurisdiction to adjudicate Plaintiff's Section 1983 claims brought against NYS and the individual Defendants in their official capacities. Thus, such claims are dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(h)(3). [3]

### II. Judicial Immunity

Judges have absolute immunity from suit for judicial acts performed in their judicial capacities. *Mireles*, 502 U.S. at 11 ("[J]udicial immunity is an immunity from suit, not just from the ultimate assessment of damages."). Indeed, "judicial acts -- even if they are alleged to have been done maliciously or corruptly -- are not subject to civil liability." *Davis v. Gillespie*, No. 22-CV-6207, 2023 WL 5002553, at *5 (E.D.N.Y. Aug. 4, 2023) (citing *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978) (finding state court judge absolutely immune from § 1983 suit where that judge had power to entertain and act upon motions in an underlying case)). "The Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *See Brady v. Ostrager*, 834 F. App'x 616, 618 (2d Cir. 2020) (quoting *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009)). Absolute judicial immunity "is not overcome by allegations of bad faith or malice," and a judge cannot "be deprived of immunity because the action he took was in error ... or was in excess of his authority." *Mireles*, 502 U.S. at 11 (internal quotation marks omitted); *Bliven*, 579 F.3d at 209.

**\*5** Here, the challenged conduct of the individual Defendants occurred during the course of the underlying state court proceedings and any actions they took in those cases were judicial acts for which they are afforded absolute

judicial immunity. Accordingly, Plaintiff's claims against the individual Defendants are dismissed without prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3). [4]

### III. State Law Claims

Under 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, courts "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court explained that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Here, given the absence of a plausible federal claim, the interests of judicial economy, convenience, fairness, and comity weigh in favor of not exercising supplemental jurisdiction at this time over any state law claims that may be reasonably construed from the complaint. Accordingly, the Court declines to exercise supplemental jurisdiction over any potential state-law claims contained in Plaintiff's complaint and dismisses any such claims without prejudice.

### IV. Leave to Amend

A *pro se* plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks and citation omitted). However, leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Given that Plaintiff's claims could not be cured with amendment, leave to amend would be futile and is, thus, denied.

### CONCLUSION

King v. New York State, Not Reported in Fed. Supp. (2023)

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 80 of 126

Based on the foregoing, Plaintiff's complaint is dismissed without prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3). Given the dismissal of the complaint, Plaintiff's request for injunctive relief is denied and Defendants' request for a pre-motion conference is denied as moot. The Clerk of the Court shall enter judgment accordingly and mark this case closed. The Clerk of the Court shall also mail a copy of this Order to the *pro se* Plaintiff at the address of record and note service on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**\*6  SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 5625440

---

### Footnotes

1    Plaintiff also seeks an order "restrain[ing] the [D]efendants from any further state court action until the federal court dispute is adjudicated. Plaintiff also requests the court to vacate any state court judgments or orders in the interest of justice," (DE 8 at 21.)

2    The exhibits are largely excerpts from law treatises, copies of cases, and state and federal statutory laws, well as several reports prepared on Plaintiff's behalf concerning the mortgage at issue in the underlying state case. *See* DE 1-1.

3    Plaintiff's Section 1983 claims against NYS are frivolous for the additional reason that New York State is not a "person" within the meaning of Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) (State is not a "person" for the purpose of § 1983 claims); *Zuckerman v. Appellate Div., Second Dep't Supreme Court*, 421 F.2d 625, 626 (2d Cir. 1970) (Court not a "person" within the meaning of 42 U.S.C. § 1983).

4    Given that the Eleventh Amendment and judicial immunity divest this Court of subject matter jurisdiction, the Court need not address the application of the *Rooker-Feldman* doctrine and declines to do so.

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 992885
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Benjamin Samuel RICH, formerly
known as Samuel Guillaume, Plaintiff,
v.
State of NEW YORK, New York City; New
York City Police Department; New York County;
New York County District Attorney's Office;
Detective Michael Miller, Vincent Corrando, John
Passementi, Cyrus Vance, Jr., Shipla Kalra, David
Nasar, and Does 1–100, Inclusive., Defendants.

21 Civ. 3835 (AT)
|
Signed 03/31/2022

**Attorneys and Law Firms**

Benjamin Samuel Rich, Staten Island, NY, Pro Se.

Gee Won Cha, Julinda A. Dawkins, New York State Office
of the Attorney General, New York, NY, for Defendant State
of New York.

Andrew B. Spears, New York City Law Department, New
York, NY, for Defendants City New York, Michael Miller,
Vincent Corrando, John Passementi.

Patricia Jean Bailey, New York County District Attorney's
Office, New York, NY, for Defendants Cyrus Vance, Jr.,
David Nasar.

### ORDER

ANALISA TORRES, District Judge:

**\*1** This action arises from a 2016 arrest and prosecution
of Plaintiff *pro se*, Benjamin Samuel Rich, in New York
County. He brings claims against the State of New York (the
"State"); former New York County District Attorney ("DA")
Cyrus R. Vance, Jr. and two Assistant District Attorneys
("ADAs"), Shilpa Kalra and David Nasar, (collectively, the
"DA Defendants"); and the City of New York (the "City"),
the New York City Police Department (the "NYPD"), and
NYPD officers Michael Miller, Vincent Corrando, and John
Passementi (collectively, the "City Defendants"), pursuant to,

*inter alia*, 42 U.S.C. §§ 1983, 1985, and 1986, the New York
State Constitution, and New York common law. *See generally*
Compl., ECF No. 1. Before the Court are three motions to
dismiss Plaintiff's complaint pursuant to Rules 12(b)(1) and
12(b)(6) of the Federal Rules of Civil Procedure, brought by
the State, ECF No. 20, the DA Defendants, ECF No. 22, and
the City Defendants, ECF No. 32.

For the reasons stated below, the State's motion to
dismiss is GRANTED, and Plaintiff's claims against the
State are DISMISSED. The DA Defendants' motion to
dismiss is GRANTED—Plaintiff's claims against Vance
are DISMISSED; and his claims against Kalra and Nasar
are DISMISSED except for Counts 3 and 4, which are
DISMISSED without prejudice to renewal in an amended
complaint. The City Defendants' motion to dismiss is
DENIED as to Count 4, and GRANTED in all other respects.
Plaintiff's claims against Passementi, the NYPD, and the City
are DISMISSED; and his claims against Miller and Corrando
are DISMISSED, except for Count 3, which is DISMISSED
without prejudice to renewal in an amended complaint.

### BACKGROUND [1]

On January 6, 2016, Plaintiff was at the Highline Ballroom
("the Highline"), a nightclub in Manhattan, as an invited
guest of Wasief Quahtan, a Highline employee. Compl. ¶ 24.
Quahtan and the club owner began arguing over "Quahtan['s]
[having brought] Plaintiff to the party." *Id.* ¶ 25. Security
staff, and an individual named Avery Jackson, asked Plaintiff
to leave. *Id.* ¶ 26. Plaintiff alleges that he was "forcibly
escorted" from the club, and that Jackson became "belligerent
and aggressive" towards him. *Id.* ¶ 27. Shortly thereafter, a
shooting occurred outside the Highline. *Id.* ¶ 28.

Plaintiff believes that Jackson "ran down the street and
jumped into a black sedan ... at the time the shots were fired."
*Id.* ¶ 37. He also states that there were "numerous witnesses"
to the shooting, including a "female 911 caller," who lived
"next door" to the Highline. *Id.* ¶ 36. In that 911 call, the
witness stated that she had seen a "man jump into a black sedan
speeding down the street" after shots were fired. *Id.* Based
on this call, Plaintiff believes "it was more likely that it was
[ ] Jackson who fired the shots before jumping into the black
sedan to chase Plaintiff down." *Id.* ¶ 37.

**\*2** The shooting was investigated by Detective Michael
Miller, who interviewed Jackson. *Id.* ¶¶ 29–30. Jackson told

Rich v. New York, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 82 of 126

Miller that he saw Plaintiff go to a car, "pull out a gun, and shoot in the direction of the Highline," and that Jackson "ran back into the club" when shots were fired. *Id.* ¶¶ 30, 37. But, Plaintiff alleges that many of Jackson's representations to Miller contradicted his initial statements to the NYPD officers who first responded to the shooting, as well as other eyewitness accounts. *See, e.g.*, ¶¶ 30–32. For instance, Plaintiff alleges that Jackson told the responding officers that Plaintiff was "escorted from the club because he was intoxicated," and that Plaintiff then "went to his car, [a Rolls Royce] removed a firearm ... and fired several shots." *Id.* ¶¶ 31, 46. But, Jackson told Miller that Plaintiff was "forcibly ejected from the club" after an altercation with its manager, that Plaintiff was "belligerent," and threatened that he had a gun. *Id.* ¶ 32. Plaintiff also contends that Jackson's statements were demonstrably false, because surveillance videos showed that Jackson "was the aggressor towards Plaintiff," and that Plaintiff was "calm, peaceful, and cooperative" when escorted from the club. *Id.* ¶¶ 32, 41.

Plaintiff alleges that Miller failed to conduct a thorough and complete investigation of the shooting, because he did not interview several witnesses, including the 911 caller. *Id.* ¶¶ 36–37, 39. Plaintiff also suggests that Miller obtained—but disregarded—surveillance video from the inside and the outside of the club that would have corroborated Plaintiff's version of events. *See id.* ¶¶ 40–43. Plaintiff also complains that Officer Vincent Corrando, Miller's supervisor, "approved all [of the] reports written" in the investigation and "should have notice[d] or known of all the inconsistencies and contradictory statements" in Miller's reports. *Id.* ¶ 95. And, Plaintiff alleges that Officer John Passementi "authorized DNA tests," which revealed that the DNA evidence recovered at the scene "did not match Plaintiff." *Id.* ¶ 96.

On January 9, 2016, Miller obtained a search warrant for Plaintiff's car, based on what Plaintiff contends were "false, misleading and/or embellished information" in the underlying affidavits. *Id.* ¶ 46. The next day, Jackson picked Plaintiff's mugshot out of a photo lineup. *Id.* ¶ 92. Plaintiff appears to argue that this lineup was unduly suggestive, because his "mugshot had a lighter background than the other photographs." *Id.* ¶ 92. The same day, Miller obtained a warrant for Plaintiff's arrest for attempted murder, assault, and weapons possession, and in February obtained additional search warrants for Plaintiff's cell phone and laptop, allegedly based, again, on false and misleading statements provided by Miller and Jackson. *Id.* ¶¶ 45, 47. According to Plaintiff, no "physical evidence [ ] tie[d] him to any part of the shooting,"

*id.* ¶ 81, and the police did not recover a gun or find gunshot residue in Plaintiff's car, *id.* ¶ 91.

On January 22, 2016, a grand jury indicted Plaintiff for second-degree attempted murder, first-degree assault, and two counts of criminal possession of a weapon. *See id.* ¶¶ 45, 51. On January 27, 2016, Plaintiff was arrested. *Id.* ¶ 51. He was incarcerated until February 18, 2016, when he was released on bail. *Id.* ¶ 52.

In November 2016, Plaintiff was taken back into custody on suspicion of witness tampering, after Jackson allegedly made a "false[ ]" report to the DA's Office that Plaintiff had tried to contact him. *Id.* ¶¶ 53, 103. Plaintiff remained in jail until his trial, which began in June 2017. *Id.* ¶¶ 54, 64; *see also* Trial Tr. at 1, ECF No. 22-3. [2]

On March 26, 2016, ADAs Shilpa Kalra and David Nasar provided surveillance videos from the Highline to Plaintiff's counsel. Compl. ¶ 64. Plaintiff alleges, however, that the relevant video showed only "one (1) camera angle [out] of 14 camera angles." *Id.* He alleges that prosecutors did not provide videos from the thirteen additional camera angles until a week after trial commenced, even though these videos were collected from the Highline eighteen months earlier. Compl. ¶ 64. The trial court accordingly granted counsel's request to review the additional videos before conducting Jackson's cross-examination. Trial Tr. at 3. On direct examination, Jackson testified that he did not participate in escorting Plaintiff out of the club. *Id.* at 47–48.

**\*3** On June 12, 2017, prior to Jackson's cross-examination, Plaintiff's counsel reported to the trial court that Jackson could be identified in the additional videos based on his clothing. *Id.* at 135. Nasar acknowledged that if Jackson was indeed visible in the videos, he was "doing a bunch of things contrary to what he testified about." *Id.*; *see also id.* at 136. The trial court then determined that Jackson should be questioned, under oath, outside the jury's presence, about his clothing on the night in question, and whether he could identify himself on the videos, among other matters. *See id.* at 146–50, 152–54. Jackson was brought in, and warned about perjury. *See id.* at 154–56. Jackson identified himself on the videos wearing a jacket and a light-colored shirt. *See id.* at 156–59. The court then adjourned the proceedings. *See id.* at 159. When the court resumed, Jackson, through counsel, invoked his Fifth Amendment right against self-incrimination, *id.* at 176, and the court declared a mistrial, *id.* at 186–88.

Rich v. New York, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 83 of 126

Plaintiff's counsel then moved to dismiss the indictment against Plaintiff on two grounds: first, that it was based on false testimony, and second, because of prosecutorial misconduct. Compl. ¶ 100. On October 17, 2017, Kalra consented to dismissal of the indictment on the first ground, but opposed the assertion of prosecutorial misconduct. Dismissal Tr. at 12–13, 15–16. The court dismissed the indictment, but the presiding judge stated he did not "see any prosecutorial misconduct." *Id.* at 16.

On March 12, 2021, over three years after the indictment was dismissed, Plaintiff commenced this action. Compl. Defendants move separately to dismiss the claims against them. ECF Nos. 20, 22, 32. The Court considers each motion in turn.

## DISCUSSION

### I. Legal Standard

#### A. Rule 12(b)(1)

An action should be dismissed pursuant to Rule 12(b)(1) where it is apparent that the court lacks subject matter jurisdiction—that is, the statutory or constitutional power—to adjudicate it. *See* Fed. R. Civ. P. 12(b)(1); *Thomas v. Metro. Corr. Ctr.*, No. 09 Civ. 1769, 2010 WL 2507041, at *1 (S.D.N.Y. June 21, 2010). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A district court must consider a challenge to subject matter jurisdiction before addressing other grounds for dismissal. *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

On a Rule 12(b)(1) motion, the Court must accept all material factual allegations as true. *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). It may not, however, "draw inferences ... favorable to [the] plaintiff[ ]" on such a motion. *Id.* And, the Court may consider evidence outside the pleadings to resolve disputed factual issues relating to jurisdiction. *See id.*

#### B. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns, Inc.*, 493 F.3d at 98. On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Additionally, because Plaintiff proceeds *pro se*, the Court is obligated to construe his submissions "liberally and interpret[ ] [them] to raise the strongest arguments they suggest." *Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted). And, on a motion to dismiss, the Court may appropriately consider a *pro se* plaintiff's opposition papers to "supplement or clarify" the allegations in their complaint. *Sommersett v. City of N.Y.*, No. 09 Civ. 5916, 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) (citation omitted).

### II. Duplicative and Improper Claims

**\*4** Count 7 of the complaint asserts a claim under 18 U.S.C. § 245 for the deprivation of rights under the color of law. Compl. ¶¶ 148–51. But, no private right of action exists under this federal criminal statute, and accordingly, Plaintiff cannot raise a cognizable claim under it. *See Corrado v. State of N.Y. Univ. Stony Brook Police*, No. 15 Civ. 7443, 2016 WL 4179946, at *3 (E.D.N.Y. Aug. 5, 2016). Count 7 is, accordingly, DISMISSED with prejudice.

Further, the Court finds that Count 9 of the complaint—fraudulent misrepresentation under § 1983, Compl. ¶¶ 157–63—is duplicative of Count 4—deprivation of a fair trial under § 1983, *id.* ¶¶ 133–37—because both seek redress for violations of Plaintiff's liberty interests arising from the alleged "fabrication of evidence by a government officer." *See Zahrey v. Coffey*, 221 F.3d 342, 349–50 (2d Cir. 2000). Count 9 is, accordingly, DISMISSED with prejudice.

Finally, three of Plaintiff's claims—Counts 4, 5, and 6—include both federal constitutional claims and analogous state constitutional claims. Compl. ¶¶ 133–47. The New York State Constitution "provides a private right of action where remedies are otherwise unavailable at common law or under § 1983." *Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016). But, where alternative remedies are available under the federal civil rights statutes, including § 1983, courts must

dismiss the plaintiff's state constitutional claims. *Id.* Because § 1983 provides a remedy for all of Plaintiff's alleged federal constitutional violations, any analogous state constitutional claims are duplicative. Accordingly, the state constitutional claims pleaded in Counts 4, 5, and 6 are DISMISSED with prejudice.

### III. The State's Motion

The State moves to dismiss the complaint under Rule 12(b)(1), on the ground that the Eleventh Amendment bars Plaintiff's claims against it by virtue of sovereign immunity. State Mem. at 3, ECF No. 21. The Court agrees.

The Eleventh Amendment bars federal courts from exercising jurisdiction over claims against states. U.S. CONST. AMEND. XI. This extends to a state sued by its own citizens, *see Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–73 (2000), and state agencies, *see Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 480 (1987). There are only limited exceptions to this rule, none of which are applicable here.

First, a state may waive its Eleventh Amendment defense. *See Coll. Sav. Bank v. Fla. Prepaid Postsec. Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Here, the State has not explicitly waived its immunity, or consented to be sued. *See* State Mem. at 3. And, by filing a motion to dismiss, rather than an answer to the complaint, the State cannot be said to have taken actions inconsistent with an assertion of immunity. *Cf. Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002) (finding waiver of immunity where state removed action to federal court, then asserted immunity).

Second, Congress may abrogate the states' immunity from suit through statute. *Kimel*, 528 U.S. at 80. But, Congress has not done so for claims brought under § 1983, *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), § 1985, *see Robinson v. Allstate Ins. Co.*, 508 F. App'x 7, 9 (2d Cir. 2013), or § 1986, *Medina v. Cuomo*, No. 15 Civ. 1283, 2015 WL 13744627, at *6–7 (N.D.N.Y. Nov. 9, 2015). In the "absence of [the State's] consent," accordingly, such claims are "proscribed by the Eleventh Amendment." *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).

**\*5** Finally, the Eleventh Amendment does not bar a "suit against a state official when that suit seeks prospective injunctive relief." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996); *see also Ex parte Young*, 209 U.S. 123 (1908). But here, Plaintiff seeks only money damages, and retrospective declaratory and equitable relief. Compl. § IX. And, Eleventh Amendment immunity shields states from claims for money damages, *Liner v. Hochul*, No. 21 Civ. 11116, 2022 WL 826342, at *1 (S.D.N.Y. Mar. 17, 2022), and "declaratory relief dealing solely with past violations," *Medina*, 2015 WL 13744627, at *7. Although Plaintiff demands "affirmative relief necessary to eradicate the effects of Defendants' unlawful practices," *see* Compl. § IX(B), he does not allege any present violations of his rights, *see id. See Medina*, 2015 WL 13744627, at *7 (noting that "declaratory relief where there is no present violation, is also barred under the Eleventh Amendment"). Accordingly, this exception does not preclude the State's immunity defense in this matter.

Where a defendant is found to have sovereign immunity from suit, the Court is deprived of subject-matter jurisdiction under Rule 12(b)(1). *McGinty v. New York*, 251 F.3d 84, 89, 101 (2d Cir. 2001). Accordingly, because the State is immune from liability on all of Plaintiff's claims under the Eleventh Amendment, its motion to dismiss is GRANTED. And, because amendment would be futile, Plaintiff's claims against the State are DISMISSED with prejudice to renewal. [3]

### IV. The DA Defendants' Motion

Plaintiff raises claims against the DA Defendants "in their individual capacities" [4] arising *inter alia* under § 1983, § 1985, and § 1986, [5] based on three main factual assertions. *See generally* Compl. First, Plaintiff alleges that Kalra and Nasar wrongfully chose to prosecute him, despite the lack of physical evidence tying him to the shooting. Compl. ¶ 81. Second, Plaintiff asserts that Kalra and Nasar intentionally withheld exculpatory surveillance videos until the middle of his trial, *see id.* ¶¶ 75–76, 78. Third, Plaintiff alleges that the "[p]rosecuting [a]ttorneys" "coached" Jackson to give false testimony to the grand jury that indicted him. *Id.* ¶¶ 50–51.

#### A. Absolute Immunity

**\*6** The DA Defendants argue that Plaintiff's claims are barred by absolute and qualified prosecutorial immunity. DA Defs. Mem. at 10–12, ECF No. 22-1. To the extent Plaintiff's claims are predicated on his allegations that Kalra and Nasar wrongfully chose to prosecute him and withheld allegedly exculpatory evidence, the Court agrees.

Rich v. New York, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 85 of 126

## 1. Federal Claims

Although § 1983 has no immunities on its face, the Supreme Court has held that, when Congress initially enacted the statute, it did not intend to abrogate existing immunities established at common law. *See Imbler v. Pachtman*, 424 U.S. 409, 418 (1976). Thus, both absolute and qualified immunity are applicable defenses to § 1983 claims. *See Bernard v. Cty. of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004). Prosecutors are entitled to "absolute immunity" from liability when they function as advocates for the state in circumstances "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. But, prosecutors are entitled only to "qualified immunity" when they perform "investigative functions" normally undertaken by a police officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Under the doctrine of qualified immunity, an official is immune from liability "only when in light of clearly established law and the information the official possesses, it was objectively reasonable for him to think that his actions were lawful." *Hill v. City of N.Y.*, 45 F.3d 653, 663 (2d Cir. 1995).

Courts employ a "functional approach" to determine the availability of absolute immunity, looking to "the nature of the function performed, not the identity of the actor who performed it." *Buckley*, 509 U.S. at 269 (citations omitted). And, although the party claiming absolute immunity bears the burden of establishing its applicability, *see Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996), if the court finds that that the conduct at issue is covered by absolute immunity, then the actor is shielded from liability for damages no matter "how[ ] erroneous the act ... and how[ ] injurious ... its consequences." *Cleavinger v. Saxner*, 474 U.S. 193, 199–200 (1985) (citation omitted); *see also Anilao v. Spota*, No. 19 Civ. 3949, 2022 WL 697663, at *4 (2d Cir. Mar. 9, 2022).

Plaintiff first alleges that Kalra and Nasar improperly chose to prosecute him, despite a lack of physical evidence tying him to the crime. Compl. ¶ 81. But, prosecutors are immune from suit for decisions regarding "whether and when to prosecute," *Imbler*, 424 U.S. at 430–31 n.32–33, even where they may prosecute an innocent individual, *Schmueli*, 424 F.3d at 237–39. Kalra and Nasar are, therefore, entitled to absolute immunity to the extent Plaintiff's claims are based on their decision to prosecute him. [6]

Second, Plaintiff alleges that Kalra and Nasar intentionally withheld exculpatory surveillance videos until the middle of trial, Compl. ¶¶ 75–76, 78. But again, prosecutors are entitled to absolute immunity for all decisions taken "in their prosecutorial capacity, including decisions regarding which evidence should be disclosed to a criminal defendant." *Newson v. City of N.Y.*, No. 16 Civ. 6773, 2019 WL 3997466, at *3 (E.D.N.Y. Aug. 23, 2019). This is true even where information was deliberately withheld, *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 640 (E.D.N.Y. 2017), or where such withholding violated the defendant's constitutional rights, *see Warney v. Monroe Cnty.*, 587 F.3d 113, 125 (2d Cir. 2009). Accordingly, Kalra and Nasar have absolute immunity to the extent any of Plaintiff's claims are predicated on a violation under this factual allegation.

**\*7** Finally, Plaintiff alleges that the "Prosecuting Attorneys" coached Jackson to give false testimony to the grand jury, which then formed the basis for his indictment. Compl. ¶¶ 50–51. Prosecutors generally only have qualified immunity for actions taken before there is probable cause to arrest a defendant, because they are performing an investigative function, rather than acting as advocates. *See Hill*, 45 F.3d at 661; *Buckley*, 509 U.S. at 273. And, although "knowingly presenting evidence" to a grand jury is considered the "core of a prosecutor's role as an advocate," *Bernard*, 356 F.3d at 503, the Second Circuit has distinguished between a prosecutor's knowing presentation of false evidence to the grand jury—which is still entitled to absolute immunity —from a prosecutor's deliberate fabrication of evidence, *Hill*, 45 F.3d at 662–63 (finding that where prosecutor deliberately manufactured evidence to establish probable cause for plaintiff's arrest, his conduct was investigatory, regardless of whether, when the evidence was manufactured, the prosecutor intended to present it to the grand jury). In *Hill*, the Second Circuit also established that "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of qualified immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." *Id.* at 663.

As in *Hill*, Plaintiff alleges that the prosecutors deliberately participated in the fabrication of false evidence by coaching a material witness to give perjured testimony to the grand jury, so that the jury would return an indictment. Compl. ¶¶ 50–51. Allegations that the prosecution falsified evidence are distinct from allegations that the prosecution merely presented evidence they knew to be false. *Compare Hill,*

Rich v. New York, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 86 of 126

45 F.3d at 662–63, *with* *Urrego v. United States*, No. 00 Civ. 1203, 2005 WL 1263291, at \*2 (E.D.N.Y. May 27, 2005) (prosecutors receive absolute immunity for claims predicated on "false presentation of evidence to a grand jury"). And, considering the Court's obligation to liberally construe Plaintiff's pleadings and afford every reasonable inference in his favor at this stage, the Court concludes the DA Defendants have not established that they were acting as "advocates," rather than "investigators," when they engaged in the challenged conduct. *Hill*, 45 F.3d at 660 (officials asserting absolute immunity bear the burden of establishing it for the action in question). And, accepting the facts in the complaint as true, the DA Defendants would not be entitled to even qualified immunity, because it is objectively unreasonable for them to have knowingly coached a witness to give false testimony before a grand jury. *See* *Cipolla v. Cty. of Rensselaer*, 129 F. Supp. 2d 436, 456 (N.D.N.Y. 2001) (not "objectively reasonable" to believe presenting or soliciting perjured testimony did not violate plaintiff's clearly established rights). Accordingly, to the extent that Counts 3, 4, 5, 6, and 8 are predicated on the claim that the DA Defendants coached Jackson to give false testimony, they are not entitled to either absolute or qualified immunity.

### 2. State Claims

Plaintiff raises state-law claims against the DA Defendants in Counts 10 and 14 of the complaint. Compl. ¶¶ 164–67, 182–85. As with federal law, under New York law, a district attorney prosecuting crime is performing a quasi-judicial function, and, as such, is entitled to absolute immunity. *Arteaga v. State*, 72 N.Y.2d 212, 217 n.1 (N.Y. 1988). But, unlike federal law, prosecutors are absolutely immune for official acts in both the prosecution and investigation of criminal charges. *See* *Moore v. Dormin*, 173 Misc. 2d 836, 843, (N.Y. Sup. Ct. 1997), *aff'd as modified*, 252 A.D.2d 421 (N.Y. App. Div. 1998). A prosecutor does not receive absolute immunity, however, "when knowingly acting in violation of law." *Id.* As with Plaintiff's federal claims, to the extent his state law claims against the DA Defendants are predicated on his allegations that they improperly targeted him for prosecution or deliberately withheld exculpatory evidence, the DA Defendants are entitled to absolute immunity. But, construing Plaintiff's third allegation liberally, he essentially claims that the prosecutors knowingly acted in violation of the law by suborning perjury. The Court cannot conclude, therefore, that the DA Defendants are entitled to absolute

immunity as a matter of state law to the extent Counts 10 and 14 rest on this allegation. [7]

### B. Time Bar

**\*8** The DA Defendants argue that Plaintiff's claims are untimely. DA Defs. Mem. at 6–8. With the exception of Counts 3 (§ 1983 malicious prosecution) and 4 (§ 1983 deprivation of a fair trial), the Court agrees.

### 1. Federal Claims

Claims arising under §§ 1983 and 1985, when brought in this district, are governed by New York's three-year statute of limitations for personal injury actions, N.Y. C.P.L.R. § 214; *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (citation omitted); *Hernandez-Avila v. Averill*, 725 F.2d 25, 27 n.3 (2d Cir. 1984). But, claims under § 1986 have a one-year statute of limitations. *see* 42 U.S.C. § 1986. Federal courts are also obligated to apply New York's tolling rules. *Bd. of Regents of Univ. of the State of N.Y. v. Tomanio*, 446 U.S. 478, 483 (1980).

On March 20, 2020, then-Governor Andrew Cuomo issued Executive Order 202.8, which tolled the statute of limitations in New York in light of the COVID-19 pandemic. 9 N.Y.C.R.R. § 8.202.8. Subsequent orders extended the tolling period until November 3, 2020. Exec. Order 202.67 (Oct. 4, 2020). Contrary to the DA Defendants' assertion, *see* DA Defs. Mem. at 7–8, other courts in this district have uniformly concluded that Executive Order 202.8 applies to federal cases applying New York's statute of limitations, including for § 1983 claims. *See, e.g.*, *Lewis v. Westchester Cnty.*, No. 20 Civ. 9017, 2021 WL 3932626, at \*2 n.3 (S.D.N.Y. Sept. 2, 2021). [8] The Court concludes, therefore, that Executive Order 202.8 tolls the statute of limitations for Plaintiff's §§ 1983 and 1985 claims, which apply New York's three-year limitations period —but not Plaintiff's § 1986 claims, because the applicable statute of limitations for that claim is found in the federal statute itself.

Section 1983 claims based on malicious prosecution or deprivation of a fair trial accrue when the underlying criminal action against the plaintiff is "favorably" terminated, rather than at the time of arrest. *Sharp v. Cnty. of Putnam*, No. 18 Civ. 780, 2019 WL 2250412, at \*4 (S.D.N.Y May 24, 2019); *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 394 (S.D.N.Y. 2016). The dismissal of an indictment constitutes

Rich v. New York, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 87 of 126

the termination of a proceeding. *Sharp*, 2019 WL 2250412, at *4–5. Applying these principles, Plaintiff's § 1983 claims for malicious prosecution (Count 3) and denial of a fair trial (Count 4) accrued on October 17, 2017, the date the trial court dismissed the indictment against him. Dismissal Tr. at 5. And, although the statute of limitations would have expired on October 17, 2020, New York's COVID-19 tolling rule extended the limitations period until June 2, 2021.[9] Because Plaintiff commenced this suit on March 12, 2021, Counts 3 and 4 are timely.

**\*9** By contrast, a § 1983 abuse-of-process claim accrues when the criminal process is "set in motion—typically at arrest—against the plaintiff." *Hadid v. City of N.Y.*, No. 15 Civ. 19, 2015 WL 7734098, at *5 (E.D.N.Y. Nov. 30, 2015), *aff'd* 730 F. App'x 68 (2d Cir. 2018). Because Plaintiff was arrested on January 27, 2016, the relevant statute of limitations for Count 8, § 1983 abuse of process, expired on January 27, 2019, and COVID-19 tolling provisions are, therefore, inapplicable. Accordingly, this claim is DISMISSED with prejudice as untimely.

Section 1985(3) conspiracy claims accrue "at the time of the events that caused the injury." *Panetta v. Cassel*, 20 Civ. 2255, 2020 WL 2521533, at *5 (S.D.N.Y. May 18, 2020). The existence of a conspiracy "does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs. It is the wrongful act, not the conspiracy, which is actionable, whether the act is labelled a tort or a violation of [federal civil rights statutes]." *Singleton v. City of N.Y.*, 632 F.2d 185, 192 (2d Cir. 1980) (citation omitted). As discussed, the single allegation that escapes absolute immunity—and therefore is the only remaining basis for Plaintiff's claims against the DA Defendants—is that those defendants suborned perjury in the grand jury proceedings by coaching Jackson to give false testimony, resulting in Plaintiff's indictment and arrest. Plaintiff's § 1985(3) claim— Count 5 of the complaint—accrued no later than January 27, 2016, the date of his arrest—which again, applying a three-year statute of limitations untouched by COVID-19 tolling provisions, renders it untimely. Count 5 is, accordingly, DISMISSED with prejudice.

Similarly, Count 6, Plaintiff's § 1986 conspiracy claim, accrued when Plaintiff knew, or had reason to know of the harm or injury. *Young v. Lord & Taylor, LLC*, 937 F. Supp. 2d 346, 354 (E.D.N.Y. 2013). Plaintiff knew of the injury by his arrest date. Applying § 1986's one-year statute of limitations, any § 1986 claim Plaintiff brought after January 27, 2017,

is untimely.[10] Accordingly, Count 6 is DISMISSED with prejudice.

### 2. State Claims

Counts 10 and 14 of the complaint—both state common-law claims—are also time-barred. "Under New York law, a plaintiff asserting tort claims against the City or its employees," as well as against municipal officials like district attorneys, "must file a notice of claim within [90] days after the incident giving rise to the claim and commence the action within a year and [90] days from the date of the incident." *Brown v. City of N.Y.*, No. 18 Civ. 3287, 2020 WL 1819880, at *7 (S.D.N.Y. Apr. 9, 2020) (citing N.Y. Gen. Mun. Law §§ 50-e(1)(a), 50-i(1)); *see also Gonzalez v. City of N.Y.*, No. 94 Civ. 7377, 1996 WL 227824, *2 (S.D.N.Y. May 3, 1996). Plaintiff asserts that he filed the requisite notice of claim with the City on January 16, 2018—720 days after his arrest, and 91 days after the dismissal of the indictment. Compl. ¶ 16. Plaintiff did not commence this action until March 12, 2021. *See* Compl. Therefore, Plaintiff neither timely filed a notice of claim within 90 days, nor did he commence this lawsuit within a year and 90 days after the date the indictment was dismissed —the last date that could possibly serve as the trigger for the statute of limitations. Failure to comply with the mandatory notice of claim requirements is a basis for dismissal of a plaintiff's claims. *Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003). The Court, accordingly, concludes that Counts 10 and 14 are also time-barred, and therefore, these claims are DISMISSED with prejudice.

### C. Personal Involvement

**\*10** Liability under § 1983 must be premised on a defendant's direct, personal involvement in the alleged violations. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). A defendant cannot be held vicariously liable under § 1983 for employing or supervising an employee that violated the plaintiff's rights—rather, a plaintiff must plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

As to Vance, Plaintiff only alleges that he served as the DA of New York County. Compl. ¶ 11. Vance may not be held liable for merely employing or supervising Kalra and Nasar. *See Iqbal*, 556 U.S. at 676. And, Plaintiff neither pleads that Vance was personally involved in investigating the shooting

Rich v. New York, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 88 of 126

or prosecuting him, nor is there any evidence in the record to support such a finding. Accordingly, Plaintiff's claims against Vance are DISMISSED with prejudice, because given the lack of evidence of Vance's personal involvement, the Court finds that granting leave to amend would be futile. *Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011).

Plaintiff similarly fails to specify Kalra and Nasar's personal involvement in his claimed constitutional violations, stating only that the "Prosecuting Attorneys" coached Jackson to provide testimony. Compl. ¶ 50. But, given Plaintiff's position as a *pro se* litigant, the Court recognizes that there may be additional information made available to Plaintiff through discovery that would enable Plaintiff to assert claims directly against Kalra and Nasar, such as if, for example, either of them prepared Jackson to testify. By **April 15, 2022**, accordingly, the DA Defendants shall, through counsel, inform Plaintiff and the Court whether Kalra or Nasar prepared Jackson to testify before the grand jury with respect to any potential criminal charges against Plaintiff, and/or conducted an examination of Jackson before the grand jury. No later than **May 16, 2022**, Plaintiff shall file an amended complaint, alleging with specificity Kalra and Nasar's direct, personal involvement in either "coaching" Jackson to testify falsely before the grand jury, or deliberately eliciting false testimony from Jackson during the grand jury proceedings. In addition, because, as detailed *infra* at 25–26, the Court finds that Plaintiff's malicious prosecution claim is deficient because he failed to allege that the underlying criminal proceedings terminated in his favor, an argument raised by the City Defendants but not the DA Defendants, any amended malicious prosecution claim that Plaintiff wishes to assert against Kalra and Nasar should also address this issue. Failure to do so shall result in dismissal with prejudice of Plaintiff's remaining claims against Kalra and Nasar.

## V. City's Motion to Dismiss

Plaintiff brings claims against the City Defendants, on the grounds that (1) Miller failed to conduct a thorough and complete investigation of the shooting, by not interviewing several witnesses, including the 911 caller, Compl. ¶¶ 36–37, 39; (2) in his investigation, Miller obtained—but disregarded—surveillance video from both the inside and outside of Highline Ballroom, *id.* ¶¶ 40–43; (3) that Miller "used his own added facts and embellished statements" in his investigative reports to target Plaintiff as the sole suspect in the shooting, *id.* ¶ 44, *see also* ¶ 39; (4) that Corrando, as Miller's supervisor, approved his investigative reports but failed to notice the inconsistencies and contradictions therein, *id.* ¶ 95; and (5)

that Passamenti "authorized DNA tests," which revealed that the DNA evidence recovered at the scene "did not match Plaintiff," *id.* ¶ 96. The Court addresses each remaining [11] cause of action.

### A. Time Bar

#### 1. Section 1983 Claims

**\*11** Plaintiff brings claims under § 1983 for unlawful search and seizure (Count 1); false arrest (Count 2); malicious prosecution (Count 3); deprivation of a fair trial (Count 4); and abuse of process (Count 8). As noted, § 1983 claims are subject to a three-year statute of limitations in this district. *See supra* at 15. And, for the reasons discussed with respect to the DA Defendants, the Court concludes that Counts 3 and 4 were timely pleaded. *See supra* at 16–17.

A § 1983 unlawful search and seizure claim, however, accrues on the date the allegedly unlawful search occurred. *McClanahan v. Kelly*, No. 12 Civ. 5326, 2014 WL 1317612, at *4 (S.D.N.Y. Mar. 31, 2014). Plaintiff alleges that his property was searched on January 9, February 12, and February 15, 2016. Compl. ¶¶ 46–47. The applicable statute of limitations, therefore, expired no later than February 15, 2019, nearly two years before Plaintiff brought suit. Plaintiff's claims are, therefore, untimely, and Count 1 is DISMISSED with prejudice as time-barred.

Section 1983 false arrest claims and abuse-of-process claims accrue from the date of Plaintiff's arrest. *See Rivera v. City of N.Y.*, No. 16 Civ. 9709, 2019 WL 252019, at *4 (S.D.N.Y. Jan. 17, 2019) (false arrest); *Anderson v. Cnty. of Putnam*, No. 14 Civ. 7162, 2016 WL 297737, at *3 (S.D.N.Y. Jan. 22, 2016) (abuse-of-process). Plaintiff was arrested on January 27, 2016, and therefore, any such claims should have been brought no later than January 27, 2019. Counts 2 and 8 are, accordingly, DISMISSED with prejudice as untimely.

#### 2. Sections 1985(3) and 1986 Claims

Liberally construing the complaint, in Count 5, Plaintiff sets forth a conspiracy cause of action under § 1985(3), alleging that the City Defendants engaged in a conspiracy to have Plaintiff wrongfully convicted, *see* Compl. ¶ 97. This claim appears predicated on the NYPD investigation into the January 6, 2016 shooting, and Miller's alleged embellishment

Rich v. New York, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 89 of 126

of information, and focus on Plaintiff as the sole suspect. *Id.* ¶¶ 36–37, 39, 46, 90. Plaintiff also raises a failure-to-intervene claim under § 1986 (Count 6), seemingly arising from Corrando's alleged failure to notice the inconsistencies and contradictory statements allegedly included in Miller's police reports. *Id.* ¶ 95.

Section 1985(3) claims accrue "at the time of the events that caused the injury," and are subject to a three-year statute of limitations, *Panetta*, 2020 WL 2521533, at *5. Section 1986 claims based on a failure to intervene accrue when the defendant fails to intervene, *Thomas v. City of Troy*, 293 F. Supp. 3d 282, 303 (N.D.N.Y. 2018), and must be brought within one year, *see* 42 U.S.C. § 1986. Plaintiff's claims each began accruing no later than January 27, 2016, the date of Plaintiff's arrest, because Plaintiff does not suggest that any investigation took place after that date. The applicable limitations period extends no later than January 27, 2019, for Plaintiff's § 1985(3) claim, and January 27, 2017 for Plaintiff's § 1986 claim, two and four years, respectively, before the complaint was filed. Counts 5 and 6 are, therefore, DISMISSED with prejudice as time-barred.

### 3. State Claims

To the extent Plaintiff's state common-law claims, asserting various types of negligence, arise from the NYPD investigation into the shooting on January 6, 2016; the searches of Plaintiff's property on January 9, February 12, and February 15, 2016; and Plaintiff's arrest on January 27, 2016, Plaintiff was required to file a notice of claim within 90 days of those events, *see* N.Y. Gen. Mun. L. § 50-e. As noted, Plaintiff did not file a notice of claim with the City until January 16, 2018—one year and eleven months after the latest of those dates. Compl. ¶ 16. Accordingly, each of Plaintiff's negligence claims (Counts 10–14) are DISMISSED with prejudice. [12]

### B. Claim Against the City [13]

**\*12** The Court reads Plaintiff's complaint as claiming, under *Monell v. Department of Social Services*, 436 U.S. 658, that the City is liable for the allegedly unlawful conduct of the named NYPD officers. *See* Compl. ¶ 179. The City Defendants argue that Plaintiff does not include sufficient factual allegations to support a municipal liability claim. City Defs. Mem. at 20–22, ECF No. 34. The Court agrees.

To bring a municipal liability claim under § 1983, the plaintiff must "prove the existence of a municipal policy or custom," then demonstrate a causal connection between the policy and the alleged constitutional deprivation. *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). Plaintiff pleads neither, offering only conclusory allegations that the City Defendants "engaged in a pattern and practice to commit the aforementioned unlawful acts," Compl. ¶ 179, and that a policy is "inferred" because the City Defendants "took no steps to reprimand or discharge the officers involved," ECF No. 39 at 27. These allegations cannot, without more, state a claim for municipal liability. *E.g.*, *Fleming v. City of New York*, No. 18 Civ. 4866, 2020 WL 5522871, at *6 (S.D.N.Y. July 23, 2020). Because Plaintiff offers no facts which suggest that the deficiencies in his *Monell* claim may be cured by amendment, any such claim is DISMISSED with prejudice. *Strong v. City of Syracuse*, No. 16 Civ. 1054, 2020 WL 137250, at *3–4 (N.D.N.Y. Jan. 13, 2020) (dismissing *Monell* claim, with prejudice, given "[p]laintiff's conclusory allegations are insufficient to plausibly infer a custom or policy to support municipal liability").

### C. Passamenti's Personal Involvement

Plaintiff's remaining claims are Counts 3 (malicious prosecution) and 4 (denial of a fair trial). As to Defendant Passamenti, Plaintiff alleges that Passamenti authorized DNA tests, which revealed that the DNA evidence recovered at the scene "did not match Plaintiff." Compl. ¶ 96. Plaintiff does not allege that Passamenti was involved in falsification of evidence, that he attempted to hide the results of the relevant DNA tests, or that he was otherwise responsible for, or even aware of, the alleged "embellishment" of statements in the NYPD's investigative reports. Plaintiff has not, therefore, sufficiently alleged Passamenti's direct, personal involvement in any constitutional violations under § 1983. *Tangreti*, 983 F.3d at 618. And, because the record does not establish that Plaintiff could cure this pleading defect by amendment, Plaintiff's claims against Passamenti are DISMISSED with prejudice.

### D. Malicious Prosecution

A claim for malicious prosecution under § 1983—Count 3 of the complaint—requires the plaintiff to show that the criminal proceedings against him were terminated "in his favor," typically by an acquittal or another form of dismissal of the charges on the merits. *Janetka v. Dabe*, 892 F.2d 187, 189–90 (1989). The City Defendants argue that Plaintiff has not made such a showing. City Defs. Mem. at 10, 14–17. The

Court agrees. Plaintiff asserts—citing no authority in support —that the dismissal of the indictment was a "termination in his favor" because dismissals that "include constitutional privilege assertions are considered favorable terminations." ECF No. 39 at 7, 10 (quotation marks omitted). It is not clear what Plaintiff means by this. And, from the Court's review of the state court transcript, it appears that, in dismissing the indictment, neither the prosecution, nor the court, made any statements indicating a belief in Plaintiff's innocence. *See Lanning v. City of Glens Falls*, 908 F.3d 19, 28 (2d Cir. 2018) (looking to the "reasons ... stated on the record for dismissing the charges" in determining whether the termination of the criminal case was in plaintiff's favor). Indeed, Kalra expressly declined to concede that Plaintiff was innocent, instead reaffirming her belief that Plaintiff "was the shooter." Dismissal Tr. at 15. The presiding judge similarly stated on the record that dismissal of the indictment was warranted even though he did not "see any prosecutorial misconduct." *Id.* at 16. The dismissal of the indictment, therefore, left open the question of Plaintiff's guilt or innocence, and Plaintiff cannot, accordingly, assert on that basis alone, that the proceedings were terminated in his favor.

**\*13** The Court notes, however, that because four years have passed since the dismissal of the indictment, Plaintiff may be able to plead additional facts from that time that support this relevant element of his claim. There is no information before the Court as to whether, for example, Plaintiff was ever informed by the prosecutors that he had been cleared of wrongdoing, whether Jackson or anyone else was later prosecuted for the shooting, or whether the state court made any further statements regarding the merits of the charges against Plaintiff. Count 3 is, accordingly, DISMISSED without prejudice, to provide Plaintiff with an opportunity to plead additional facts to support this claim.

E. Denial of Fair Trial

To state a claim under § 1983 for denial of a fair trial based on the fabrication of evidence by a police officer—Count 4 of the complaint—a plaintiff must allege that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016) (citation omitted). The plaintiff need not show a favorable termination indicative of innocence to state such a claim. *Smalls v. Collins*, 10 F. 4th 117, 142–43 (2d Cir. 2021). The City Defendants argue that Plaintiff has failed to show a deprivation of his

liberty interests because there was probable cause for his prosecution, in the form of corroborative ballistics evidence. City Defs. Mem. at 16 (citing Dismissal Tr. at 15); City Defs. Reply at 6–7, ECF No. 46.

Probable cause is not a complete defense to a fair trial claim. *Torres v. City of N.Y.*, No. 16 Civ. 6719, 2017 WL 4325822, at *5 (E.D.N.Y. Sept. 27, 2017) (noting that where "independent probable cause exists for the prosecution," a plaintiff must "show that the misconduct caused some deprivation above and beyond the fact of the prosecution itself." (citation omitted)). Plaintiff plausibly alleges that Miller fabricated and "embellished" Jackson's statements in his investigative report; that Miller provided these reports to prosecutors to secure Plaintiff's indictment and arrest; and that Corrando, as Miller's supervisor, reviewed and approved these reports without identifying any "embellishments" or obvious factual contradictions. *See* Compl. ¶¶ 44–49, 95. On a motion to dismiss, the Court cannot take as true the City Defendants' factual assertion that, regardless of any alleged fabrications in Miller's reports, the prosecution had independent ballistics evidence to satisfy the probable cause standard. *Compare* City Defs. Reply at 6–7, *with* ECF No. 39 at 9–12. It cannot, therefore, find as a matter of law, that the City Defendants had probable cause for Plaintiff's indictment and prosecution. *See Bullard v. City of N.Y.*, 240 F. Supp. 2d 292, 299 (S.D.N.Y. 2003). The Court concludes, therefore, that Plaintiff has sufficiently alleged a § 1983 denial of fair trial claim against Miller and Corrando. The City Defendants' motion to dismiss Count 4 of the complaint is, accordingly, DENIED.

## CONCLUSION

For the reasons stated above, the State's motion to dismiss, ECF No. 20, is GRANTED, and Plaintiff's claims against the State are DISMISSED. The DA Defendants' motion to dismiss, ECF No. 22, is GRANTED—Plaintiff's claims against Vance are DISMISSED; and his claims against Kalra and Nasar are DISMISSED except for Counts 3 and 4, which are DISMISSED without prejudice to renewal in an amended complaint. By **April 15, 2022**, the DA Defendants shall make the disclosures directed in this order. The City Defendants' motion to dismiss is DENIED as to Count 4, and GRANTED in all other respects. Plaintiff's claims against Passamenti, the NYPD, and the City are DISMISSED; and his claims against Miller and Corrando are DISMISSED, except for Count 3, which is DISMISSED without prejudice to renewal in an amended complaint.

Rich v. New York, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 91 of 126

**\*14** By **May 16, 2022**, Plaintiff shall file an amended complaint as to Counts 3 and 4, with the additional factual allegations detailed in this order. The Clerk of Court is directed to terminate the motions pending at ECF Nos. 20, 22, and 32, and mail a copy of this order to Plaintiff *pro se.* The Court shall separately provide Plaintiff with a copy of all unpublished cases cited herein.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 992885

---

## Footnotes

1    Unless otherwise stated, the following facts are taken from the complaint and assumed, for purposes of this motion, to be true. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

2    The relevant state court trial transcripts were submitted by the DA Defendants in their motion to dismiss. *See* Trial Tr.; Dismissal Tr., ECF No. 22-4. The Court may take judicial notice of these transcripts as a matter of public record. *See Shmueli v. City of N.Y.*, 424 F.3d 231, 233 (2d Cir. 2005).

3    Because the Court concludes that it lacks jurisdiction over Plaintiff's claims against the State under Rule 12(b)(1), it need not reach the State's alternative ground for dismissal, that Plaintiff's § 1983 and § 1985 claims must be dismissed because the State is not a suable "person" within the meaning of those statutes. State Mem. at 3–4.

4    Plaintiff makes this clarification for the first time in his opposition papers. ECF No. 28 at 14. The Court notes that because, as discussed, the Eleventh Amendment bars suits against states, *see supra* at 8–10, when a defendant is sued in his official capacity, the court treats the suit as one against the "entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. N.Y.C. Dep't of Soc. Serves.*, 436 U.S. 658, 690 n.55 (1978)). And, where a "district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the State, and therefore immune from suit in her official capacity." *D'Alessandro v. City of N.Y.*, 713 F. App'x 1, 8 (2d Cir. 2017). Accordingly, any claims Plaintiff may raise against the DA Defendants in their "official capacity" would be precluded by immunity under the Eleventh Amendment. *See id.*

5    Although Plaintiff asserts that he pleads each of his claims against "all Defendants," even a liberal read of the complaint makes clear that certain of Plaintiff's claims cannot implicate the DA Defendants' conduct, including counts 1 (unreasonable search and seizure); 2 (false arrest/imprisonment); 11 (personal injury); 12 (property damage) and 13 (negligent hiring, training, supervision, and discipline of officers). Compl. ¶¶ 117–27, 168–81. As the Court has already dismissed Counts 7 and 9, *see supra* at 7–8, it only considers Counts 3 (malicious prosecution); 4 (deprivation of fair trial); 5 (conspiracy); 6 (failure to intervene); 8 (abuse of process); 10 (negligent misrepresentation); and 14 (negligent infliction of emotional distress) against the DA Defendants.

6    Because the Court finds that the DA Defendants are entitled to absolute immunity on any claims arising from the withholding of exculpatory evidence, the Court does not reach their alternative argument that Plaintiff fails to state a claim for an alleged *Brady* violation, *see* DA Defs. Mem. at 12–15.

Rich v. New York, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 92 of 126

7  As noted, the parallel state-law constitutional claims in Counts 4, 5, and 6 are dismissed with prejudice. *See supra* at 8.

8  The DA Defendants' reliance on *Johnson v. Fargione* is unavailing. In that case, the court found that the plaintiff's claims, which had expired weeks before the issuance of Executive Order 202.8, could not "be said to have been tolled" by that Executive Order, as the time for filing had already passed and the plaintiff had offered no excuse for the delay. 20 Civ. 764, 2021 WL 1406683, at *3 (N.D.N.Y. Feb. 17, 2021), *report and recommendation adopted* 2021 WL 1404554 (Apr. 14, 2021). Although *Johnson* is instructive with respect to how claims that may have expired *before* the issuance of Executive Order 202.8 (*i.e.*, before March 20, 2020) should be treated, it does not address the applicability of the Executive Order to federal claims that, like Plaintiff's, had not yet expired by that date.

9  Executive Order 202.8 tolled applicable limitations periods from March 20, 2020 to November 3, 2020. The order amounted to a "pause" in the limitations period—that is, during the duration of the toll, the clock to file [did] not run," but "[o]nce the toll end[ed,] the clock resume[d] from where it was when the toll began, and the plaintiff ha[d] the rest of his limitations period to file his complaint," *Johnston v. City of Syracuse*, No. 20 Civ. 1497, 2021 WL 3930703, at *6 (N.D.N.Y. Sept. 2, 2021). Because, as of March 20, 2020, when the clock was "paused," Plaintiff had 211 days remaining before the expiration of the limitations period on October 17, 2020, the Court calculates 211 days after November 3, 2020, as the end of the relevant limitations period when tolled—which is June 2, 2021.

10  Even assuming, *arguendo*, that Plaintiff would not have had reason to know of the harm or injury that was the basis of his Section 1986 claim until the date the indictment was dismissed (October 17, 2017), the claim would still be time-barred, because this would only extend the limitations period to October 17, 2018—nearly three years before the commencement of this action.

11  As noted, the Court dismissed Count 7 for relying on a statute that does not provide a private right of action, *see supra* at 7; Count 9 for being duplicative of Count 4, *see id.* at 8, and all the state constitutional claims Plaintiff asserts analogously to his federal constitutional claims, *see id.*

12  As discussed *supra* at 18–19, even if the Court construes Plaintiff's notice of claim as timely based on the dismissal of Plaintiff's criminal case on October 17, 2017, Plaintiff still failed to commence this action within one year and 90 days, as required by statute. This provides an alternative ground for dismissal.

13  Plaintiff also names the NYPD as a defendant. *See* Compl. But, the NYPD is a non-suable agency of the City, and thus, to the extent any of Plaintiff's claims are brought against it, they fail as a matter of law. *See Jenkins v. City of N.Y.*, 478 F.3d 76, 93 n.19 (2d Cir. 2007). Any such claims are, accordingly, DISMISSED with prejudice.

---

**End of Document**                                   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1344697

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

Maurice D. HARRIS, Plaintiff,

v.

John DOE, Badge #469, Defendant.

CASE NO. 3:24-cv-151 (MPS)

|

Signed March 29, 2024

**Attorneys and Law Firms**

Maurice D. Harris, New Haven, CT, Pro Se.

**INITIAL REVIEW ORDER**

Michael P. Shea, United States District Judge

**\*1** Plaintiff Maurice D. Harris, a pretrial detainee incarcerated at New Haven Correctional Center, filed this case under 42 U.S.C. § 1983 naming one defendant, New Haven Police Officer John Doe, Badge #469. The plaintiff alleges that the defendant falsely arrested and detained him. The plaintiff seeks damages from the defendant in his individual capacity.

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. This requirement applies to all prisoner filings regardless whether the prisoner pays the filing fee. *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 159 (D. Conn. 2005) (citing *Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam)). Here, the plaintiff is proceeding *in forma pauperis*.

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A. Based on this initial review, the Court orders as follows.

**I. Allegations**

While the Court does not set forth all of the facts alleged in the plaintiff's Complaint (ECF No. 1) and Addendum [1] (ECF

No. 12), it summarizes his basic factual allegations here to give context to this ruling.

On September 25, 2023, the plaintiff got into a disagreement with library worker Jane Doe at the New Haven Library. ECF No. 12 ¶ 1. Jane Doe assaulted the plaintiff with "her walkie talkie." *Id.* ¶ 2. The plaintiff did not defend himself, instead calling 9-1-1 for assistance. *Id.*

The defendant and his partner responded to the call and the plaintiff told them what had happened. *Id.* ¶ 3. The defendant viewed the library video and showed the plaintiff a copy of the footage on his phone. *Id.* ¶ 4. The footage clearly showed Jane Doe hitting the plaintiff. *Id.* Regardless, the defendant arrested and detained the plaintiff, charging him with breach of peace and assault in the third degree. *Id.* ¶ 5. Jane Doe was not arrested or charged. *Id.* ¶ 9.

The plaintiff told the defendant that he had violated the plaintiff's constitutional rights, but the defendant only responded, "well, that's more money in your pocket." *Id.* ¶ 7. As a result of the arrest, the plaintiff was charged with violation of probation. *Id.* ¶ 10.

The plaintiff filed a complaint with the New Haven Police Department Office of Internal Affairs which remains under investigation. ECF No. 1 at 7.

**II. Discussion**

The plaintiff asserts two claims. First, he contends that the defendant violated his rights under the Fourth, Fifth, and Fourteenth Amendments to the United State Constitution, Article first, sections 7, 8, and 9 of the Connecticut Constitution, and committed the tort of false arrest by detaining and arresting him without probable cause after viewing the video footage. Second, the plaintiff asserts state torts for intentional infliction of emotional distress, defamation, and slander based on the defendant's "arrogant" response to the plaintiff.

**\*2** The plaintiff's federal claims are for violations of the Fourth, Fifth, and Fourteenth Amendments. The primary claim is the Fourth Amendment claim for false arrest. The Fifth Amendment claim is based on the plaintiff's allegation that he was not advised of his rights when he was arrested. The plaintiff does not specify any Fourteenth Amendment claim.

## A. Fourth Amendment

"To state a valid claim for false arrest ... under § 1983, a plaintiff must plead an unreasonable deprivation of liberty in violation of the Fourth Amendment and satisfy the state law elements of the underlying claims." *Walker v. Sankhi,* 494 F. App'x 140, 142 (2d Cir. 2012) (summary order); *see also Henderson v. Williams,* 2013 WL 2149698, at *3 (D. Conn. May 16, 2013). The addition of the requirement that the plaintiff show an unreasonable deprivation of liberty is necessary to bring the claim under section 1983 as "the basic purpose of § 1983 damages is to compensate persons for injuries that are caused by the deprivation of constitutional rights." *Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 307 (1986) (internal quotation marks, citation, and emphasis omitted).

Under Connecticut law, a plaintiff seeking to bring a false arrest claim must allege that "(1) the defendant arrested plaintiff or had plaintiff arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent for the arrest; and (4) the arrest was not supported by probable cause." *Chase v. Nodine's Smokehouse, Inc.,* 360 F. Supp. 3d 98, 112 (D. Conn. 2019) (citations omitted). In addition, the Second Circuit has held that a plaintiff bringing a false arrest claim under Connecticut law must have had the underlying charges terminated in his or her favor. *See Miles v. City of Hartford,* 445 F. App'x 379, 383 (2d Cir. 2011) (summary order) (noting that in *Roesch v. Otarola,* 980 F.2d 850, 853-54 (2d Cir. 1992), "this Court expressly held, invoking Connecticut law, that favorable termination is an element of a section 1983 claim sounding in false imprisonment or false arrest.").

Recent state superior court decisions question the inclusion of favorable termination as an element of a false arrest claim. *See, e.g., Burton v. Mason,* No. 06-UWY-CV-21-5028294-S, 2022 WL 433695, at *7 (Conn. Super. Ct. Jan. 21, 2022) ("[F]avorable termination of a criminal action on the plaintiff's behalf has not been established as a required element for a claim of false arrest in Connecticut courts." (citation and internal quotation marks omitted)). However, in the absence of Connecticut appellate precedent addressing this issue, the Court is required to follow Second Circuit precedent and conclude, for purposes of a constitutional claim for false arrest arising in Connecticut, that favorable termination of a prosecution is a required element of a claim for false arrest.

The plaintiff does not allege that the charges for which Officer Doe arrested him terminated in his favor. The plaintiff alleges that he was arrested on September 25, 2023. The Connecticut Judicial Branch website list a case, *State v. Harris,* No. N23N-CR23-0249858-S, where the plaintiff was arrested on September 25, 2023 and charged with assault in the third degree and breach of peace. This appears to be the criminal case underlying this action. The website indicates that the plaintiff pled guilty to assault in the third degree. *See* www.jud2.ct.gov/crdockets/CaseDetail.aspx?source=Pending&Key=10a051fa-d38d-4c40-a887-8e40c00b8de (last visited Mar. 28, 2024). As the criminal case has not terminated in the plaintiff's favor, he cannot state a plausible false arrest claim.

## B. Fifth Amendment

**\*3** The Fifth Amendment protects against compulsory self-incrimination by forbidding the introduction of coerced statements into evidence at trial. *Miranda*[2] warnings, however, are not constitutionally required. They were developed as a means to protect the Fifth Amendment right against compulsory self-incrimination. The failure to read the plaintiff his rights before questioning did not violate the plaintiff's constitutional rights and does not support a section 1983 claim. *See Chavez v. Martinez,* 538 U.S. 760, 772 (2003) (explaining that the Fifth Amendment only forbids introduction of coerced statements at trial, so failure to provide *Miranda* warning does not violate suspect's constitutional rights and "cannot be grounds for a § 1983 action"). Thus, the plaintiff fails to allege facts stating a plausible Fifth Amendment claim.

## C. Fourteenth Amendment

The plaintiff states that he brings this case for violation of his rights under the Fourteenth Amendment but alleges no facts supporting a Fourteenth Amendment claim. The mere mention of a constitutional provision is not sufficient to state a claim for relief under that provision. *See Calhoun v. Quiros,* No. 3:23-CV-00715(SVN), 2023 WL 8618745, at *4 (D. Conn. Dec. 13, 2023) (citing *Monger v. Conn. Dep't of Transp.,* No. 3:17-CV0205(JCH), 2017 WL 3996393, at *5 (D. Conn. Sept. 11, 2017)). The Court does not construe the complaint as stating claims under the Fourteenth Amendment.

### D. Jane Doe

In his prayer for relief, the plaintiff seeks damages from library worker Jane Doe. He has not, however, named her as a defendant in the case caption or in the body of the complaint. Federal Rule of Civil Procedure 10(a) requires that the names of all parties be included in the case caption. As the plaintiff did not comply with this requirement, Jane Doe is not a defendant in this case.

Further, the plaintiff does not name Jane Doe in his legal claims and fails to allege facts suggesting that Jane Doe violated his constitutional rights. He alleges only that they had a disagreement and she hit him with her walkie-talkie. This allegation constitutes, at most, a state law claim for assault and battery which is considered in the following section.

### E. State Law Claims

The plaintiff's remaining claims are state law constitutional and tort claims. However, all federal claims have been dismissed. The district court may decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); *see also Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (noting that "[t]he fact that the district court has the power to hear these supplemental claims does not mean, of course, that it must do so. Instead, it may decline to exercise its power based on the factors laid out in 28 U.S.C. § 1367(c)."). Accordingly, the Court declines to exercise supplemental jurisdiction over the plaintiff's state constitutional and tort claims. The plaintiff may pursue these claims in state court.

### III. Conclusion

All federal law claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) and the Court declines to exercise supplemental jurisdiction over the plaintiff's state law claims.

**SO ORDERED** this 29th day of March 2024 at Hartford, Connecticut.

### All Citations

Slip Copy, 2024 WL 1344697

---

### Footnotes

1    Plaintiff filed an Addendum to his Complaint which is a copy of the handwritten pages appended to the Complaint. The only change is a correction to the date the incident occurred.

2    *Miranda v. Arizona*, 384 U.S. 436 (1966).

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 2567781
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

John A. ARETAKIS, Plaintiff,

v.

Robert DURIVAGE, Timothy Nugent, Town of
North Greenbush, and Robert D. Wells, Defendants.

Civ. No. 1:07–CV–1273 (RFT).
|
Aug. 17, 2009.

**Attorneys and Law Firms**

John A. Aretakis, Esq., New York, NY, pro se.

Napierski, Vandenburgh Law Firm, Thomas J. O'Connor,
Esq., of Counsel, Albany, NY, for Defendant Timothy
Nugent.

*AMENDED MEMORANDUM–DECISION and ORDER*

RANDOLPH F. TREECE, United States Magistrate Judge.

**\*1** On February 3, 2009, this Court issued a Memorandum–
Decision and Order (MDO) granting, *inter alia,* Defendant
Nugent's Motion to Dismiss and/or for Summary Judgment,
and dismissing Aretakis's causes of action against him. Dkt.
No. 69; *Aretakis v. Durivage,* 2009 WL 249781 (N.D.N.Y.
Feb.3, 2009). In addition to seeking dismissal of this legal
action against him, Nugent further requested that he be
awarded attorneys' fees as a prevailing party pursuant to
42 U.S.C. § 1983 on the grounds that this lawsuit against
him was "frivolous, unreasonable, and groundless and was
continued by Plaintiff after it clearly became so." Dkt. No.
53, Def. Nugent's Notice of Mot., dated Mar. 14, 2008, at
p. 2. The predicate for Nugent's Motion for Attorneys'
Fees is firmly rooted in the legal principle of absolute
prosecutorial immunity, insofar as Nugent was acting as a
special prosecutor in the mater of the *State of New York v. John
A. Aretakis. See generally* Dkt. No. 53. The MDO addressed
in considerable detail Nugent's role as special prosecutor,
the defense of absolute prosecutorial immunity, the multiple
causes of action lodged against him, and whether Aretakis's
causes of action against Nugent were frivolous, unreasonable,
and groundless. *Aretakis v. Durivage,* 2009 WL 249781, at

——3, 15–19, 26–28, 31–32, & 33–34 (Parts I.C, II.E, II.G.1,
II.H, & II.I). In addition to dismissing this legal action against
Nugent, this Court found Nugent to be a prevailing party
and declared that the Amended Complaint, as it related to
Nugent, was frivolous, unreasonable, and groundless. The
Court further directed Nugent to serve and file an application
for reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.
*Id.* at \*34. After a telephone conference held on March 2,
2009, this Court issued another Order establishing a timetable
when Defendant Nugent's application for attorneys' fees and
Aretakis's response thereto would be due. Dkt. No. 73, Text
Order, dated Mar. 2, 2009.

Complying with the Court's directive, Defendant Nugent's
Attorney, Thomas J. O'Connor, Esq., filed an Affidavit, dated
March 6, 2009, along with detailed billing invoices, seeking
an award of attorneys' fees in the amount of $24,741.39.
Dkt. No. 76. Initially, it appeared that Aretakis did not want
to pursue the remainder of this litigation and forwarded to
the Court a Letter Motion, dated February 10, 2009, seeking
to discontinue, with prejudice, this case. Dkt. No. 70. But,
Aretakis's position rapidly changed upon Defendant Nugent's
notice to the Court that he declined to waive or negotiate
any portion of the attorneys' fees being sought, Dkt. No.
74, and, on April 13, 2009, Aretakis filed a Cross Motion
for Reconsideration and Opposition to Nugent's Motion for
Attorneys' Fees, Dkt. No. 79. In support of his Motion for
Reconsideration, Aretakis complains that Nugent's Motion
is procedurally defective, asks this Court to reconsider our
finding of frivolousness, vacate the dismissal of his causes
of action, and deny the Application for Attorneys' Fees.
Likewise, Nugent filed a Response in Opposition to Aretakis's
Motion for Reconsideration. Dkt. No. 80.

**I. The Filing of Nugent's Application for Attorneys' Fees**

**\*2** Aretakis's first challenge to Nugent's Application is
procedural. He complains that Attorney O'Connor's Affidavit
was not accompanied by a Notice of Motion as required
by the Federal Rules of Civil Procedure, and furthermore,
incorrectly lists the venue and court in the heading. Dkt. No.
79–2, John A. Aretakis's Aff., dated Apr. 8, 2009, at ¶¶ 5–
9. Because of these defects, Aretakis proposes that this Court
disregard Nugent's Application. *Id.* For the following reasons,
the Court rejects Aretakis's plea petition.

What Aretakis fails to recognize is that Nugent's Notice of
Motion for Attorneys' fees was filed on March 14, 2008,

as an aspect of his Motion to Dismiss/Summary Judgment. Dkt. No. 53. After this Court found that Nugent was a prevailing party entitled to attorneys' fees, all that was required from Nugent was to complete his Application and identify those critical factors that would help the Court determine what would constitute reasonable attorneys' fees under these circumstances. In completing this obligation, Nugent only had to delineate the hours spent defending this action, describe the legal tasks performed, and inform the Court of the proper hourly rates-functions that can be comfortably completed by an affidavit and exhibits. In this context, a Notice of Motion would be superfluous.

As a general proposition, notice of motions are required to advise a court and opposing party of the when, where, and what of a prospective motion, the most critical dates being the return date of the motion and when opposition is due. Prejudice would be visited upon a party if he did not receive proper notice of the motion. However, this is not an issue in this case. Aretakis was keenly aware when and how this Application would be filed. On March 2, 2009, the Court convened a telephone conference in which a timetable for the filing of and the opposition to this Application was clearly announced by the Court. That Conference was immediately followed by a Text Order stating that Nugent shall "file his application within fifteen (15) days of the date of this Order [and] Plaintiff Aretakis shall respond to Nugent's motion within twenty-one (21) days of being served with the Motion." Dkt. No. 73. Therefore, there was no element of surprise nor prejudice imposed upon Aretakis and he responded to the Application. And, any typographical error in the case heading is immaterial inasmuch as the parties should be fully aware that the issue of reasonable attorneys' fees falls squarely before this Court and no other.

The beauty of the Federal Rules of Civil Procedure is that they anticipate the fallibility of lawyers and the court and recognize the possibility of clerical errors. Congress granted courts the ability "to correct a clerical mistake or mistake arising from oversight whenever one is found in a judgment, order, or **other part of the record."** FED. R. CIV. P. 60(a) (emphasis added). Moreover, the courts have the authority to "disregard all errors and defects that do not affect any party's substantial rights." FED. R. CIV. P. 61. The Second Circuit instructs us "never to exalt form over substance ... as long as [the technical pleading irregularities] neither undermine the purpose of notice pleading nor prejudice the adverse party. *Amron v. Morgan Stanley Inv. Advisors Inc.,* 464 F.3d 338,

343 (2d Cir.2006) (quoting *Phillips v. Girdich,* 408 F.3d 124, 128 (2d Cir.2005)).

**\*3** Here Nugent's faux pas are trivial, easily corrected, and just as easily ignored, inasmuch as Aretakis's substantial rights were neither derogated nor trampled upon. As will become quite evident below, Aretakis was able to contest this Application. Accordingly, this procedural challenge by Aretakis is declined.

## II. Motion for Reconsideration

Next, Aretakis asks this Court to reconsider our determination that the Amended Complaint as it pertains to Nugent is frivolous, unreasonable, and groundless. In doing so, Aretakis replicates the host of arguments he previously proffered to the Court in opposition to Defendant Nugent's Motion to Dismiss and/or for Summary Judgment. Dkt. No. 79 at ¶ 11(a)-(g). Nugent highlights that Aretakis's Motion for Reconsideration is untimely and lacks legal support. Dkt. No. 80.

This District's Local Rule 7.1(g) mandates that "unless Fed.R.Civ.P. 60 otherwise governs, a party may file and serve a motion for reconsideration or reargument no later than **TEN CALENDAR DAYS** after the entry of the challenged judgment, order, or decree." (emphasis in original). When applying this Local Rule to our case, Aretakis's Motion should have been filed on or before February 13, 2009, and not April 13, 2009. [1] Nevertheless, based upon the March 2nd telephone conference, the Court anticipated, as should have Nugent, that Aretakis would file a Motion for Reconsideration in tandem with his opposition to the Application for Attorneys' Fees, and thus his failure to fully comply with the mandates of our Local Rules is thus waived.

Generally, reconsideration of a court's prior decision is warranted only where the moving party demonstrates "(1) an intervening change of controlling law; (2) the availability of new evidence; and/or (3) the need to correct a clear error or prevent manifest injustice." *Caidor v. Harrington,* 2009 WL 799954, at *1 (N.D.N.Y. Mar.24, 2009) (Suddaby, J.) (quoting *United States v. Sanchez,* 35 F.3d 673, 677 (2d Cir.), *cert. denied,* 514 U.S. 1038, 115 S.Ct. 1404, 131 L.Ed.2d 291 (1995); *Bartz v. Agway, Inc.,* 849 F.Supp. 166, 167 (N.D.N.Y.1994) (McAvoy, C.J.) (citing *Wilson v. Consol. Rail Corp.,* 815 F.Supp. 585 (N.D.N.Y.1993); *McLaughlin v. New York Governor's Office of Employee Relations,* 784 F.Supp. 961, 965 (N.D.N.Y.1992)); *see also Delaney v. Selsky,* 899

F.Supp. 923, 925 (N.D.N.Y.1995) (citing *Doe v. New York City Dep't of Soc. Servs.,* 709 F.2d 782, 789 (2d Cir.), cert. denied, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983)). Thus, the moving party must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995) (citations omitted).

"[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Id.* at 257. "[A]ny litigant considering bringing a motion for reconsideration must evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant." *Gaston v. Coughlin,* 102 F.Supp.2d 81, 83 (N.D.N.Y.2000) (citation omitted). Of significance here, "[a] motion for reconsideration is not an opportunity for a losing party to advance new arguments to supplant those that failed in the prior briefing of the issue," *Fredericks v. Chemipal, Ltd.,* 2007 WL 1975441, at *1 (S.D.N.Y. July 6, 2007). In other words, it is not an opportunity to take a "second bite at the apple." *Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2d Cir.1998). See *In re Health Mgmt. Sys., Inc. Sec. Litig.,* 113 F.Supp.2d 613, 614 (S.D.N.Y.2000) ( "[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.") (quotation marks and citations omitted); *In re Bird,* 222 B.R. 229, 235 (Bankr.S.D.N.Y.1998) ("A motion for reconsideration is not a forum for new theories or for plugging the gaps of a lost motion with additional matters.") (internal quotation marks and citation omitted).

**\*4** Aretakis's Motion fails to allege any of the above proper grounds for reconsideration. Instead, Aretakis merely attempts to relitigate the Court's MDO, without providing any data or law that would have this Court reevaluate or alter the decision that was rendered. All that he has accomplished is to reiterate each and every argument he previously made in opposition to Nugent's Motion to Dismiss, and only adds that those causes of actions were made with "good faith allegations." Although it is not a basis for reconsideration, but now that he has interjected this element of "good faith" into the discussion in order to countermand the Court's finding that his lawsuit against Nugent was frivolous, unreasonable, and groundless, the Court takes this opportunity to highlight the error in his reasoning. It is not his belief that he had a "good faith" basis for making allegations against Nugent that is controlling; what is controlling is that he had *no legal*

basis at all to pursue his action against Nugent, the special prosecutor at his criminal trial.

It is not incumbent upon this Court to recapitulate the comprehensive analysis of the prosecutorial absolute immunity doctrine and its applicability to the record before the Court, and we decline to do so. See *Aretakis v. Durivage,* 2009 WL 249781, at ——3, 15–19, 26–28, 31–32, & 33–34 (Parts I.C, II.E, II.G.1, II.H, & II.I). Nonetheless, the Court is compelled to spotlight what appears to be profoundly lost upon Aretakis. In addition to the entrenched and seminal nature of the absolute immunity doctrine, Aretakis was forewarned by Nugent and then the Court that pursuing this action against Nugent, in the manner that he did, was fraught with great peril to him. First, the pleading of the affirmative defense of a prosecutor's absolute immunity should have given Aretakis great pause in pursuing this action against Nugent, or at least sparked some curiosity as to how this affirmative defense could impact his case. And, at least as early as November 19, 2007, and prior to any motions, Nugent served a letter upon Aretakis citing, *inter alia,* numerous precedents, including *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) and *Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) for the proposition that he enjoyed absolute immunity in this case. See Dkt. No. 76, Ex. A, Nugent Lt., dated Nov. 19, 2007, at p. 2. Even though it was not recorded, during the Rule 16 Conference held on January 10, 2008, there was an extensive debate as to the utility of pursuing this lawsuit against Nugent in light of the long-held doctrine of absolute immunity for prosecutors. So it should not have come as a surprise to Aretakis that his causes of action against Nugent were treading in deep and troubling waters.

Actually, then Chief Judge Learned Hand held more than "[a] half century ago" that prosecutors were immune from liability in § 1983 actions. *Van De Kamp v. Goldstein,* —— U.S. ——, 129 S.Ct. 855, 859, 172 L.Ed.2d 706 (2009) (citing *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949)). And more than forty years ago, the Supreme Court made it crystal clear when establishing its functional analysis test that a prosecutor is absolutely immune from civil prosecution even if he used false testimony at trial as long as he was acting in his quasi-judicial advocacy role. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128. This is clearly established, "hornbook" common law. The fatalism in continuing to argue in support of his claims that Nugent used false testimony at trial, in the face of the long standing *Imbler* decision which

was brought to Aretakis's attention long before any motions were filed against him, is beyond disputation.

 **\*5** *Imbler* also instructs litigants that a prosecutor is immune for initiating and prosecuting a case, which may entail preparation such as obtaining, reviewing and evaluating testimonial evidence. 424 U.S. at 431 n. 33. Now the Court agrees with Aretakis that, generally speaking, there is no bright line demarcation between quasi-judicial functions as opposed to investigative and administrative, *see Powers v. Coe,* 728 F.2d 97, 104 (2d Cir.1984), however that problem never bedeviled our case. The investigation and the filing of criminal complaints in this matter were completed before Nugent was appointed special prosecutor and thus he never participated in an investigatory role similar to law enforcement. It is reasonably expected, and goes without saying, that a prosecutor would directly or indirectly attempt to determine the nature of an eyewitness's testimony before trial. To do otherwise would fall woefully short of the objective norms of any litigator. Hence, such an attempt would not fall outside a common understanding of quasi-judicial function. *Imbler,* 424 U.S. at 431 n. 33 These facts were well known by all parties prior to the commencement of this action and it is inexcusable to ignore these facts and principles when contemplating a lawsuit against a prosecutor.

Further, it has been well-settled law within this Circuit for more than twenty-five years that a prosecutor's ability to offer a plea bargain is firmly embedded within the absolute immunity doctrine. *Powers v. Coe,* 728 F.2d at 103–04; *Taylor v. Kavanagh,* 640 F.2d 450, 453 (2d Cir.1981); *see also Lawson v. Abrams,* 863 F.2d 260, 263 (2d Cir.1988) (noting that *Powers* is settled law of the Second Circuit). Common sense would dictate that result as well. To withhold a plea bargain, as Aretakis complains Nugent did in his criminal case, falls unequivocally within Nugent's quasi-judicial function as a prosecutor, which is, once again, secured by absolute immunity. To argue otherwise in the face of this well-settled law is mere sophistry.

"Yet, try as he might," to argue that an out of court conspiracy may have occurred in an attempt to avoid the defense of absolute prosecutorial immunity was poorly conceived and not supported by the record one iota. *Pinaud v. County of Sufolk,* 52 F.3d 1139, 1148 (2d Cir.1995); *Dorman v. Higgins,* 821 F.2d 133, 139 (2d Cir.1987). As an affront to the clear and unencumbered record presented to the Court, Aretakis still clings to conclusions that defy any reasonable inference that could inure to his benefit. For example, Aretakis's continued

persistence in arguing that a telephone conference between Attorney Robert Roche, who was representing Nugent on a civil case, and the trial judge was a part of a grand conspiracy designed by Nugent, when the record clearly evinces that the criminal trial judge categorically denied that anything was said about Aretakis's criminal trial or indecorously against Aretakis, is manifestly facetious and lends credence to the Court's finding of frivolousness and groundlessness.

 **\*6** Having given due consideration to the previous Order, there is nothing plausibly proffered by Plaintiff that would deter us from adhering to our previous finding that

> Nugent's task in support of his application for reasonable attorney fees from Aretakis is to show that the action, as to him was frivolous, unreasonable, groundless, or that the plaintiff continued to litigate after it became obviously so. We find that Nugent has met this burden. It is seminal law that a prosecutor acting within his quasi-judicial capacity is entitled to absolute immunity. Not only is this apparent from facts of the case, but the Court made this rule of law evidently clear during the Rule 16 Conference. In order to frame a set of circumstances outside the contours of absolute immunity, Aretakis unreasonably contorted the boundaries of Nugent's actions in prosecuting this matter so that they may fall within an administrative or investigatory function. Both Aretakis and Cholakis, who both claim to be experienced lawyers, made unfounded, even scurrilous, accusations about Nugent's conduct and proposed that Nugent's *raison d'etre* was to uphold the Catholic Church's conspiracy against him and to injure him. Without any foundation whatsoever, especially in the face of Judge Toomey's on-the-record denial that Attorney Roche made any negative comments about Aretakis, he nonetheless cleaved to the spurious supposition that Roche was assigned the telephone task by Nugent in order to prejudice Aretakis. Not one iota of fact was alleged to support this specious argument, only a mere coincidence.

> Under these circumstances, we find that Nugent is entitled to reasonable attorney fees. He is directed to submit a more detailed application for attorney fees and costs.

*Aretakis v. Durivage,* 2009 WL 249781, at \*33.

Accordingly, Aretakis's Motion for Reconsideration is denied.

### III. Reasonable Attorneys' Fees

Surprisingly, Aretakis does not confront Nugent's Application for Attorneys' Fees as being excessive or applying an unreasonable presumptive hourly rate. Rather, he notes that other federal courts have determined that a defendant prosecutor was entitled to absolute immunity without imposing attorneys' fees on the plaintiff,[2] and further importunes the Court to consider his limited financial resources and the financial hardship that would be imposed upon him should the requested fees be approved. Dkt. No. 79 at ¶ 12(b) & (c).

Since the Court has already found Nugent to be the prevailing party and entitled to attorneys' fees, *Aretakis,* 2009 WL 249781, at *33, we must next determine a presumptively reasonable rate. Recently, courts within the Northern District have found the reasonable hourly rate to be between $235 and $275. *B.R. v. Lake Placid Central Sch. Dist.,* 2009 WL 667453, at *3–4 (N.D.N.Y. Mar.10, 2009) (Sharpe, J.) (citing *Lussenhop v. Clinton County,* 558 F.Supp.2d 247, 266–67 (N.D.N.Y.2008) for holding the hourly rate of $235/hr was reasonable in this District) (Treece, M.J.)); *Martinez v. Thompson,* 2008 WL 5157395, at *13–14 (N.D.N.Y. Dec.8, 2008) (Peebles, M.J.) ($275/hr); *Overcash v. United Abstract Group, Inc.,* 549 F.Supp.2d 193, 197 (N.D.N.Y.2008) (Sharpe, J.) ($250/hr). However, Nugent's Attorneys are seeking rates far below those already found to be reasonable within this District: (a) Partners-$145/hr; (b) Associates-$125/hr; and (c) Paralegals-$80/hr. Dkt. No. 76 at ¶ 26. Accepting that these rates would be the type that a reasonable paying client would be willing to pay, the Court will next multiply the number of hours expended by Nugents' Attorneys.

 *7 Attorney O'Connor, who has been practicing law and litigating for more than four decades, is the partner seeking the hourly rate of $145. Assisting O'Connor at various times throughout this litigation were his associates Asa Neff, Scott Peterson, and Shawn Nash, who are billed at the rate of $125/hr. Lastly, Star F. Donovan, a paralegal, briefly aided O'Connor in this matter. *See* Dkt. No. 76 at ¶¶ 26–31, Exs. B–G. The breakdown on the time expended is reflected in the chart below:

| NAME | RATE | HOURS | FEES | TOTAL |
|------|------|-------|------|-------|
| *O'Connor* | 145.00 | 158 | $ 22,910.00 | |
| *Neff* | 125.00 | 11.8 | 1,475.00 | |
| *Peterson* | 125.00 | .20 | 25.00 | |
| *Nash* | 125.00 | .60 | 75.00 | |
| *Donovan* | 80.00 | .50 | 40.00 | |
| **Total Fee** | | | $ 24,525.00 | $ 24,525.00 |
| **Total Expenses** | | | | 216.39 |
| **Total Fee and Expenses** | $ 24,741.39 | | | |

The Court finds that all of the hours expended by Nugent's attorneys are well documented and reasonable. Accordingly, the Court awards the Defendant Nugent the sum of $24,741.39.[3]

Based upon all of the foregoing, it is hereby

**ORDERED,** that Aretakis's Motion for Reconsideration, Dkt. No. 79, is **denied;** and it is further

**ORDERED,** that Defendant Nugent's Motion for Attorneys' Fees and Cost, Dkt. No. 76, is **granted.** Nugent's attorneys are awarded fees in the amount of $24,525.00 and costs in the amount of $216.39.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 2567781

---

### Footnotes

1      The MDO was filed on February 3, 2009, Dkt. No. 69, and this Motion was filed on April 13, 2009, Dkt. No. 79. Even though the Court is accepting the belated filing of the Cross Motion for Reconsideration, as required by the Local Rules, it has not gone unnoticed that Aretakis even failed to file the Motion timely pursuant to the March 2, 2009 Order. Dkt. No. 73.

2      This postulation was rendered without the benefit of legal citation.

3      Initially Nugent forswore any effort to recover attorneys' fees for the filing of this current Application. Dkt. No. 76 at ¶ 29 ("We are requesting neither compensation nor reimbursement for the preparation of this application."). However, because Nugent had to respond to Aretakis's opposition and Motion for Reconsideration, Nugent has changed his mind and now wishes to be compensated for preparing a response to Aretakis's Motion for Reconsideration. Dkt. No. 80–2, Tom J. O'Connor, Esq., Aff., dated Apr. 17, 2009, at ¶ 9. Based upon Nugent's view that even the Motion for Reconsideration is frivolous, unreasonable, and groundless, he argues that consequently that he is entitled to costs and attorneys' fees in the amount of $3,003.52. With the exception of legal citations regarding the filing of motions for reconsideration and a brief discussion thereof, Nugent has essentially repeated his stance already reflected in initial Application for Attorneys' Fees. Therefore, in many respects, Nugent's positions taken in his Memorandum of Law in Opposition to Aretakis's Motion for Reconsideration are redundant, and this Court, in the interest of justice, exercises its discretion to decline granting this additional amount.

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   6

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 102 of 126

Blanchard v. New York, Not Reported in Fed. Supp. (2018)

2018 WL 2324054
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew BLANCHARD, Petitioner,

v.

State of NEW YORK, Respondent.

9:18-CV-0448 (GTS/CFH)
|
Signed 05/22/2018

**Attorneys and Law Firms**

MATTHEW BLANCHARD, 24904075, Manchester Federal Correctional Institution, PO Box 4000, Manchester, KY 40962, pro se.

**DECISION and ORDER**

Hon. Glenn T. Suddaby, Chief U.S. District Judge

## I. INTRODUCTION

**\*1** Petitioner has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, as well as supporting brief. Dkt. No. 1, Petition ("Pet."); Dkt. No. 1-1, Brief. He has paid the statutory filing fee.

## II. THE PETITION

In his petition, petitioner asserts that he is in federal custody at Manchester Federal Correctional Institution for an undisclosed "federal crime" which he is not challenging. Pet. at 1, 5. [1] Rather, petitioner appears to challenge a detainer allegedly lodged by New York state authorities related to an arrest warrant, issued in either 2008 or 2009, by a state court in Delaware County, New York. Id. at 1, 7. Petitioner states that the arrest warrant relates to his "3rd D.U.I.," a felony charge, and that the "State of New York and Delawar[e] County ... refuse to accept Interstate Agreement on Detainers and refuse to accept his speedy trial demands[.]" Id. at 7.

Although not explicated in his petition, it appears that petitioner is currently incarcerated pursuant to a judgment of conviction in the United States District Court for the Middle District of Tennessee for armed bank robbery, in violation of 18 U.S.C. § 2113(a). United States v. Blanchard, No. 2:16-CR-0003 (M.D. Tenn.), Dkt. No. 40, Judgment in a Criminal

Case, filed Dec. 15, 2017. [2] Petitioner was sentenced to 36 months imprisonment and three years supervised release, with the incarceration portion of the sentence "to run concurrently with any state sentence imposed in Alabama and/or New York." Id. at 2.

Petitioner contends that he is entitled to federal habeas relief because his rights under the Sixth and Fourteenth Amendments and the Interstate Agreement on Detainers ("IAD") have been violated. Pet. at 6-9. Petitioner asserts that (1) he filed a grievance with "federal prison officials" on March 26, 2018, based on their assertion that the "State of New York refuse[s] to (accept) I.A.D.," and prison officials thereafter advised him that he "must file a habeas corpus in federal court who have [sic] jurisdiction," and (2) he has attempted to file a "speedy trial demand" in "Delawar[e] County, NY" in "January and February and March 2018," but his demand "keeps being sent back" because the "clerk refused to file" it. Pet. at 2, 3, 6. Moreover, in his brief, petitioner asserts that the "State of New York know[s]" he is in federal custody, but "refuse[s] to accept the I.A.D.A...." Dkt. No. 1-1 at 3. He contends that he "can have [the] warrant dismissed or" demand a speedy trial and "start the 180-day clock to come get [him]." Id. According to petitioner, if relief is not granted, he will suffer prejudice in that, due to the pending detainer, he will be denied "a halfway house and fair chance at a job and housing." Id.

**\*2** Petitioner also states that "federal prisons" lack "any state law books" or legal assistance program to help him file "a proper habeas corpus" petition, and, "for that reason[,] the Court should convert" his section 2241 petition into a "2254" if it deems it necessary to do so. Pet. at 7. With respect to relief, petitioner requests that his state arrest warrant be "expunge[d]," or that state authorities be directed to try him within 180 days. Id. at 8.

## III. DISCUSSION

This petition was brought pursuant to 28 U.S.C. § 2241. Section 2241 provides that "the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions" may grant a writ of habeas corpus to a petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c)(3). That section generally permits federal prisoners to challenge the execution of a sentence, including the computation of the sentence and parole decisions, rather than the imposition of that sentence or the underlying federal conviction under

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 103 of 126

Blanchard v. New York, Not Reported in Fed. Supp. (2018)

section 2255. *Cook v. New York State Div. of Parole*, 321 F.3d 274, 278 (2d Cir. 2003). State prisoners, in contrast, must bring challenges both to the execution of a sentence and to underlying convictions under section 2254, which governs petitions filed by "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *accord, Cook*, 321 F.3d at 278.

In rare circumstances, state prisoners who are pretrial detainees may challenge state detention pursuant to section 2241. *See, e.g., Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 490 (1973) (state prisoner sought "only to demand enforcement of" Kentucky's "affirmative constitutional obligation to bring him promptly to trial" rather than to litigate constitutional defenses) (citation omitted); *Hoffler v. Bezio*, 726 F.3d 144, 155-57 (2d Cir. 2013) (state prisoner brought section 2241 petition to prevent New York from retrying him on murder charges arising out of the killing of a prosecution witness scheduled to testify against him at a later trial on drug charges).

In this case, based on the information contained in his petition, petitioner is not in custody pursuant to a state court judgment of conviction because he has not been tried on or convicted of a state crime. 28 U.S.C. § 2254. He also is not a pretrial detainee in state court where the unresolved charge is allegedly pending. Instead, petitioner is in federal custody, serving a federal sentence, and challenges a purported state court detainer lodged at his federal facility based upon an unresolved New York charge of driving while intoxicated. *See* Pet. As a result, it is not entirely clear whether the petition is properly brought pursuant to section 2254 or section 2241. Under either statute, however, the Court concludes that this action is premature.

Section 2254 expressly states that an application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254 (b)(1)(A), (B)(i), (ii). Moreover, although section 2241 does not explicitly require the exhaustion of state court remedies, courts have required exhaustion to accommodate the principles of federalism. *See Braden*, 410 U.S. at 490, 491-92 (concluding that petitioner exhausted state remedies by making repeated "demands for trial to the courts of

Kentucky, offering those courts an opportunity to consider on the merits his constitutional claim of the present denial of a speedy trial," but the state courts rejected his claims); *Hoffler*, 726 F.3d at 149-51 (explaining that petitioner's claims were exhausted because he moved to dismiss an indictment based on double jeopardy grounds and when the motion was denied, he filed an Article 78 petition and sought leave to appeal the denial of the Article 78 petition in the New York Court of Appeals).

*\*3* To properly exhaust his claims, petitioner must do so both procedurally and substantively. Procedural exhaustion requires that he raise all claims in state court prior to raising them in a federal habeas corpus petition. Substantive exhaustion requires that the petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted). In other words, petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Petitioner must also use the proper procedural vehicle so that the state court may pass on the merits of his claims. *Dean v. Smith*, 753 F.2d 239, 241 (2d Cir. 1985).

Here, petitioner appears to contend that his rights as provided in the IAD have been violated, and that he has been denied his federal constitutional right to a speedy trial. The IAD "is an interstate compact, which establishes procedures by which one jurisdiction may obtain temporary custody of a prisoner incarcerated in another jurisdiction for the purpose of bringing that prisoner to trial." *Ferguson v. Hudson*, No. 9:13-CV-0674 (NAM/ATB), 2014 WL 5308635, at \*4 (N.D.N.Y. Oct. 16, 2014) (internal quotation marks omitted); *see also Reed v. Farley*, 512 U.S. 339, 341-42 (1994); *Carchman v. Nash*, 473 U.S. 716, 719 (1985) (explaining that the IAD "is a congressionally sanctioned interstate compact within the Compact Clause, and thus is a federal law subject to federal construction") (citation omitted) (citing *Cuyler v. Adams*, 449 U.S. 433, 438-442 (1981) ); *see also* 18 U.S.C. App. § 2. The IAD has been adopted by New York. N.Y. Crim. Proc. Law ("CPL") § 580.20. "The IAD was adopted, in part, to allow inmates, against whom a detainer has been lodged, to initiate their transfer to a state or federal district in which an untried indictment is pending so that they may request a 'final

Case 3:24-cv-00003-BKS-ML Document 11 Filed 09/18/24 Page 104 of 126

Blanchard v. New York, Not Reported in Fed. Supp. (2018)

disposition' of the pending criminal charges." *Ferguson,* 2014 WL 5308635, at *4.

The IAD provides that, whenever a prisoner is serving a sentence imposed in a "party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner," he must be brought to trial within 180 days after he "shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint." CPL § 580.20, Art. III(a); *accord,* 18 U.S.C. App § 2, Art. III(a). The prisoner's written notice "shall be given or sent by the prisoner to the ... official having custody of him, who shall promptly forward it ... to the appropriate prosecuting official and court...." CPL § 580.20, Art. III(b); *accord,* 18 U.S.C. App § 2, Art. III(b). [3]

 **\*4** The United States Supreme Court has held that "the 180-day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has *actually been delivered* to the court *and* prosecuting officer of the jurisdiction that lodged the detainer against him." *Fex v. Michigan,* 507 U.S. 43, 52 (1993) (emphasis added). [4]

Here, based upon the assertions contained therein, the Court concludes that the petition is premature. With respect to his claim that his rights under the IAD have been violated, he asserts only that, "in January and February and March 2018," he is sent a speedy trial demand to the "clerk" in Delaware County, New York. Dkt. No. 1 at 6. Even if the speedy trial demand to which petitioner refers may constitute a request for a final disposition under the IAD, any claim based on a failure to timely comply with the IAD is premature because (1) petitioner does not contend that he also sent, or caused to be sent, his demand to the prosecuting officer, and (2) even if it could be said that petitioner did successfully cause his demand to be delivered to both the prosecuting officer and the court as early as January 2018 (Pet. at 6), the 180-day period has not yet run. *See, e.g., United States v. Paredes-Batista,* 140 F.3d 367, 375 (2d Cir. 1998) (explaining that, even if petitioner could be said to have delivered his "demand for a speedy trial" on a government form to the prosecuting officer, his "request did not become effective and start the 180-day clock until it was *also* delivered to the district court ..."). [5]

 **\*5** With respect to his claim that his constitutional right to a speedy trial on his unresolved state charge has been violated, that claim has not been exhausted. Petitioner's speedy trial claim implicates the validity of an accusatory instrument which, he alleges, charges him with a felony and has been filed in Delaware County, New York. However, a petitioner may not attempt "to litigate constitutional defenses prematurely in federal court." *Braden,* 410 U.S. at 493; *Younger v. Harris,* 401 U.S. 37, 43-48 (1971); *see also Allen v. Maribal,* No. 1:11-CV-2638, 2011 WL 3162675, at *2 (E.D.N.Y. July 25, 2011) (dismissing pretrial detainee's section 2241 petition arguing a speedy trial violation, finding that the court "cannot permit the derailment of a pending state proceeding by an attempt to litigate constitutional defenses prematurely in federal court.").

As noted above, to fully exhaust his claims, petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 845. Once the state criminal proceedings against petitioner have concluded, and his appeals and/or other state court collateral proceedings, if necessary, are exhausted, petitioner may then seek federal habeas relief pursuant to 28 U.S.C. § 2254. *See, e.g., United States ex rel. Scranton v. State of New York,* 532 F.2d 292, 295 (2d Cir. 1976) (dismissing petitioner's section 2241 petition, in which she sought dismissal of an indictment on speedy trial grounds, for failure to exhaust two state remedies available to her: (1) "go to trial, raise the speedy trial issue as a defense or by motion to dismiss, and then, after a conviction of murder, raise the speedy trial point again on appeal;" and (2) "plead guilty and raise the speedy trial issue on appeal"); *see generally Wilson v. Favro,* No. 9:16-CV-0471 (GTS), 2016 WL 2354271, at *3 (N.D.N.Y. May 4, 2016).

In sum, the exhaustion requirement has not been met, and the petition is therefore dismissed. Rule 4, Rules Governing Section 2254 Cases in the United States District Courts ("If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."). [6]

## IV. CONCLUSION
**WHEREFORE**, it is hereby

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 105 of 126

Blanchard v. New York, Not Reported in Fed. Supp. (2018)

**ORDERED** that the petition (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that no certificate of appealability ("COA") shall issue in this case because petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). [7] Any further request for a COA must be addressed to the Court of Appeals (Fed. R. App. P. 22(b) ); and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on petitioner in accordance with the Local Rules.

**IT IS SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 2324054

---

## Footnotes

1   Citations to petitioner's filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.

2   The USM number on the Middle District of Tennessee judgment is the same identification number provided by petitioner on his petition in this action. Pet. at 1.

3   A detainer is "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking.... either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." *Reed*, 512 U.S. at 342 n.1 (internal quotation marks omitted). A state detainer "represents a present claim by New York of jurisdiction over petitioner's person and of the right to subject him to its orders and supervision in the future. As such, it constitutes sufficient 'custody' to make available to him the remedy of habeas corpus." *Marshall v. NYS DOCCS*, No. 9:16-CV-1501 (GTS), 2017 WL 2223036, at *2 n.2 (quoting *Goodwin v. Hammock*, 502 F. Supp. 756, 758 n.2 (S.D.N.Y. 1981) ).

4   The petitioner in *Fex* advanced the "policy argument" that, out of fairness, "the burden of compliance with the requirements of the IAD" should be "placed entirely on the law enforcement officials involved[.]" *Fex*, 507 U.S. at 52. The Supreme Court rejected that argument and explained that "the textual requirement 'shall have caused to be delivered' is simply not susceptible to" a reading of the IAD "that would give effect to a request that is never delivered *at all*." *Id.*

5   The Court notes that, even if petitioner's claim based upon the IAD were not premature, it is somewhat skeptical of the merit of that claim. "The Second Circuit has held that alleged violations of the IAD are not cognizable on federal habeas review." *Simms v. LaClair*, 769 F. Supp. 2d 116, 135 (W.D.N.Y. 2011) (citing *Riley v. Warden, FCI Petersburg*, 947 F.2d 43, 44 (2d Cir. 1991) ) (per curiam) ("[A] violation of the IAD is not 'a fundamental defect which inherently results in a complete miscarriage of justice ... present[ing] exceptional circumstances where the need for the remedy afforded by habeas corpus is apparent.' ") (quoting *Edwards v. United States*, 564 F.2d 652, 654 (2d Cir. 1977) ); *see also Sacco v. People of State of N.Y.*, 104 F.3d 354, 1996 WL 671092, at *2 (2d Cir. 1996) ("Even if Sacco's complaint is construed as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, the district court still properly dismissed the complaint. IADA claims are not cognizable in habeas corpus proceedings."); *Huffman v. Kirkpatrick*, 739 F. Supp. 2d 298, 300 (W.D.N.Y. 2010) ("[T]he Second Circuit has squarely held that a violation of the IAD is not a cognizable claim under 28 U.S.C. § 2254."). Although petitioner contends, in somewhat conclusory terms, that a "clerk" in Delaware County has returned his "speedy trial demand" to him (Pet. at 6), it is not clear that this circumstance would somehow render his IAD claim cognizable for habeas purposes. *See, e.g, Joyce v. Pataki*, 100 F.3d 941, 1996 WL 2067 (Table), at *2 (2d Cir. 1996) ("While the Supreme Court intimated in *Reed* that certain

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 106 of 126

Blanchard v. New York, Not Reported in Fed. Supp. (2018)

'aggravating' circumstances may render a claim alleging a violation of the IAD cognizable under section 2254, such circumstances are not present here.") (citation omitted) (citing *Reed*, 512 U.S. at 356-58).

6    The Habeas Rules apply to Section 2241 petitions. *See* 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a).").

7    *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("§ 2253 permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right' ").

---

**End of Document**                                   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 107 of 126

Brown v. Peters, Not Reported in F.Supp. (1997)

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

## Attorneys and Law Firms

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

## DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. *Ruffolo,* 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the
additional allegations fail to cure the deficiency which

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:24-cv-00003-BKS-ML   Document 11   Filed 09/18/24   Page 108 of 126

forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo*

determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 109 of 126

Brown v. Peters, Not Reported in F.Supp. (1997)

no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992,

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 110 of 126

upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork

relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dismiss should be granted.

**B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.**

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

**C. Motion to Dismiss by Herman, Stewart and Stanford.**

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

**D. Plaintiff's "John Doe" Claims.**

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

**E. Discovery Motions.**

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

**CONCLUSION**

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 112 of 126

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

---

## Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

---

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 113 of 126

Mitchell v. Annucci, Not Reported in Fed. Rptr. (2023)

2023 WL 8073106
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Dontie S. MITCHELL, Plaintiff-Appellant,
Ismael G. Reyes, a/k/a Ishmael
Reyes; Gyvon Roberts, Plaintiffs,
v.
Anthony J. ANNUCCI, Acting Commissioner; Patrick D.
Reardon, Superintendent, Marcy Correctional Facility;
C.O. John Doe #1; C.O. John Doe #2; C.O. John Doe #3;
Donald Venettozzi, SHU Director; Jeff McKoy, Deputy
Commissioner; Christopher Miller, Superintendent of
Great Meadow Correctional Facility; Teresa Tynon,
Superintendent of Washington Correctional Facility;
Mulcahy, Deputy Superintendent of Security at
Washington C.F.; Walker, Deputy Superintendent
of Programs at Washington C.F.; Correction Officer
Debejian, Deputy Superintendent of Programs at Marcy
C.F.; Cho Jane Doe, Commissioner's Hearing Officer
at Great Meadow C.F.; ORC John Doe #1, Senior
Rehabilitation Coordinator at Marcy C.F.; Officer
Cucchi, Great Meadow C.F.; John Doe #4, Washington
C.F. Officer; DOCCS John Doe #5, DOCCS Central
Office Corrections Officer, Defendants-Appellees,
Andrew M. Cuomo, Governor; SORC Colbert; C.O.
Brown; C.O. Mead; C.O. Smallbone; C.O. Barshaw; C.O.
Z; C.O. Jane Doe #1; JPay, LLC; B. McCloskey, Food
Service Administrator at Fishkill Correctional Facility;
D. Pauselius, Sergeant at Fishkill C.F., Defendants.

No. 21-2978-pr
|
November 21, 2023

Appeal from a judgment of the United States District Court
for the Northern District of New York (McAvoy, J.).

**UPON DUE CONSIDERATION,** the November 3, 2021,
judgment of the District Court is **AFFIRMED, in part,** and
**VACATED, in part,** and the matter is **REMANDED** for
further proceedings consistent with this Order.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Alice Buttrick (Alexandra
A.E. Shapiro, on the brief), Shapiro Arato Bach LLP, New
York, NY.

PRESENT: JOSÉ A. CABRANES, SARAH A. L.
MERRIAM, Circuit Judges. JENNIFER L. ROCHON,
Judge. *

**SUMMARY ORDER**

**\*1** Plaintiff-Appellant Dontie S. Mitchell ("Mitchell"),
proceeding on appeal through pro bono counsel, appeals the
District Court's November 3, 2021, judgment dismissing most
of his claims with prejudice and transferring the remaining
claims to the Southern District of New York. We assume the
parties' familiarity with the underlying facts and procedural
history of the case, to which we refer only as necessary to
explain our decision.

Mitchell is the "leader and founder" of the Ujamaa Fraternal
Dynasty ("UFD"), a "mutual self-improvement fraternity,"
which Mitchell asserts that he "uses in prison to positively
organize, motivate, inspire, educate, and mentor young
prisoners and to steer them away from gangs, drugs, and
violence." App'x at 43. The New York Department of
Corrections and Community Supervision ("DOCCS") treats
UFD as an "unauthorized organization" pursuant to DOCCS
Directive #4760. Id. at 45. Mitchell, proceeding pro se
and in forma pauperis in district court, filed a complaint
asserting a variety of claims pursuant to 42 U.S.C. § 1983
relating to DOCCS's treatment of UFD as an "unauthorized"
organization. When he filed the original complaint, Mitchell
was a prisoner. The claims asserted in the original complaint
related solely to Mitchell's time incarcerated at Marcy
Correctional Facility ("Marcy"). [1]

The District Court reviewed the original complaint as
required by 28 U.S.C. § 1915A, which applies to actions
brought by prisoners, and 28 U.S.C. § 1915(e)(2)(B), which
applies to all actions brought in forma pauperis. These
provisions require dismissal of a complaint that fails to
state a claim upon which relief may be granted. See 28
U.S.C. § 1915A(b)(1); § 1915(e)(2)(B)(ii). The District Court
dismissed Mitchell's First and Fourteenth Amendment claims,
without prejudice, for failure to state a claim. The District

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 114 of 126

Mitchell v. Annucci, Not Reported in Fed. Rptr. (2023)

Court permitted Mitchell to file an amended complaint within thirty days of its initial review order.

On September 9, 2021, Mitchell was released from DOCCS custody. On September 13, 2021, Mitchell filed an Amended Complaint. As relevant to this appeal, the Amended Complaint reasserted and supplemented the First and Fourteenth Amendment claims in the original complaint as they related to Mitchell's incarceration at Marcy. The Amended Complaint added First and Fourteenth Amendment claims related to incidents that occurred while Mitchell was incarcerated at Washington Correctional Facility ("Washington"), Great Meadow Correctional Facility ("Great Meadow"), and Fishkill Correctional Facility ("Fishkill"). When he filed the Amended Complaint, Mitchell was no longer incarcerated; the Amended Complaint included new allegations that Mitchell's First Amendment rights were violated as a non-incarcerated person.

 **\*2** Although Mitchell was no longer a prisoner at the time he filed the Amended Complaint, the District Court reviewed the Amended Complaint pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B). The District Court: (1) severed Mitchell's claims relating to his incarceration at Fishkill and transferred those claims to the Southern District of New York, and (2) dismissed with prejudice the remainder of Mitchell's claims for failure to state a claim. Mitchell appeals both the severance and transfer of his claims to the Southern District of New York and the dismissal of his First and Fourteenth Amendment claims.

## I. Severance and Transfer
We review the District Court's decision to sever and transfer Mitchell's Fishkill claims for abuse of discretion. See New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 112 (2d Cir. 2010); City of Syracuse v. Onondaga Cnty., 464 F.3d 297, 307 (2d Cir. 2006); 7 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1689 (3d ed.).

"A district court may exercise its discretion to transfer venue 'for the convenience of parties and witnesses, in the interest of justice.' " Lafarge, 599 F.3d at 112 (quoting 28 U.S.C. § 1404(a)). "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006). When considering whether to transfer an action, some of the factors a district court may

consider include: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." Id. at 106-07 (citation and quotation marks omitted).

Although the District Court did not explicitly recite these factors, it is apparent from the decision that it considered many of these factors in evaluating whether to sever the claims against defendants Pauselius, McCloskey, and JPay.[2] The allegations of the Amended Complaint related to Mitchell's time at Fishkill implicate only these three defendants and are focused on a discrete event, specifically, a disciplinary hearing conducted by McCloskey related to an incident report issued by Pauselius. As the District Court correctly concluded, those claims are "separate and distinct from the claims arising out of alleged wrongdoing that arose while Plaintiff was confined [at the other DOCCS facilities] and will require different witnesses and documentary proof." App'x at 72-73. Based on the allegations of the Amended Complaint, it is apparent that the convenience of the witnesses, the convenience of defendants McCloskey and Pauselius, the location of the relevant documents, and the locus of operative facts support the District Court's decision to transfer those claims to the Southern District of New York. Mitchell contends that his "choice of venue was ... entitled to substantial consideration." Appellant's Br. at 51 (citation and quotation marks omitted). But Mitchell's choice of venue "is just one of the several factors" a court should consider, and does not outweigh the other factors in this case. Corley v. United States, 11 F.4th 79, 90 (2d Cir. 2021).

Accordingly, the District Court did not abuse its discretion by severing and transferring the claims against defendants Pauselius, McCloskey, and JPay. See id. (District Court did not abuse its discretion in transferring a case to Connecticut because "the parties resided in Connecticut, where the operative facts had occurred, and it was reasonable to expect that all relevant documents, witnesses, and means of process for obtaining evidence were there.").[3]

## II. Dismissal
 **\*3** "We review de novo a district court's dismissal of complaints under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)." McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). "To avoid dismissal, a complaint must plead 'enough facts to

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 115 of 126

Mitchell v. Annucci, Not Reported in Fed. Rptr. (2023)

state a claim to relief that is plausible on its face.' " *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "We construe a *pro se* complaint liberally to raise the strongest arguments it suggests." *Darby v. Greenman*, 14 F.4th 124, 127 (2d Cir. 2021) (citation and quotation marks omitted).

### A. Post-Release First Amendment Claim

It is not clear that the District Court fully acknowledged the impact of Mitchell's status at the time of the filing of the Amended Complaint as a *former* prisoner, rather than an incarcerated person. The order of dismissal makes a single passing reference to Mitchell's release from confinement, but otherwise fails to address Mitchell's *post-release* First Amendment claim, which was raised for the first time in the Amended Complaint. The Amended Complaint alleges that Mitchell, as a civilian, sought to communicate with prisoners regarding UFD, but was prohibited from doing so because DOCCS designated UFD as an "unauthorized organization." App'x at 45. Such allegations could state a plausible First Amendment claim because "prison walls do not ... bar free citizens from exercising their own constitutional rights by reaching out to those on the inside." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (citation and quotation marks omitted); *cf. Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 78-79, 82-86 (2d Cir. 2021) (acknowledging that non-incarcerated plaintiffs may have standing to challenge prison regulations that impact their own First Amendment rights and clearly differentiating between claims of incarcerated and non-incarcerated plaintiffs), *cert. denied sub nom. Green Haven Preparative Meeting v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 142 S. Ct. 2676 (2022).

Here, the District Court erred by (a) failing to address the sufficiency of Mitchell's post-release First Amendment claim, and (b) dismissing that claim with prejudice. *See Abbas v. Dixon*, 480 F.3d 636, 639-40 (2d Cir. 2007). Accordingly, we vacate the judgment of the District Court dismissing Mitchell's post-release First Amendment claim with prejudice, and instruct the District Court to determine whether the Amended Complaint adequately pleads a plausible cause of action. If the District Court finds that the Amended Complaint fails to state a First Amendment post-release claim as pled, it shall permit Mitchell an opportunity to amend that claim.

### B. Pre-Release First and Fourteenth Amendment Claims

The District Court acknowledged that the Amended Complaint added new claims related to Mitchell's incarceration at Washington and Great Meadow. Despite this, the District Court dismissed these newly asserted claims, with prejudice, as though they had been pled in the original complaint. *See* App'x at 85. This was error.

#### 1. *Fourteenth Amendment Due Process Claims*

In the original complaint, Mitchell alleged that the conditions of solitary confinement in DOCCS imposed "atypical and significant hardship on" him and other inmates, *Sandin v. Conner*, 515 U.S. 472, 484 (1995), and that the disciplinary hearing conducted at Marcy violated his Fourteenth Amendment rights. The District Court dismissed this claim without prejudice, on the ground that the original complaint did not allege sufficient facts relating to the disciplinary determination. In particular, the original complaint failed to allege that Mitchell had been denied "a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence," and his allegations of bias against the hearing officer were purely conclusory. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004).

**\*4** The Amended Complaint reasserts Mitchell's claims regarding the disciplinary hearing at Marcy, adding details regarding the penalty imposed, and asserting for the first time that the hearing officer denied Mitchell's "requests to present documentary evidence and call witness[es] which would prove his defense." App'x at 55. The Amended Complaint also alleges for the first time a *separate* Fourteenth Amendment claim based on a disciplinary hearing at Great Meadow, at which Mitchell's "requests to submit documentary evidence and to call witnesses which would prove his defenses" were also denied. App'x at 51. Mitchell alleges that he spent 61 days in the SHU at Great Meadow, and 98 days in the SHU at Marcy. *See* App'x at 52, 56.

Construing the matter generously, in light of Mitchell's *pro se* status, we find that he should be granted a further opportunity to amend his complaint as to these claims. Accordingly, we vacate the judgment of the District Court dismissing Mitchell's procedural due process claims with prejudice, and instruct the District Court to permit Mitchell an opportunity to amend these claims. [4]

Mitchell v. Annucci, Not Reported in Fed. Rptr. (2023)

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 116 of 126

### 2. *First Amendment Claims*

We reach the same conclusion with respect to Mitchell's remaining pre-release First Amendment claims relating to incidents at Great Meadow and Washington. It is unclear whether the District Court properly reviewed these claims, which were asserted for the first time in the Amended Complaint. At the very least, because of Mitchell's pro se status, the District Court should have afforded Mitchell at least one opportunity to amend these newly asserted claims before entering a sua sponte dismissal with prejudice. See Abbas, 480 F.3d at 640 ("[F]ailure to afford an opportunity to oppose a contemplated sua sponte dismissal may be, by itself, grounds for reversal." (citation and quotation marks omitted)). Accordingly, we also vacate the judgment of the District Court dismissing Mitchell's pre-release First Amendment claims with prejudice, and

instruct the District Court to determine whether the Amended Complaint adequately alleges a First Amendment claim related to Mitchell's incarceration at Marcy, Great Meadow, or Washington. If the District Court finds that the Amended Complaint fails to state a pre-release First Amendment claim as pled, it shall permit Mitchell an opportunity to amend that claim.

\* \* \*

For the foregoing reasons, the November 3, 2021, judgment of the District Court is **AFFIRMED in part**, **VACATED in part,** and the matter is **REMANDED** for further proceedings consistent with this Order.

**All Citations**

Not Reported in Fed. Rptr., 2023 WL 8073106

---

## Footnotes

\*      Judge Jennifer L. Rochon of the United States District Court for the Southern District of New York, sitting by designation.

1      Prior to filing the original complaint in this action, Mitchell brought an action raising similar First Amendment claims related to his incarceration at the DOCCS Great Meadow Correctional Facility. See Mitchell v. Annucci, No. 9:19CV00718(MAD), 2022 WL 445039, at \*1 (N.D.N.Y. Feb. 14, 2022) ("Mitchell I"). The District Court in Mitchell I granted summary judgment in favor of the defendants named in that action. See id. at \*3-6. Mitchell's appeal from the grant of summary judgment in that action was heard in tandem with the instant appeal. See Mitchell v. Annucci, No. 21-2784-cv (2d Cir. argued Oct. 26, 2023).

2      McCloskey and Pauselius both worked at Fishkill, the former as a Food Service Administrator, and the latter as a Corrections Sergeant.

3      After these claims were transferred to the Southern District of New York, litigation there continued in earnest. Defendants Pauselius and McCloskey filed a motion to dismiss, which the District Court for the Southern District of New York granted. See Mitchell v. JPay, LLC, No. 7:21CV09070(NSR), Doc. #40 (S.D.N.Y. Jan. 27, 2023). Transferring this action back to the Northern District of New York now would make little sense and would not further the interests of justice. See 28 U.S.C. § 1404(a).

4      We note that it may not have been clear to Mitchell that the Amended Complaint would completely supersede the original complaint, and that upon review, the District Court would not consider allegations set forth only in the original complaint that were not reiterated in the Amended Complaint. On remand, the District Court may wish to advise Mitchell that any Second Amended Complaint will completely supersede and replace both prior complaints, and that, therefore, the allegations of any Second Amended Complaint must be sufficient, standing alone, to state a claim.

**Mitchell v. Annucci, Not Reported in Fed. Rptr. (2023)**

---

**End of Document**                                   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 118 of 126

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

1995 WL 316935
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Mina POURZANDVAKIL, Plaintiff,

v.

Hubert HUMPHRY, Judisicial Systeam of The State of
Minnesota and Olmested County Court Systeam, and
State of Minnesota, Saint Peter State Hospital, Doctor
Gammel Stephelton, et el Erickson, North West Bank
and Trust, Olmested County Social Service, J.C. Penny
Insurnce, Metmore Finicial, Traveler Insurnce, Comecial
Union Insurnce, Hirman Insurnce, Amrican State
Insurnce, Farmers Insurnce, C. O Brown Insurnce, Msi
Insurnce, Steven Youngquist, Kent Chirstain, Micheal
Benson, United Airline, Kowate Airline, Fordmotor
Cridite, First Bank Rochester, George Restwich,
British Airways, Western Union, Prudenial Insurnce,
T.C.F. Bank, Judge Sandy Kieth, Judge Niergari,
Olmestead County Judgering, Judge Mores, Judge
Jacobson, Judge Challien, Judge Collin, Judge Thomase,
Judge Buttler, Judge Morke, Judge Moweer, Sera
Clayton, Susan Mudhaul, Ray Schmite, Defendants. [1]

Civ. A. No. 94-CV-1594.
|
May 23, 1995.

### Attorneys and Law Firms

Hubert H. Humphrey, III, Atty. Gen. of the State of Minn.,
St. Paul, MN, Jerome L. Getz, Asst. Atty. Gen., of counsel,
for Hubert H. Humphry, III, Judicial System of the State
of Minnesota, St. Peter Regional Treatment Center, Gerald
Gammell, MD, William Erickson, MD, Thomas Stapleton,
MD, the Honorable James L. Mork, Chief Judge Anne
Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge
Dennis Challeen, and Judge Lawrence Collins.

Condon & Forsyth, P.C., New York City, Stephen J. Fearon,
Michael J. Holland, of counsel, for British Airways, P.L.C.
and Kuwait Airways Corp.

Dunlap & Seeger, P.C., Rochester, MN, Gregory J. Griffiths,
of counsel, for Olmsted County, Raymond Schmitz, Susan
Mundahl, Norwest Bank Minnesota, N.A. (the Northwest
Bank & Trust), C.O. Brown Agency, Inc.

Arthur, Chapman, McDonough, Kettering & Smetak, P.A.,
Minneapolis, MN, Eugene C. Shermoen, Jr., of counsel, for
J.C. Penney Ins. Co. and Metropolitan Ins. Co.

Shapiro & Kreisman, Rochester, NY, John A. DiCaro, of
counsel, for Metmor Financial, Inc.

Costello, Cooney & Fearon, Syracuse, Paul G. Ferrara, Robert
J. Smith, of counsel, for Travelers Ins. Companies; Hirman
Ins.; Commercial Union Ins. Companies.

Smith, Sovik, Kendrick & Sugnet, P.C., Syracuse, Thomas
N. Kaufmann, of counsel, for American States Ins. Co. and
Prudential Ins. Co.

Steven C. Youngquist, Rochester, MN, pro se.

Thomas J. Maroney, U. S. Atty., Syracuse, NY, William F.
Larkin, Asst. U. S. Atty., of counsel, for Michael Benson,
Postmaster N. D. of New York.

George F. Restovich & Associates, Rochester, MN, George F.
Restovich, of counsel, for George F. Restovich.

Conboy, McKay, Bachman & Kendall, L.L.P, Watertown, NY,
George K. Myrus, of counsel, for Western Union.

Richard Maki, Rochester, MN, pro se.

### MEMORANDUM-DECISION AND ORDER

POOLER, District Judge.

### INTRODUCTION

**\*1** In the four and one-half months since she filed this
action, plaintiff Mina Pourzandvakil has filed three amended
complaints and ten motions. She also has sought and received
entry of default against ten defendants, none of whom she
properly served. She twice has sought and been denied
temporary restraining orders. She has included in her action
defendants with no apparent connection to this forum, that
were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of
defendants have filed a total of twelve motions, some seeking
vacation of the defaults entered against them, some seeking
dismissal and others seeking both. We grant defendants'
motions insofar as they seek vacation of the clerk's entries of
default and dismissal of the complaint. We vacate *sua sponte*

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 119 of 126

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

BACKGROUND

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy easy summarization and will be addressed only insofar as they are relevant to the various motions.

**\*2** The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*)[2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper[3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 120 of 126

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or Rule 12 of the Federal Rules of Civil Procedure. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to Fed. R. Civ. P. 12(b) or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

**\*3** Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against

them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

ANALYSIS

The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. Fed. R. Civ. P. 4(e)(2). Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. Fed. R. Civ. P. 4(e)(1). Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. Fed. R. Civ. P. 4(h)(1) and 4(e)(1). Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See* N.Y. Civ. Prac. L. & R. §§ 308, 311 (McKinney Supp. 1995); N.Y. Bus. Corp. Law § 306 (McKinney Supp. 1995); Minn. Stat. § 543.08 (1995); Minn. R. 4.03 (1995). Finally, service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. Fed. R. Civ. P. 4(j)(2). Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 121 of 126

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

II. The Jurisdictional Arguments

**\*4** In addition to raising various other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

A. Personal Jurisdiction

Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Youngquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to Rule 14 or Rule 19 of the Federal Rules of Civil Procedure and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. Fed. R. Civ. P. 4(k). Defendants

are not subject to federal interpleader jurisdiction and they were not joined pursuant to Rule 14 or Rule 19. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to Rule 4(k). *See* N.Y. Civ. Prac. L. & R. § 302 (McKinney Supp. 1995). This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id.* §302(a). The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of Section 302(a). Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by Fed. R. Civ. P. 8(a)(1). Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff was a party. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983). These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

**\*5** The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 122 of 126

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. 28 U.S.C. § 1332. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under 28 U.S.C. § 1367(a). Section 1367(a) requires a relationship between the state and federal claims so that "they form part of the same case or controversy." Id. Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. Id. Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of res judicata or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

**\*6** 28 U.S.C. § 1391(a). Section 1391(b) provides that federal question actions, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Id. § 1391(b). The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Id. § 1406(a). Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to transfer this case to another district. The purpose of the court's

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 123 of 126

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir. 1993) (holding that it was an improper exercise of discretion to dismiss rather than transfer when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ. No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

### III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b) (6). [7] We already have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the Rule 12(b)(6) issue only on ASI's motion. *See Bell v. Hood,* 327 U.S. 678, 682-83 (1946) (subject matter jurisdiction); *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 221 (2d Cir. 1963) (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

**\*7** Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987). A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr,* 810 F.2d at 363.

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] Civ. No. 94-C944 (D.D.C. 1994), *Pourzandvakil v. Doty* (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon

which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to amend her pleading and plaintiff still was not able to offer specifics.[9] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White,* 886 F. 2d 721, 724 (4th Cir. 1989)). We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

**\*8** We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under 28 U.S.C. §1915(d), holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. The Supreme Court explicitly has acknowledged a district court's power under Section 1915(d) to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id.* at 329 n.8. The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter,* 151 F.R.D. 537, 540 (S.D.N.Y. 1993), *aff'd* 41 F.3d 1500 (2d Cir. 1994); *cf. Pillay v. I.N.S.,* 45 F.3d 14, 17 (2d Cir. 1995) (*per curiam*) (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler,* 151 F.R.D. at 540.

## IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture,* 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991). Moreover, her litigiousness has not yet reached the point at which courts in this circuit have justified injunctive relief. *See id.* at 694 (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief, however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id.* at 695.

## CONCLUSION

**\*9** All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183, 188-9 (5th Cir. 1986) (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co.,* 377 F.2d 194, 199 n.3 (2d Cir. 1967) (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 139 F.2d 871, 875 (3d Cir.) *cert. denied,* 322 U.S. 740 (1944) (dismissal for lack of personal jurisdiction is not a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied. However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 125 of 126

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

**All Citations**

Not Reported in F.Supp., 1995 WL 316935

---

### Footnotes

1    Names in the caption are spelled to reflect plaintiff's complaint.

2    Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

3    Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

4    The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against non-moving defendants for failure to state a claim on which relief can be granted.

5    The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

6    We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. 28 U.S.C. § 1332(a). However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id.* § 1332(a)(2). Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of 28 U.S.C. § 1603. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See* 28 U.S.C. § 1330. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under Section 1332. *Cf. Hiram Walker & Sons, Inc. v. Kirk Line,* 877 F.2d 1508, 1511-1512 (11th Cir. 1989), *cert. denied,* 115 S.Ct. 1362 (1995) (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under 28 U.S.C. § 1332.

**Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)**

Case 3:24-cv-00003-BKS-ML    Document 11    Filed 09/18/24    Page 126 of 126

7    J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

8    Former Supreme Court Justice Harry A. Blackmun.

9    We note also that plaintiff has not requested leave to amend in this action.

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.